1  Kent J. Schmidt (SBN 195969)
   schmidt.kent@dorsey.com
2  Navdeep K. Singh (SBN 284486)
   singh.navdeep@dorsey.com
3  **DORSEY & WHITNEY LLP**
   600 Anton Boulevard, Suite 2000
4  Costa Mesa, CA 92626-7655
   Telephone:  (714) 800-1400
5  Facsimile:   (714) 800-1499

6  Creighton R. Magid (admitted *pro hac vice*)
   magid.chip@dorsey.com
7  **DORSEY & WHITNEY LLP**
   1401 New York Avenue NW, Suite 900
8  Washington, DC 20005
   Telephone: (202) 442-3555
9  Facsimile: (202) 442-3199

10 Elizabeth Baksh (admitted *pro hac vice*)
   baksh.elizabeth@dorsey.com
11 **DORSEY & WHITNEY LLP**
   51 West 52nd Street
12 New York, NY 10019
   Telephone: (212) 415-9200
13 Facsimile: (212) 953-7201

14 Attorneys for Defendants
   BAI BRANDS, DR PEPPER
15 SNAPPLE GROUP, INC., LARRY
   YOUNG, BEN WEISS and JUSTIN
16 TIMBERLAKE

17               **UNITED STATES DISTRICT COURT**

18             **SOUTHERN DISTRICT OF CALIFORNIA**

19

20 KEVIN BRANCA, on behalf of himself     CASE NO. 3:18-CV-00757-BEN-KSC
   and all others similarly situated,
21                                        **MEMORANDUM OF POINTS AND**
              Plaintiff,                  **AUTHORITIES IN SUPPORT OF**
22                                        **DEFENDANTS BAI BRANDS,**
   v.                                     **LLC'S AND DR PEPPER SNAPPLE**
23                                        **GROUP, INC.'S MOTION TO**
   BAI BRANDS, LLC, a New Jersey          **DISMISS FIRST AMENDED**
24 Limited Liability Company; DR          **COMPLAINT**
   PEPPER SNAPPLE GROUP, INC., a
25 Delaware Corporation; LARRY            Date:  August 6, 2018
   YOUNG, an individual; BEN WEISS, an    Time: 10:30 a.m.
26 individual; JUSTIN TIMBERLAKE, an      Hon. Roger T. Benitez
   individual,
27                                        Courtroom 5A
              Defendants.
28

                                         MEMO. OF PTS. AND AUTHS. ISO OF ITS MOTION
                                         CASE NO. 3:18-CV-00757-BEN-KSC

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.   INTRODUCTION .................................................................................... 1

II.  FACTS .................................................................................................... 2

III. ARGUMENT .......................................................................................... 3

   A.   Plaintiff Fails to State an Actionable Claim Against Any
        Defendant ...................................................................................... 3

        1.   *Plaintiff Offers Only Conjecture that the Products
             Contain d-l-Malic Acid* ..................................................... 3

        2.   *Plaintiff Fails to State a Claim that the Products Should
             Be Labeled "Artificially Flavored."* ................................ 5

        3.   *Plaintiff Fails to State a Claim that the Products Must
             List the Specific Isomer of Malic Acid in the Ingredients
             List* ..................................................................................... 8

        4.   *Plaintiff's Claims Are Preempted By Federal Law* ........ 9

        5.   *Plaintiff's UCL, FAL, and CLRA Claims Fail as a Matter
             of Law Because No Reasonable Consumer Would Be
             Misled by the Products' Factually Accurate Labels* ...... 11

        6.   *Plaintiff's Claims Fail as a Matter of Law* ................... 13

        7.   *Plaintiff's Warranty Claims Fail as a Matter of Law* ..... 14

        8.   *Plaintiff's Fraud and Negligent Misrepresentation Claims
             Fail as a Matter of Law* .................................................. 16

        9.   *Plaintiff's Joint Venture/Conspiracy/Agency/Aiding and
             Abetting Claims Fail as a Matter of Law* ....................... 16

   B.   Plaintiff Lacks Standing To Pursue Injunctive Relief ................ 18

   C.   This Court Lacks Personal Jurisdiction Over Defendants With
        Respect to Putative Class Members Who Do Not Reside in
        California ..................................................................................... 20

   D.   Plaintiff's Claims Are Barred, in Part, by the Applicable Statutes
        of Limitations .............................................................................. 24

IV.  CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291 (1995)...................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................1, 3, 19, 20

*Bates v. Dow Agrosciences, LLC,* 544 U.S. 431 (2005)...........................11

*Beautiful Slides, Inc. v. Allen*, No. 17-cv-01091, 2017 U.S. Dist. LEXIS 141300 (N.D. Cal. Aug. 31, 2017)............................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ............................3, 17, 19, 20

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ...21, 22, 23, 24

*Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (1954) ..............................14

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010).....................11

*Chuang v. Dr. Pepper Snapple Grp.,*, 2017 U.S. Dist. LEXIS 163337 ..................15

*Chavez v. Church & Dwight Co.*, 2018 U.S. Dist. LEXIS 82642 (N.D. Ill. May 16, 2018)................24

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)................................18

*Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059 (N.D. Cal. 2014) ...............................13, 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)...........................................21

*Davidson v. Kimberly-Clark Corp.*, 2018 U.S. App. LEXIS 12204 (9th Cir. May 9, 2018) ..............19, 20

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017) .................19, 20

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982)...........................................13

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ....................13

*Fitzhenry-Russell v. Dr Pepper Snapple Group*, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sept. 22, 2017) .................................................. 23, 24

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005)........................ 25

*Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915 (2011)..............................................................................................................21

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............... 4, 12

*Hairston v. South Beach Beverage Co.*, 2012 U.S. Dist. LEXIS 74279 ................. 12

*Hunter v. Nature's Way Prods., LLC*, 2018 U.S. Dist. LEXIS 3962 (S.D. Cal. Jan. 9, 2018) ................................................................................. 18, 19

*In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 72 Cal. Rptr. 3d 112, 175 P. 3d 1170 (2008) ..................................................................... 10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................... 21

*Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033 (N.D. Cal. 2013)............................................................................................................ 10, 11

*Kaljian v. Menezes*, 36 Cal. App. 4th 573 (1995) ....................................... 17

*Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 122 Cal. Rptr. 2d 72 (2002)...................................................................................................11

*Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985) ......................................... 14

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008)........................ 17

*Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009)............................................................................................................. 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................. 18

*McKinnis v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)............................................................................................................. 15

*Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402 (2003)........................ 15

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..................... 18

*Moore v. Regents of Univ. of California*, 51 Cal. 3d 120 (1990) ............... 17

*Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013) ............................................. 17, 18

*POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014)............................ 10

*Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523 (N.D. Cal.
2012) ......................................................................................................... 19

*Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780 (N.D. Cal. 2015) ........................... 10

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303
(N.D. Cal. 1997) ........................................................................................ 16

*Streff v. Gold Medal Creamery Co.*, 96 Cal. App. 18 (1928) ........................... 15

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)................................................ 18

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l, Inc.*, No. 14–cv–
05318–JSC, 2015 WL 1289497 (N.D. Cal. Mar. 20, 2015) ............................. 14

*Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal.
2013) ....................................................................................................*passim*

*Whitmore v. Arkansas*, 495 U.S. 149 (1990)..............................................................

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (1986) ..................... 14

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ................................. 12

**Statutes**

21 U.S.C. § 343-1(a) .................................................................................... 10

21 U.S.C. § 343-1(a)(3)-(4) ........................................................................... 11

Cal. Civ. Code § 1783......................................................................................... 24

Cal. Civ. Code § 17208 ...................................................................................... 24

Cal. Civ. Proc. Code § 338(a)............................................................................. 24

Cal. Civ. Proc. Code § 2725 ............................................................................... 25

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500,
*et seq.* ....................................................................................................... 11

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200,
*et seq.* ........................................................................................... 11

Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* .............................. 11

Federal Food, Drug & Cosmetic Act ............................................. 9, 10, 13

Nutrition Labeling and Education Act ........................................... 10

**Regulations**

21 C.F.R. § 101.4 ................................................................. 8

21 C.F.R. § 101.4(a) ............................................................. 9

21 C.F.R. § 101.4(a)(1) .......................................................... 8

21 C.F.R. § 101.4(b) ............................................................. 8

21 C.F.R. § 101.22(i) .......................................................... 5, 6

21 C.F.R. § 101.22(i)(2) ......................................................... 5

21 C.F.R. § 101.22(i)(3) ......................................................... 5

21 C.F.R. § 101.22(a)(1) ...................................................... 5, 6

21 C.F.R. § 101.22(h)(1) ......................................................... 7

21 C.F.R. § 102.5(a) ............................................................. 9

21 C.F.R. § 170.3(o)(11) ......................................................... 6

21 C.F.R. § 170.3(o)(12) ......................................................... 6

21 C.F.R. § 170.3(o)(23) ......................................................... 6

21 C.F.R. § 172.515(b) ........................................................... 7

21 C.F.R. § 182.60 ............................................................... 7

21 C.F.R. § 184.1069 ............................................................. 8

21 C.F.R. § 184.1069(a) .......................................................... 9

21 C.F.R. § 184.1069(c) .......................................................... 6

**Rules**

Fed. R. Civ. P. 8.................................................................................................3

Fed. R. Civ. P. 8(a)(2).......................................................................................3

Fed. R. Civ. P. 9.................................................................................................4

Fed. R. Civ. P. 9(b)..........................................................................................16

Fed. R. Civ. P. 11(b)(3) ....................................................................................3

Fed. R. Civ. P. 12(b)(2) ....................................................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................................................1

**Other Authorities**

38 Fed. Reg. 20718, 20720 (Aug. 2, 1973) ......................................................7

56 Fed. Reg. 28592, 28598 (June 21, 1991) ....................................................7

Fourteenth Amendment Due Process Clause ...............................................20

"Fat Might Be The Sixth Basic Taste," *Washington Post*, June 4, 2012 ..................6

FDA Warning Letter 391860 to Lodato Gennaro & C S.p.A. (March 7, 2013).............................................................................................................9

FDA Warning Letter 437043 to KIND, LLC (March 17, 2015)........................9

FDA Warning Letter to Altura Food, Inc. (Sept. 27, 2012)  ........................9

FDA Warning Letter to Creative Confection Concepts, Inc. (Jan. 10, 1995) ................................................................................................................9

https://www.accessdata.fda.gov/ORAU/Labeling/LAB_summary.htm ...................8

https://www.drinkbai.com/products/brasilia-blueberry (last visited June 18, 2018) (Exhibit 10 to the accompanying Request for Judicial Notice)........................................................................................12

Labeling of Seasonings (Oct. 1, 1980), https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074466.htm (last accessed June 17, 2018) ..................7

National Organic Standards Board, Technical Advisory Report: Malic
    Acid (April 2003),
    https://www.ams.usda.gov/sites/default/files/media/L-
    Malic%20Acid%20TR.pdf ...................................................................................... 6

Products' ingredient lists .............................................................................................. 2

Transcript of Oct. 15, 2015, Hearing, *Osborne v. Kraft Foods Group*,
    No. C 15-02653 VC (N.D. Cal.) ......................................................................... 4, 5

U.S. Constitution Article III ...................................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Bai Brands, LLC ("Bai") and Dr Pepper Snapple Group ("DPSG") (collectively the "Corporate Defendants") respectfully submit this memorandum of points and authorities in support of their motion to dismiss Plaintiff Kevin Branca's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.   INTRODUCTION

Plaintiff asserts that Bai and DPSG have mislabeled a variety of fruit-flavored beverages (the "Products")[1] as containing "natural flavors" and "no artificial sweeteners" because the Products contain malic acid, a common food ingredient. Plaintiff's claims fail on a number of grounds, but two in particular.

First, Plaintiff simply *assumes* – with no basis – that the malic acid in the Products is not natural malic acid (l-malic acid), but rather d-l-malic acid (a racemic combination of a natural l-isomer and a synthetic d-isomer).  But Plaintiff has done no research.  There is no allegation in the FAC that Plaintiff tested the Products or otherwise established the presence of d-l-malic acid in the Products.  Rather, Plaintiff simply *assumes* the presence of d-l-malic acid, and alleges it as fact.  The law, however, does not permit such a "sue first, hope to find facts later" approach.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007)).

Second, Plaintiff misapprehends federal labeling regulations with respect to malic acid.  Under those regulations, malic acid – whether natural or synthetic – is an ingredient, *but not a "flavor."*  Because federal labeling law does not consider malic acid to be a flavor, the presence of malic acid as an ingredient has no bearing

---

[1]   Plaintiff identifies the 20 flavors of Bai beverages at issue in this litigation at p. 12 of the FAC.

on label statements regarding flavors, whether natural or artificial.[2]  In fact, it would violate federal law to label the Products as Plaintiff suggests.

Because Plaintiff fails to state a viable claim as a matter of law, the FAC should be dismissed in its entirety.[3]

## II.   FACTS

The FAC purports to assert a nationwide consumer class action against DPSG, a Delaware corporation with its headquarters in Texas; Bai, a New Jersey corporation with its headquarters in New Jersey; and three individuals, Larry Young, Ben Weiss, and Justin Timberlake (collectively "Defendants") with respect to 20 flavors of Bai beverages.  FAC ¶¶ 12-13, 19-23, 63.

The Products are labeled as containing "No Artificial Sweeteners" and as being flavored with "natural flavors."  FAC ¶¶ 26 – 28.  The Products' ingredient lists describe the sweeteners in the beverages (all of them natural) and identifies fruit juice concentrates and other natural flavors.  *See* Exhibit 1 to the accompanying Request for Judicial Notice.  The Products' ingredient label also lists malic acid as an ingredient.  *Id*.

Although Plaintiff asserts in the FAC that the Products contain d-l-malic acid, the FAC does not allege that Plaintiff has tested the Products or otherwise has a factual basis for this assertion.

---

[2]   Malic acid is not a sweetener, either.  In the entire FAC, Plaintiff never explains how the statement "No Artificial Sweeteners" is false or misleading.

[3]   Furthermore, Plaintiff has no standing to seek injunctive relief; has no basis for asserting personal jurisdiction over the non-California members of the putative class, and runs afoul of the applicable statutes of limitations.

# III.   ARGUMENT

## A.   Plaintiff Fails to State an Actionable Claim Against Any Defendant.

### 1.   *Plaintiff Offers Only Conjecture that the Products Contain d-l-Malic Acid.*

All of Plaintiff's claims rest on the assumption that the Products contain d-l-malic acid.  Yet Plaintiff pleads no facts supporting his entirely conjectural assertion that the Products contain d-l-malic acid.  He does not allege that he conducted testing for the presence of d-l-malic acid.  He apparently assumes that because some other food producers use d-l-malic acid, Bai must use d-l-malic acid rather than natural l-malic acid in its beverages.  Indeed, Plaintiff tacitly acknowledges his conjecture. *See* FAC ¶ 107 (noting uncertainty as to the type of malic acid contained in the Products).  Rather, plaintiff simply *surmises* the presence of d-l-malic acid and presumes that the Court will allow him to proceed with extensive and expensive discovery.

Plaintiff has it backwards.  A plaintiff has an obligation to establish the evidentiary basis for a claim *before* filing a complaint.  Fed. R. Civ. P. 11(b)(3). Moreover, Fed. R. Civ. P. 8(a)(2) requires that a complaint "show the pleader is entitled to relief."  To satisfy this requirement, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint does not satisfy Rule 8 "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).  A plaintiff may not establish "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678.  In short, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678 -79.  Further, where, as here, a

plaintiff's claims sound in fraud, Fed. R. Civ. P. 9 comes into play. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1085 (N.D. Cal. 2017). Rule 9 requires "specific factual pleading that indicates why allegedly fraudulent statements are false or misleading." *Id*. at 1090.

Plaintiff's unsupported assertion that the Products contain d-l-malic acid is insufficient to survive a motion to dismiss. In *Hadley*, for example, Judge Koh of the Northern District of California dismissed claims that Kellogg's deceptively marketed its breakfast cereals as healthy when they contained "excess sugar" causing them to be unhealthy because the plaintiff failed to allege the amount of "excess sugar" in the products. *Hadley,* 243 F. Supp. 3d at 1092 ("Plaintiff has failed to provide an adequate factual basis for its assertion that Defendant's product labels are false or misleading, and fails to satisfy the requirements of Rule 9(b)' because of his failure to allege "the specific amount of added sugar for each product"). Nor was Judge Koh willing to excuse the failure on the grounds that the precise amount of added sugar was solely within Kellogg's knowledge:

> [U]nless Plaintiff's claims are groundless, Plaintiff must have access to at least some knowledge concerning the amount of added sugar in Plaintiff's products. Presumably, Plaintiff conducted a proper Rule 11 investigation before filing the instant suit.

*Hadley,* 243 F. Supp. 3d at 1091.

Similarly, Judge Chhabria of the Northern District of California, addressing a plaintiff's unsubstantiated claim in his complaint that the "natural flavor" ingredient in Capri Sun beverages was not natural, observed:

> You're putting the burden [on the defendant]. I mean, you have a pleading burden at the complaint stage. You can't just file a lawsuit without having actual reason to believe that the ingredient is not all natural and then say, "I need to do discovery to see if my guess is correct."

Transcript of Oct. 15, 2015, Hearing, *Osborne v. Kraft Foods Group*, No. C 15-02653

VC (N.D. Cal.) at 5.[4]

Plaintiff cannot shoot first and ask questions later.  Plaintiff had an obligation to establish the factual basis for his complaint *before* filing it, and to set forth in sufficient detail his bases for asserting that the malic acid in the Products is d-l-malic acid.  Because Plaintiff has done neither, the FAC should be dismissed in its entirety.

**2.**      ***Plaintiff Fails to State a Claim that the Products Should Be Labeled "Artificially Flavored."***

Even if the Court were to overlook the fact that Plaintiff has no factual basis for asserting that the Products contain d-l-malic acid rather than natural l-malic acid, Plaintiff is simply wrong that federal or state regulations would require the Products to be labeled "artificially flavored" in any event.

Plaintiff asserts that the Products are mislabeled in violation of 21 C.F.R. § 101.22(i) because the Products' labels do not say "artificially flavored" to reflect the presence of malic acid.  Plaintiff misunderstands the relevant federal regulations. Under federal law, malic acid, in whatever form (l-malic acid, d-malic acid, or d-l-malic acid), is not a "flavor."  Moreover, federal regulations prohibit malic acid, in whatever form, from being listed as an "artificial flavor."  Therefore, Plaintiff not only fails to state a claim that the Products are mislabeled under 21 C.F.R. § 101.22(i), but bases his entire FAC on a theory that is expressly preempted by federal law.

As Plaintiff acknowledges, his entire FAC rests on the assumption that malic acid is a "flavor."  *See, e.g.,* FAC ¶¶ 40 – 42, 46.  Yet the very federal regulations that Plaintiff cites in support of his claim make clear that malic acid – in whatever form – is not a "flavor" for purposes of federal labeling regulations.

21 C.F.R. §§ 101.22(i)(2) and 101.22(i)(3), upon which Plaintiff bases his claims, require that a product be labeled "artificial" or "artificially flavored" "[i]f the

---

[4]      A copy of the transcript is attached as Exhibit 2 to the accompanying Request for Judicial Notice.

food contains any artificial *flavor* which simulates, resembles or reinforces the characterizing flavor" (emphasis added).  (A "characterizing flavor" refers to a product's "primary recognizable flavor(s)." 21 C.F.R. § 101.22(i); FAC ¶ 43.)  The term "flavor" is a specific and limited term under federal regulations, which draw a distinction between a "flavoring" – the purpose of which is to impart a distinctive flavor of its own – and a "flavor enhancer" – an ingredient that has no distinctive flavor of its own, but that intensifies the flavors from other ingredients.  *See* 21 C.F.R. § 101.22(a)(1) ("artificial flavor" and "artificial flavoring" refer to a substance "the function of which is to impart flavor"); 21 C.F.R. § 170.3(o)(11) (a "flavor enhancer" is a substance "added to supplement, enhance, or modify the original taste and/or aroma of a food, *without imparting a characteristic taste or aroma of its own*.") (emphasis added).

Malic acid, does not function to impart flavor; rather, it is an acidulant – that is, an ingredient that makes a food more acidic, providing a "sharp" taste[5] – and as a pH control agent.  *See, e.g.*, National Organic Standards Board, Technical Advisory Report:  Malic  Acid  (April  2003), https://www.ams.usda.gov/sites/default/files/media/L-Malic%20Acid%20TR.pdf (last accessed on June 17, 2018).[6]  Federal regulations characterize malic acid, depending upon its use, as a "flavor enhancer," "flavoring agent and adjuvant," and a "pH control agent."  21 C.F.R. § 184.1069(c).[7]

---

[5]     "Taste" differs from "flavor."  Taste refers to the five or six specific sensations for which receptors exist in the human tongue: sweet, sour, salty, bitter, umami and, perhaps, fat.  *See* "Fat Might Be The Sixth Basic Taste," *Washington Post*, June 4, 2012.  Flavor, by contrast, is the more specific identity – such as "strawberry" or "steak" – that comes from a combination of taste and olfactory senses.  *Id.*

[6]     *See* Exhibit 3 to the accompanying Request for Judicial Notice.

[7]     A "flavoring agent or adjuvant" is a substance "added to impart or help impart a taste or aroma in food."  21 C.F.R. §§ 170.3(o)(12).  A "pH control agent" is a

Whereas federal regulations permit added *flavors* to be listed on the ingredient list simply as "natural flavor" or "artificial flavor," 21 C.F.R. § 101.22(h)(1), a *flavor enhancer* such as malic acid is not considered a "flavor" and cannot, by regulation, be designated as such:

> The scientific and technical literature recognizes several different categories of substances that contribute to the flavor characteristics of food.  They are flavorings, flavor enhancers, and flavor potentiators. . . . *Generally, a flavoring is considered to be a substance that has a flavor of its own at the level at which it is used in a food, while flavor enhancers and flavor potentiators do not themselves impart flavor but rather intensify in some manner the flavors that are naturally present or are added to food*. . . .FDA considers the [definition of flavor enhancers""] to be broad enough to include the substances referred to in the literature as "flavor enhancers" and as "flavor potentiators." *Because flavor enhancers are not flavorings, they are not exempt from the ingredient declaration requirements of the act and thus must be declared in the ingredient list by their common or usual names.*

56 Fed. Reg. 28592, 28598 (June 21, 1991) (internal citations and heading omitted) (emphasis added).[8]  *See also Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) (an artificial sweetener does not render a product's "all natural flavors" label false or misleading under FDA regulations because a sweetener is not a flavor); 21 C.F.R. §§ 172.515(b), 182.60 (malic acid not included among "synthetic flavoring substances and adjuvants" listed by the FDA).

In short, Plaintiff's claim is that Bai did not label the Products to identify malic

---

substance "added to change or maintain active acidity or basicity, including buffers, acids, alkalies, and neutralizing agents.  21 C.F.R. § 170.3(o)(23).

[8]   For the same reason, sweeteners and seasonings are not "flavors" and may not be labeled as "natural flavors" or "artificial flavors."  *See, e.g.*, 38 Fed. Reg. 20718, 20720 (Aug. 2, 1973) ("Sweeteners are not spices or flavors, and when used as an ingredient in a food must be declared by common or usual name."); FDA CPG Sec. 525.650, Labeling of Seasonings (Oct. 1, 1980), https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074466.htm (last accessed June 17, 2018) (Exhibit 4 to the accompanying Request for Judicial Notice) (listing dextrose, citric acid, salt, hydrolyzed yeast, monosodium glutamate, and tricalcium phosphate as examples of "seasonings" that are not considered either "spices" or "flavors").

acid as an "artificial flavor."  Not only does Plaintiff lack evidence that the malic acid in the Products is anything but natural, but labeling it as an "artificial flavor," as Plaintiff would have it, is expressly *prohibited* by federal regulations.  Plaintiff is simply wrong in asserting that federal regulations require Bai to identify malic acid as an "artificial flavor." Indeed, because malic acid is not a "flavor" under federal law, federal regulations *prohibit* it from being labeled either a "natural flavor" or an "artificial flavor."  Plaintiff therefore fails to state any actionable claim.

**3.      *Plaintiff Fails to State a Claim that the Products Must List the Specific Isomer of Malic Acid in the Ingredients List*.**

Plaintiff also asserts that the Products are mislabeled because they do not list a specific isomer of malic acid (l-malic acid, d-malic acid, or d-l-malic acid) in the ingredients list.  No federal or state law or regulation requires such detail, however, 21 C.F.R. § 101.4, which Plaintiff cites as the basis for his claim, requires only that ingredients "be listed by common or usual name in descending order of predominance by weight," 21 C.F.R. § 101.4(a)(1), and that the "name of an ingredient shall be a specific name and not a collective (generic) name." 21 C.F.R. § 101.4(b).  It is undisputed that "malic acid" is the common name for malic acid. *See* 21 C.F.R. § 184.1069 ("Malic acid . . . is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid").  "Malic acid" is also a *specific* ingredient name, rather than a collective or generic name, such as "acidulant."  *See, e.g.,* FDA Labeling Course                                                      Summary (https://www.accessdata.fda.gov/ORAU/Labeling/LAB_summary.htm,           last accessed June 11, 2018) at 3 – 4 (identifying "meat" and "seafood" as impermissible generic ingredient identification)[9]; FDA Warning Letter 391860 to Lodato Gennaro & C S.p.A. (March 7, 2013) (use of "beans" in the ingredient list an impermissible collective (generic) name, and recommending "borlotti beans, butter beans, or

---

[9]      *See* Exhibit 5 to the accompanying Request for Judicial Notice.

cannellini beans" as specific names)[10]; FDA Warning Letter 437043 to KIND, LLC (March 17, 2015) ("mixed nuts," "dried fruits" and "vitamins" are impermissible collective names for ingredients).[11]

There is no regulation requiring specificity to the isomeric level, any more than there is a requirement that "apples" be specified as "Ida Red" or "Braeburn" or "Gala."  To the contrary, federal regulations specify that a "common or usual name of a food . . . shall be uniform among all identical or similar products."  21 C.F.R. § 102.5(a).  Because the l-malic acid and d-malic acid isomers and the d-l-malic racemic all have the same chemical formula ($C_4H_6O_5$), an ingredient label identifying "l-malic acid" or "d-l-malic acid" would be inconsistent with the regulations.  Indeed, the FDA itself refers to "malic acid" as the common or usual name for the ingredient. *See, e.g.*, 21 C.F.R. § 184.1069(a) (malic acid . . . is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid," whether l-malic acid or d-l-malic acid); FDA Warning Letter to Altura Food, Inc. (Sept. 27, 2012) ("As required by 21 CFR 101.4(a), ingredients required to be declared on the label or labeling of a food shall be listed by common or usual name . . ..  Our investigator observed that the V100 Apple Mango product is made with malic acid and gum acacia solution; however, these ingredients are not declared on the label.")[12]; FDA Warning Letter to Creative Confection Concepts, Inc. (Jan. 10, 1995) ("The label . . . appears to fail to declare the presence of malic acid, water, partially hydrogenated soybean oil and FD&C blue #2 . . ..").[13]  Thus, Plaintiff's claims based on the alleged lack of specificity of the Product's ingredient list must be dismissed.

**4.    *Plaintiff's Claims Are Preempted By Federal Law*.**

Because Plaintiff seeks, through this lawsuit, to impose labeling requirements

---

[10]    *See* Exhibit 6 to the accompanying Request for Judicial Notice.
[11]    *See* Exhibit 7 to the accompanying Request for Judicial Notice.
[12]    *See* Exhibit 8 to the accompanying Request for Judicial Notice.
[13]    *See* Exhibit 9 to the accompanying Request for Judicial Notice.

on the Products that are different from – and, indeed, inconsistent with – the food labeling requirements established by the Federal Food, Drug & Cosmetic Act ("FDCA") and its implementing regulations, all claims in the FAC are preempted.

The FDCA "statutory regime is designed primarily to protect the health and safety of the public at large." *POM Wonderful LLC v. Coca-Cola Co.,* 134 S. Ct. 2228, 2234 (2014). As part of this regime, the FDCA "prohibits the misbranding of food and drink." *Id.* In 1990, Congress amended the FDCA through enactment of the Nutrition Labeling and Education Act ("NLEA"). *Ivie v. Kraft Foods Global, Inc.,* 961 F. Supp. 2d 1033, 1037 (N.D. Cal. 2013). The NLEA "aimed to 'clarify and . . . strengthen the [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1116 (N.D. Cal. 2010) (citation omitted). Congress's purpose in enacting the NLEA "was 'primarily to establish a national uniform labeling standard[.]'" *Sciortino v. Pepsico, Inc.,* 108 F. Supp. 3d 780, 796 (N.D. Cal. 2015) (quoting *In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077, 1091 n. 12, 72 Cal. Rptr. 3d 112, 175 P. 3d 1170 (2008)). The NLEA also "amended the FDCA by adding an express preemption provision" – 21 U.S.C. § 343-1(a). *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009). Section 343-1(a) provides, in relevant part, that

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce —
>
> . . .
>
> (3) any requirement for the labeling of food of the type required by section . . . 343(d) [misleading container], 343(f) [prominence of information on label], 343(h) [representations as to standards of quality and fill of container], . . . or 343(k) [artificial flavoring, artificial coloring, or chemical preservatives] of this title *that is not identical to* the requirement of such section.
>
> . . .

(4) any requirement for nutrition labeling of food *that is not identical to* the requirement of section 343(q) [nutrition information] of this title.

21 U.S.C. § 343-1(a)(3)-(4) (emphases added).   The term "requirements" in the NLEA's express preemption provisions "reach[] beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules." *Chacanaca*, 752 F. Supp. 2d at 1118 (citing *Bates v. Dow Agrosciences, LLC,* 544 U.S. 431, 443 (2005)).   Thus, whenever "a state-law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted."   *Ivie*, 961 F. Supp. 2d at 1042 (quoting *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795, 122 Cal. Rptr. 2d 72 (2002)).

Here, Plaintiff seeks to hold defendants liable for not labeling the products as "artificially flavored" when federal regulations would prohibit such a label.   Further, Plaintiff seeks to hold defendants liable for using "malic acid" as the common or usual name for malic acid – something expressly permitted by the applicable regulations.   Because Plaintiff's state-law claims "would effectively require [defendants] to include additional or different information on a federally approved label" (*id.*) and to impose requirements different from those imposed by federal law, the claims are preempted and must be dismissed.

**5.      *Plaintiff's UCL, FAL, and CLRA Claims Fail as a Matter of Law Because No Reasonable Consumer Would Be Misled by the Products' Factually Accurate Labels.***

Plaintiff's claims for violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. ("CLRA"), the "unfair" prong of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. ("FAL") all fail as a matter of law because Plaintiff cannot point to any conduct by defendants that is "likely to deceive" a "reasonable consumer."

1       To state a claim for fraudulent or misleading conduct under the CLRA, UCL

2   and FAL, a plaintiff must show that the conduct is "likely to deceive" a "reasonable

3   consumer."  *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008);

4   *Hadley*, 243 F. Supp. 3d at 1089.  As a matter of law, truthful statements on product

5   packaging cannot deceive a reasonable consumer.  *See, e.g., Viggiano*, 944 F. Supp.

6   2d at 892 n. 38 ("In cases where a product's front label is accurate and consistent

7   with the statement of ingredients, courts routinely hold that no reasonable consumer

8   could be misled by the label, because a review of the statement of ingredients makes

9   the composition of the food or drink clear."); *Hadley*, 243 F. Supp. 3d at 1093 ("It is

10  not misleading for a product to state it is made with real fruit when that statement

11  accurately represents that the product contains real fruit and does not misrepresent

12  the type of fruit the product contains."); *Hairston v. South Beach Bev. Co*., No. 12-

13  cv-1429, 2012 WL 1893818, 2012 U.S. Dist. LEXIS 74279, *15 - *16 (C.D. Cal.

14  May 18, 2012) (holding that beverage label was "not deceptive as a matter of law"

15  because "the ingredient list is consistent with the front label statement of 'all natural

16  with vitamins.'").

17      The allegedly deceptive aspects of the Products' labels identified by Plaintiff

18  in the FAC are (a) the statement that, in addition to the primary flavor, the beverage

19  contains "OTHER NATURAL FLAVORS; and (b) the statement that the Products

20  contain "No Artificial Sweeteners."  *See* FAC ¶¶ 27 – 28.  Plaintiff does not make

21  any allegations regarding the Products' sweeteners.[14]  The gravamen of Plaintiff's

22  claims is that the Product labels "imply to the consumer . . . that the Products consist

23  of and are flavored only with natural juices and fruit flavors" – an implication

24

---

25  [14]    The ingredient list for Brasilia Blueberry Bai, for example, lists only natural
26  sweeteners: a proprietary blend of erythritol and stevia extract, in addition to
    blueberry,    blackberry,    and    strawberry    juice    concentrates.    *See*
27  https://www.drinkbai.com/products/brasilia-blueberry  (last visited June 18, 2018)
28  (Exhibit 10 to the accompanying Request for Judicial Notice).

Plaintiff deems misleading because of the presence of malic acid.  *See* FAC ¶ 29.

As described above, however, malic acid is not a "flavor."  The presence of malic acid as an ingredient therefore cannot, as a matter of law, make the statement "OTHER NATURAL FLAVORS" deceptive.  As Judge Morrow of the Central District of California put it in *Viggiano*:

> The label "all natural flavors" is consistent with the statement of ingredients on the soda can; as discussed, "flavors" is distinct from "ingredients," and Viggiano has identified no artificial *flavors* in the drink.  In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the food or drink clear.

*Viggiano*, 944 F. Supp. 2d 877, 892 n. 38 (emphasis in original).

Moreover, because the Product labels are, as described above, entirely consistent with federal labeling regulations, Plaintiff does not state an actionable claim under the "unlawful" prong of the UCL or under California's Sherman Law. *See, e.g., Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858-859 (N.D. Cal. 2012) (in the absence of any statutory or regulatory violations, there cannot be a violation of the unlawful prong of the UCL); FAC ¶¶ 33, 42 (the Sherman Law incorporates all FDCA regulations by reference).

**6.**   ***Plaintiff's Claims Fail as a Matter of Law With Respect to Non-California Residents.***

Plaintiff seeks to characterize this lawsuit as a "nationwide class action," but only asserts claims under California law.  Nonresidents of California, however, cannot avail themselves of California law for commerce – including purchases of beverages – that occurs outside California's borders. *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) ("The Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State."); *Cotter v. Lyft, Inc.*, 60

F. Supp. 3d 1059, 1063 (N.D. Cal. 2014) (California wage and hour laws cannot apply to class members who are residents of other states the "opposite conclusion would raise serious constitutional concerns."). Because the FAC does not assert causes of action arising under the laws of any other state, Plaintiff fails to state any actionable claim for non-California residents of his putative class.

### 7.    *Plaintiff's Warranty Claims Fail as a Matter of Law*.

Plaintiff's warranty claims are similarly infirm, failing for the same reasons as the statutory claims.

To make out a claim for breach of express warranty, a party must establish "the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff's injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) (citing *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 697 (1954)) (emphasis added). "A plaintiff must provide 'specifics about what the warranty statement was . . . .'" *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l, Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015). "To constitute an actionable express warranty, the statement must be specific and unequivocal." *Id.* (internal quotation marks omitted) (emphasis added); *see also Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (1985).

Plaintiff identifies as the Product's "warranty" the statements on the label indicating that the Products contain "natural flavors" and are "flavored only with the listed fruits." *See* FAC ¶¶ 167 – 168. As explained above, however, the label statements are entirely true. They say nothing about being flavored only with he listed fruits. Plaintiff's assertion that "malic acid" is a "flavor" is inconsistent with, and preempted by, federal labeling regulations. As a result, Plaintiff fails to state an actionable express warranty claim. *See, e.g., Viggiano*, 944 F. Supp. 2d at 893-94 (dismissing express warranty claim premised on representation that product contained "natural flavors" because this phrase "accurately describe[d] the product");

1   *Chuang v. Dr. Pepper Snapple Grp.*, No. 17-cv-1874, 2017 U.S. Dist. LEXIS

2   163337, at \*19-20 (C.D. Cal. Sept. 20, 2017) (rejecting express warranty claim

3   because "evidenced by the product labels themselves, the statements that the fruit

4   snacks are made with 'Real FRUIT and VEGETABLE juice[]' are true.  And,

5   Plaintiff does *not* allege the products are not made with fruit and vegetable

6   juice . . .Thus, to the extent Defendants warranted their fruit snacks were made with

7   real fruit and vegetable juice, there is no breach.") (emphasis in original); *McKinnis*

8   *v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at \*5 (C.D. Cal. Sept. 19, 2007)

9   (dismissing express warranty claim when defendant accurately represented that its

10  cereal contained "natural fruit flavors").

11       Plaintiff's implied warranty claim fares no better.  To allege a breach of

12  implied warranty of merchantability, a plaintiff must show that the product "did not

13  possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa*

14  *Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  An implied warranty "does not

15  require that the goods be of first quality, or even that they shall be as good as the

16  average of goods."  *Streff v. Gold Medal Creamery Co.*, 96 Cal. App. 18, 22 (1928).

17  Similarly, the warranty "does not impose a general requirement that goods precisely

18  fulfill the expectation of the buyer.  Instead, it provides for a minimum level of

19  quality."  *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)

20  (internal quotation marks omitted).

21       The FAC does not allege that the Products are unsafe or commercially

22  unacceptable.  Accordingly, Plaintiff fails to state an actionable implied warranty

23  claim.  *See Viggiano*, 944 F. Supp. 2d at 896-97 (dismissing implied warranty claims

24  where the plaintiff "does not allege any facts suggesting that the soda is not

25  merchantable or fit for use as a diet soft drink; he has not, for example, alleged that

26  the beverage was not drinkable, that it was contaminated or contained foreign objects,

27  etc.").

28

8. ***Plaintiff's Fraud and Negligent Misrepresentation Claims Fail as a Matter of Law***.

Plaintiff's negligent misrepresentation claim is merely a reformulation of his defective statutory and warranty claims.   Here again, Plaintiff asserts that the presence of malic acid means that defendants "were negligent in labeling the Products as if it [sic] were exclusively naturally flavored and in failing to identify the Products as artificially flavored."  FAC ¶ 196.  As discussed previously, however, "malic acid" is not a "flavor" and the Products are, in fact, naturally flavored.  Because the labels are accurate and consistent with federal regulations, there can be no claim of "negligent misrepresentation."

The "fraud-by-omission" claim fails for the same reason.  One cannot "actively conceal" the contents of a beverage by truthfully disclosing the contents of the beverage in the ingredient list.  The claim fails for the additional reason that Plaintiff offers no facts to support his bare assertion of "active concealment."  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake."); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1315 (N.D. Cal. 1997) ("Since fraud must be alleged in particularity, a general allegation that all Individual Defendants directed that the alleged fraudulent statements be made is insufficient to assert liability upon persons who did not make the statements.").

9. ***Plaintiff's Joint Venture/Conspiracy/Agency/Aiding and Abetting Claims Fail as a Matter of Law***.

The FAC includes a grab-bag of assertions seeking to impose joint liability on all defendants, including allegations of "joint venture enterprise liability," agency, civil conspiracy, and aiding-and-abetting.  The common thread to these assertions is the total absence of supporting factual allegations; Plaintiff simply asserts the legal conclusions.

Such legal conclusions masquerading as assertions of fact are inadequate to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The FAC is long on "formulaic recitation" but wholly deficient with regard to facts.

That Justin Timberlake is "a world-renowned singer-songwriter, actor, dancer, and record producer" or that he entered into an agreement to promote Bai products does not suggest in the least that he had the necessary managerial control over Bai or DPSG to establish a joint venture relationship. *See, e.g., Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995) ("An essential element of a partnership or joint venture is the right of joint participation in the management *and* control of the business") (emphasis added); *Beautiful Slides, Inc. v. Allen*, No. 17-cv-01091, 2017 U.S. Dist. LEXIS 141300, *11 - *13 (N.D. Cal. Aug. 31, 2017) (concluding that complaint did not adequately allege joint venture liability where plaintiff did "not allege [defendant] had an equal vote in any final management decision"). Nor does the FAC contain any facts that could plausibly lead to the conclusion that any other defendants operated a joint enterprise with another defendant.

The same absence of facts dooms Plaintiff's agency claim, *see Moore v. Regents of Univ. of California*, 51 Cal. 3d 120, 134 n.12 (1990) (allegations in complaint that "each of the defendants was the agent, joint venturer and employee of each of the other remaining defendants" insufficient to state a claim as a matter of law); Plaintiff's civil conspiracy allegation, *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 - 50 (9th Cir. 2008) (bare assertions of an "agreement" or identifications of particular persons as "co-conspirators" is insufficient to state a conspiracy claim); and aiding-and-abetting claim, *see Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir.

2013) (Where "aiding and abetting . . . allegations reveal[] virtually nothing because they are no more than conclusory and bare bones words and phrases without any factual content," the allegations "are insufficient to establish standing or to survive a motion to dismiss.").

**B.** **Plaintiff Lacks Standing To Pursue Injunctive Relief**.

Plaintiff lacks standing to seek injunctive relief in this action. Article III of the U.S. Constitution authorizes the federal courts to adjudicate only "cases" and "controversies."   This "cases-and-controversies requirement" mandates "that plaintiffs 'must establish that they have standing to sue.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To demonstrate standing, a plaintiff must demonstrate injury-in-fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The injury in fact must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  To obtain injunctive relief, a plaintiff must establish a threat of injury that is "actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  The "threatened injury must be certainly impending to constitute injury in fact."  *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  Mere "'[a]llegations of *possible* future injury' are not sufficient."  *Id*. (quoting *Whitmore*, 495 U.S. at 158) (emphasis in *Clapper*).

In order to establish standing, an allegedly deceived consumer "must 'adequately allege[] that [he or she] faces an imminent threat or actual threat of future harm caused by [the defendant's] allegedly false advertising.'"  *Hunter v. Nature's Way Prods., LLC*, 16-cv-532, 2018 WL 340233, 2018 U.S. Dist. LEXIS 3962, *8 - *9 (S.D. Cal. Jan. 9, 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1116 (9th Cir. 2017) ("*Davidson I*") (alterations in original).  Although the

Ninth Circuit has held that "a previously deceived consumer *may* have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," *Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2018 U.S. App. LEXIS 12204 (9th Cir. May 9, 2018) ("*Davidson II*") (emphasis added), this is not such a case.

As the Ninth Circuit acknowledged in *Davidson II*, an allegedly deceived consumer, once he or she learns of a product's contents or the falsity of its label, can establish standing by means of "*plausible* allegations that she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson* II, 2018 U.S. App. LEXIS at *26 (emphasis added); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  In *Davidson*, which involved "flushable wipes" that were not suitable for disposal in a toilet, the consumer

> alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible"; "regularly visits stores . . . where [Kimberly-Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly-Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true."

*Davidson II*, 2018 U.S. App. LEXIS at *27 - *28.  Noting that "it is a close question," the Ninth Circuit held that, based on the pleaded allegations, the plaintiff had adequately alleged "an imminent or actual threat of future harm."  *Id*. at *28. This was so, the Ninth Circuit added, because the complaint was "devoid of any grounds to discount [Davidson's] stated intent to purchase [the wipes] in the future." *Id*. at *28 (quoting *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (alterations in original).

Here, by contrast, Plaintiff cannot plausibly allege "an imminent or actual threat of future harm."  Plaintiff last purchased one of the Products in July 2016 – two years before he allegedly learned that the Products' labels might be misleading. FAC ¶¶ 91, 93.  Unlike the consumer in *Davidson*, who alleged an ongoing desire to purchase Kimberly-Clark's wipes and "regularly visit[d] stores where she was "continually presented" with the wipes, Plaintiff, by his own admission, has demonstrated little or no interest in the Products.  His allegation that he "intends to, seeks to, and will purchase the Products again when he can do so with the assurance that Products' label, which indicate that the Products are naturally flavored, are lawful and consistent with the Products' ingredients" is little more than a convenient recapitulation of *Davidson*.  As the Supreme Court has made clear, such "a formulaic recitation of the elements of a cause of action will not do" in opposing a motion to dismiss.  *Twombly*, 550 U.S. at 555.  This is particularly so where, as here, the complaint merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff's claim of ongoing interest in purchasing the Products when he has shown little interest in purchasing them over the past two years, and where Plaintiff offers no facts to bolster his assertion of ongoing harm, is simply not plausible. Accordingly, Plaintiff's rote assertion of future harm is insufficient to establish standing to pursue an injunction.  Plaintiff's request for injunctive relief must therefore be denied as a matter of law.

## C.   This Court Lacks Personal Jurisdiction Over Defendants With Respect to Putative Class Members Who Do Not Reside in California.

The Due Process Clause of the Fourteenth Amendment prevents a federal court, in a diversity matter, from exercising personal jurisdiction over a nonresident defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play

1   and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

2   (citations omitted).

3         A court may exercise "general jurisdiction" over a defendant – under which

4   the court may hear any claim against that defendant, even if all the incidents

5   underlying the claim occurred in a different State, (*see Goodyear Dunlop Tires*

6   *Operations, S. A. v. Brown*, 564 U.S. 915, 918 (2011)) – only in limited

7   circumstances. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In the case

8   of an individual defendant, "the paradigm forum for the exercise of general

9   jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. With respect

10  to corporate defendants, "the place of incorporation and principal place of business

11  are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137

12  (citation omitted). Because none of the Individual Defendants in this matter is a

13  California resident, and because neither Bai nor DPSG is incorporated in or has its

14  principal place of business in California, general jurisdiction is inapplicable.

15        In contrast to general jurisdiction, specific (or "case-linked") jurisdiction is not

16  defined by the extent to which a defendant's "affiliations with the [forum] State are

17  so 'continuous and systematic' as to render them essentially at home in the forum

18  State," *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317), but rather

19  "depends on an 'affiliatio[n] between the forum and the underlying controversy,'

20  principally, [an] activity or an occurrence that takes place in the forum State and is

21  therefore subject to the State's regulation." *Id.* at 919 (citations omitted).

22        In *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), the

23  Supreme Court considered specific jurisdiction[15] in the context of a mass action for

24

25  ─────────────

25  [15]    The Supreme Court in Bristol-Myers Squibb found general jurisdiction

26  inapplicable, even though Bristol-Myers Squibb operated five research and

26  laboratory facilities in California, employing around 160 employees; employed

27  another 250 sales representatives in California; and maintained a state-government

28  advocacy office in Sacramento. *Bristol-Myers Squibb*, 137 S. Ct. at 1778, 1781

injuries allegedly caused by Bristol-Myers Squibb's drug, Plavix. The Court held that, although a California court could exercise specific jurisdiction over the company with respect to the claims of California residents, there was no basis to assert personal jurisdiction over Bristol-Myers Squibb in connection with the claims of the non-California plaintiffs:

> As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.

*Bristol-Myers Squibb*, 137 S. Ct. at 1781.

The *Bristol-Myers Squibb* Court based its opinion on notions of federalism:

> [R]estrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." "[T]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States." And at times, this federalism interest may be decisive. As we explained in *World-Wide Volkswagen* [*v. Woodson*, 286 U.S. 291, 294 (1980)], "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment."

*Bristol-Myers Squibb*, 137 S. Ct. at 1780-81 (internal citations omitted).

Here, as in *Bristol-Myers Squibb,* there is no connection between the forum, the non-California members of the putative class, and the defendants. There is no

---

("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.") General jurisdiction is even less appropriate here, as neither corporate defendant operates facilities in or employees more than 100 employees in California. *See* accompanying Declaration of Janet Barrett and Declaration of Stephanie Harrison.

allegation that any of the non-residents purchased the Products in California or read the Products' labels in California.  Therefore, as in *Bristol-Myers Squibb*, "[t]he mere fact that other plaintiffs [purchased the Products] in California —and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (alteration added).

Defendants are aware that at least one court has attempted to distinguish "mass actions" from "class actions" and has held that *Bristol-Myers Squibb* is inapplicable in the class action context.  In *Fitzhenry-Russell v. Dr Pepper Snapple Grp.*, No. 17-cv-564, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sept. 22, 2017), Judge Cousins of the Northern District noted that in mass actions, each interested party is named as a plaintiff in the complaint, whereas one or more named plaintiffs in a class action seek to represent similarly situated, but unnamed, plaintiffs.  On that ground, Judge Cousins concluded that *Bristol-Myers Squibb* did not apply to class actions.

Several other courts, however, have been critical of Judge Cousin's reasoning, and have noted that it ignores the fundamental federalism concerns underlying *Bristol-Myers Squibb*.  The U.S. District Court for the Northern District of Illinois recently summarized this line of cases:

> Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; "rather, the Court announced a general principle – that due process requires 'a connection between the forum and the specific claims at issue.'"   To the contrary, the Court's concerns about federalism suggest that it seeks to bar nationwide class actions in forums where the defendant is not subject to general jurisdiction.  And, as Judge Durkin recently pointed out, "[u]nder the Rules Enabling Act, a defendant's due process interest should be the same in the class context" as it is in individual or mass actions.  Further, the Court is unpersuaded by the reliance of some district courts on the fact that the citizenship of unnamed class members is disregarded for purposes of determining diversity – that is, subject matter – jurisdiction.   The question here is not whether this Court has subject matter jurisdiction, but whether, consistent with due process, the Court may exercise specific personal jurisdiction over a defendant with regard to claims that have no connection with this state beyond their similarity to claims asserted by other plaintiffs who are residents of this state.

*Chavez v. Church & Dwight Co.,* No. 17-cv-1948, 2018 U.S. Dist. LEXIS 82642, *30 - *31 (N.D. Ill. May 16, 2018) (internal citations omitted). The court in *Chavez* thus concluded that the named plaintiff in a putative class action was "foreclosed from representing either a nationwide [or a] multistate class comprising non-Illinois residents." *Id.* at *31.

As the *Chavez* court noted, *Fitzhenry-Russell* conflates the status of unnamed class members for purposes of determining *subject matter jurisdiction* with their status in evaluating *personal jurisdiction. Fitzhenry-Russell,* moreover, ignored the federalism concerns at the heart of *Bristol-Myers Squibb.* Simply put, exercising personal jurisdiction over Bai, DPSG, and the Individual Defendants with respect to claims of putative class members whose "claims" – if any – arose entirely outside California cannot be squared with the federalism analysis in *Bristol-Myers Squibb, Daimler, Goodyear, Int'l Shoe,* or the rest of the Supreme Court's personal jurisdiction jurisprudence. Accordingly, Plaintiff cannot represent any non-California members of the putative class.

**D.** **Plaintiff's Claims Are Barred, in Part, by the Applicable Statutes of Limitations.**

Plaintiff purports to assert claims on behalf of a class of individuals who purchased the Products as far back as 2012. FAC ¶¶ 105, 106. However, the statute of limitations for CLRA and FAL claims is three years. Cal. Civ. Code § 1783; Cal. Civ. Proc. Code § 338(a). Plaintiff's CLRA and FAL claims are therefore barred to the extent that they arose (if at all) prior to April 30, 2015. Similarly, the limitations period for UCL and breach of warranty claims is four years. Cal. Civ. Code § 17208; Cal. Civ. Proc. Code § 2725. Accordingly, Plaintiff's UCL and breach of warranty claims are therefore barred to the extent that they arose (if at all) prior to April 30, 2014.

Plaintiff's assertion of "delayed discovery" is insufficient to save him from the limitations bar. In order to obtain the benefit of the delayed discovery rule, a plaintiff

must specifically plead "(1) the time and *manner* of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 808 (2005) (emphasis added).

Plaintiff says nothing about the manner by which he "discovered" that the Products contained malic acid, or were allegedly mislabeled, in April 2018 – an epiphany that supposedly occurred nearly two years after he had last purchased one of the Products.  Because Plaintiff has not alleged the manner by which he made his "discovery" or what precluded him from making his "discovery" early in the exercise of reasonable diligence, he cannot avail himself of the delayed discovery rule.  *See Fox*, 35 Cal. 4th at 808. (The FAC does not event attempt to assert facts supporting application of the delayed discovery rule to any other member of the putative class.)

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, Bai and DPSG respectfully request that their Motion to Dismiss Plaintiff's FAC be granted in its entirety.

Respectfully submitted,

Dated:  June 22, 2018                     **DORSEY & WHITNEY LLP**


By:  */s/ Kent J. Schmidt*
    Kent J. Schmidt
    Navdeep K. Singh
    Creighton R. Magid
    Elizabeth Baksh
    Attorneys for Defendants
    BAI BRANDS, DR PEPPER
    SNAPPLE GROUP, INC., LARRY
    YOUNG, BEN WEISS and JUSTIN
    TIMBERLAKE

## CERTIFICATE OF SERVICE

All Case Participants are registered for the USDC CM/ECF System

*Kevin Branca v. Bai Brands, LLC; Dr. Pepper Snapple Group, Inc.; Larry Young; Ben Weiss; and Justin Timberlake*
*Southern District of California Case Number 3:18-cv-00757-BEN-KSC*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BAI BRANDS, LLC'S AND DR. PEPPER SNAPPLE GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

I hereby certify that on June 22, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of California by using the court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be automatically served by the CM/ECF system.

Dated:  June 22, 2018                    **DORSEY & WHITNEY LLP**


                                         By:   */s/ Navdeep K. Singh*
                                               Navdeep K. Singh

CERTIFICATE OF SERVICE
CASE NO. 3:18-CV-00757-BEN-KSC