1
2
3
4
5
6

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Class***

7
8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| KEVIN BRANCA, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>BAI BRANDS, LLC, a New Jersey Limited Liability Company; DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation; LARRY YOUNG, an individual; BEN WEISS, an individual; JUSTIN TIMBERLAKE, an individual,<br><br>    Defendants. | Case No. 3:18-CV-00757-BEN-KSC<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS BAI BRANDS, LLC'S AND DR PEPPER SNAPPLE GROUP, INC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [Dkt. No. 18]**<br><br>Date:   August 6, 2018<br>Time:   10:30 AM<br>Ctrm:   5A<br>Judge:  Hon. Roger T. Benitez |

24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................... 1

II.  BACKGROUND ....................................................................................... 2

III. LEGAL STANDARD .............................................................................. 4

IV.  ARGUMENT ............................................................................................ 5

    A.   PLAINTIFF STATES A PLAUSIBLE CLAIM FOR RELIEF AGAINST
        DEFENDANTS ................................................................................ 5

        1.   Plaintiff Adequately Alleges that the Products Contain D-
              L-Malic Acid ................................................................................ 5

        2.   California and Federal Law Require that the Products be
              Labeled as "Artificially Flavored" ............................................ 6

        3.   The Products Must Identify that they Contain D-L-Malic
              Acid in the Ingredient List ........................................................ 8

        4.   Plaintiff's State Law Claims Are Not Preempted by
              Federal Law ................................................................................ 9

        5.   Whether a Reasonable Consumer Would be Misled Is
              Not Appropriate for Determination on a Motion to
              Dismiss ...................................................................................... 11

        6.   Plaintiff's Nationwide Class Allegations Are Sufficient ........ 13

        7.   Plaintiff Adequately Alleges Claims for Breach of
              Express and Implied Warranties ............................................... 15

        8.   Plaintiff Adequately States a Claim for Fraud and
              Negligent Misrepresentation and Satisfies the
              Requirements of Rule 9(b) ....................................................... 16

        9.   Plaintiff Adequately Alleges Secondary Liability ................... 18

    B.   PLAINTIFF HAS STANDING TO PURSUE INJUNCTIVE RELIEF ................. 19

    C.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THE
        CORPORATE DEFENDANTS AND THE NATIONWIDE CLASS ................... 20

    D.   PLAINTIFF'S CLAIMS ARE NOT PARTIALLY BARRED BY THE
        STATUTE OF LIMITATIONS ............................................................ 22

V.   CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*AirWair Int'l Ltd. v. Schultz*,
   73 F. Supp. 3d 1225 (N.D. Cal. 2014)................................................................20

*Allred v. Frito-Lay N. Am., Inc.*,
   2018 WL 1185227 (S.D. Cal. Mar. 7, 2018)..............................................*passim*

*Allred v. Kellogg Co.*,
   2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) .............................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................4, 5

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017)..........................................................................................20

*Burton v. Time Warner Cable Inc.*,
   2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .......................................................5

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .............................................................................18

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*,
   2018 WL 1377608 (E. D. La. Mar. 19, 2018) ......................................................21

*Clancy v. The Bromley Tea Co.*,
   308 F.R.D. 564, 573 (N.D. Cal. 2013) ...........................................................10, 13

*Clark v. LG Elecs. U.S.A., Inc.*,
   2013 WL 5816410 (S.D. Cal. Oct. 29, 2013)........................................................15

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (Cal. Ct. App. 2011)........................................................17

*Conley v. Gibson*,
   355 U.S. 41, 47 (1957) ...........................................................................................4

-ii-

*Branca v. Bai Brands, LLC, et al.*, Case No. 3:18-CV-00757-BEN-KSC
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
OPPOSITION TO DEFENDANTS BAI BRANDS, LLC'S AND DR. PEPPER SNAPPLE
GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Cotter v. Lyft, Inc.*,
  60 F. Supp. 3d 1059 (N.D. Cal. 2014) ...........................................................15

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ..........................................................................19

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ........................................................................11

*Davison v. Santa Barbara High School District*,
  48 F.Supp.2d 1225 (C.D. Cal. 1998) ................................................................5

*Donohue v. Apple, Inc.*,
  871 F.Supp.2d 913 (N.D. Cal. 2012) ..............................................................14

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) .......................................................................................15

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................23

*Engurasoff v. Coca-Cola Co.*,
  2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) .............................................8, 16

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) .............................................................10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ................................................20

*Gitson v. Trader Joe's Co.*,
  2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ..............................................8, 16

*Hadley v. Kellogg Sales Co.*,
  2017 WL 1065293 (N.D. Cal. Mar. 21, 2017) ..................................................12

*Hall v. Diamond Foods, Inc.*,
  2014 WL 5364122 (N.D. Cal. Oct. 21, 2014) ...................................................11

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) .....................................................................................15

-iii-

*Henderson v. J.M. Smucker Co.*,
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ....................................................11

*In re Clorox Consumer Litig.*,
    894 F.Supp.2d 1224 (N.D. Cal. 2012)...................................................13

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
    2008 WL 4544441 (N.D. Cal. Sept. 30, 2008)...................................................22

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ...................................................10

*In re Morning Song Bird Food Litig.*,
    2018 WL 1382746 (S.D. Cal. Mar. 19, 2018)...................................................21

*Ivie v. Kraft Foods Global, Inc.*,
    2013 WL 685372 (N.D. Cal. Feb. 25, 2013)...................................................8, 13

*Keith v. Buchanan*,
    173 Cal.App.3d 13 (1985) ...................................................15

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...................................................5, 6

*Lilly v. ConAgra Foods, Inc.*,
    743 F.3d 662 (9th Cir. 2014) ...................................................11

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................13

*McKelvey v. Boeing N. Am., Inc.*,
    74 Cal. App. 4th 141 (Ct. App. 1999) ...................................................22

*Plumlee v. Pfizer, Inc.*,
    2014 WL 695024 (N.D. Cal. Feb. 21, 2014)...................................................22

*Rosales v. FitFlop*,
    882 F. Supp. 2d 1168 (S.D. Cal. 2012) ...................................................18

*Sagan v. Apple Computer, Inc.*,
    874 F. Supp. 1072 (C.D. Cal. 1994)...................................................5

*Saliter v. Pierce Bros. Mortuaries*,
   81 Cal. App. 3d 292 (Ct. App. 1978) ................................................22

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ..........................................................................4

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
   256 F.R.D. 284 (D. Conn. 2009) ......................................................14

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir.2011) .............................................................5

*T. K. v. Adobe Sys. Inc.*,
   2018 WL 1812200 (N.D. Cal. Apr. 17, 2018)...................................14

*Vess v. Ciba– Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..........................................................18

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ............................................18

*Weisheit v. Rosenberg & Assocs., LLC*,
   2018 WL 1942196 (D. Md. Apr. 25, 2018)........................................21

*Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.*,
   196 Cal. App. 4th 1559 (2011) .........................................................17

*Werdebaugh v. Blue Diamond Growers*,
   2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ...........................13, 14, 15

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................11

*Wilson v. Frito-Lay N. Am., Inc.*,
   2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)......................................10

*Wyatt v. Terhune*,
   315 F.3d 1108 (9th Cir. 2003) ..........................................................22

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (N.D. Cal. 2010)..............................................22

1

**Statutes**

2   21 U.S.C. § 343(i) ........................................................................................8

3   21 U.S.C. § 343(k) .......................................................................................7

4   Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..................................................4

5   Cal. Bus. & Prof. Code §§ 17500, *et seq.* ..................................................4

6   Cal. Civ. Code §§ 1750, *et seq.* ..................................................................4

7   Cal. Health & Saf. Code § 109875 *et seq.* ...............................................3, 7

8   Cal. Health & Safety Code § 110100(a) ....................................................10

9

**Rules**

10   Fed. R. Civ. P. 12(b) ....................................................................................4

11   Fed. R. Civ. P. 12(b)(6) ...............................................................................5

12   Fed. R. Civ. P. 8 ...........................................................................................4

13   Fed. R. Civ. P. 8(e) .......................................................................................5

14   Fed. R. Civ. P. 9(b) .....................................................................................18

15

**Regulations**

16   21 C.F.R § 101.4(a)(1) .................................................................................8

17   21 C.F.R. § 101.22 ........................................................................................3

18   21 C.F.R. § 101.22(a)(1) ..............................................................................7

19   21 C.F.R. § 101.22(i)(2) ...............................................................................7

20   21 C.F.R. § 101.4(a)(1) .................................................................................3

21   21 C.F.R. § 101.4(b) .....................................................................................8

22   21 C.F.R. § 170.3(o)(11) ..............................................................................7

23   21 C.F.R. § 184.1069(a) ...............................................................................9

24   21 CFR § 101.22 .........................................................................................13

25

26

27

28

*Branca v. Bai Brands, LLC, et al.*, Case No. 3:18-CV-00757-BEN-KSC
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
OPPOSITION TO DEFENDANTS BAI BRANDS, LLC'S AND DR. PEPPER SNAPPLE
GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff Kevin Branca ("Plaintiff") respectfully submits this Memorandum of Points and Authorities in Support of His Opposition to the Motion to Dismiss that was filed by Defendants Bai Brands, LLC and Dr. Pepper Snapple Group, Inc. (the "Corporate Defendants") on June 22, 2018. (Dkt. No. 18).

## I.    **INTRODUCTION**

This is a consumer protection class action concerning Defendants' failure to disclose an artificial flavoring ingredient in their Bai Beverage Products (the "Products"). The operative First Amended Complaint ("FAC") alleges that "[t]he Products are labeled as if they contain only natural ingredients and are flavored only with natural ingredients when the Products in fact contain undisclosed artificial flavors in violation of state and federal law." (Dkt. No. 3 [FAC ¶ 15]). Defendants claim that the Products are flavored "with other natural flavors" and that they contain "no artificial sweeteners." (FAC ¶¶ 27-28). However, the FAC alleges that "Defendants add a synthetic industrial chemical called d-l-malic acid, in the form of a racemic mixture of d- and l-isomers, to flavor the Products and make them taste like fresh fruit." (FAC ¶ 36). The FAC further alleges that "[t]his 'malic acid' is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." (FAC ¶ 37).

In their Motion to Dismiss, the Corporate Defendants argue that Plaintiff fails to state a plausible claim for relief. However, the Corporate Defendants fail to cite authority from this District where other courts have declined to dismiss similar cases involving the use of malic acid as an artificial flavoring ingredient. *See, e.g., Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ("*Frito-Lay*"); *Allred v. Kellogg Co.*, No. 17-CV-1354-AJB-BLM, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ("*Kellogg*"). This Court should reach a similar conclusion and deny the Corporate Defendants' Motion to Dismiss.

## II.   **BACKGROUND**

This action was originally filed on April 19, 2018. (Dkt. No. 1). Plaintiff filed the operative FAC on April 30, 2018. (Dkt. No. 3). Plaintiff's FAC concerns the deceptive labeling of the Bai Beverage Products. (*See generally* FAC). The Products at issue are (1.) Bai Antioxidant Infusion Brasilia Blueberry; (2.) Bai Antioxidant Infusion Burundi Blueberry Lemonade; (3.) Bai Antioxidant Infusion Costa Rica Clementine; (4.) Bai Antioxidant Infusion Ipanema Pomegranate; (5.) Bai Antioxidant Infusion Kula Watermelon; (6.) Bai Antioxidant Infusion Malawi Mango; (7.) Bai Antioxidant Infusion Sao Paulo Strawberry Lemonade; (8.) Bai Antioxidant Infusion Sumatra Dragonfruit; (9.) Bai Bubbles Sparkling Antioxidant Infusion Bolivia Black Cherry; (10.) Bai Bubbles Sparkling Antioxidant Infusion Jamaica Blood Orange; (11.) Bai Bubbles Sparkling Antioxidant Infusion Gimbi Pink Grapefruit; (12.) Bai Bubbles Sparkling Antioxidant Infusion Bogota Blackberry Lime; (13.) Bai Bubbles Sparkling Antioxidant Infusion Peru Pineapple; (14.) Bai Bubbles Sparkling Antioxidant Infusion Lambari Watermelon Lime; (15.) Bai Bubbles Sparkling Antioxidant Infusion Waikiki Coconut Lime; (16.) Bai Antioxidant Cocofusion Madagascar Coconut Mango; (17.) Bai Antioxidant Supertea Narino Peach Tea; (18.) Bai Antioxidant Supertea Paraguay Passionfruit Tea; (19.) Bai Antioxidant Supertea Rio Raspberry Tea, and; (20.) Bai Antioxidant Supertea Socorro Sweet Tea. (collectively "the Products") (FAC ¶ 63).

Each of the Products claim that they are made "with other natural flavors" and have "no artificial sweeteners." (FAC ¶¶ 27-28). The FAC alleges that "Defendants target consumer preferences for natural products that do not contain synthetic ingredients by stating on their website that 'Bai uses only natural flavors without artificial sweeteners to create our fresh, delicious, 5-calorie beverages for consumers who desire better alternatives to high-calorie drinks full of processed synthetic ingredients not found in nature.'" (FAC ¶ 54). Plaintiff alleges that "[a]ll of the Products, however, contain a synthetic chemical flavoring compound identified as

'malic acid'" and that "[t]his 'malic acid' is an inexpensive synthetic chemical used in processed food products to make the taste like tangy fresh fruit - like blueberries, lemons, mangos, or cherries, for example." (FAC ¶ 31).

Plaintiff purchased the Products multiple time since 2012, most recently at the Costco Wholesale store located at 951 Palomar Airport Road, Carlsbad, California. (FAC ¶ 90). Plaintiff's most recent purchase was on or about July 2016. (FAC ¶ 91). "Plaintiff's most recent purchase of the Product was a variety pack for a marked retail price of $19.99, which contained fifteen (15) 18-fluid ounce plastic bottles including the 'Brasilia Blueberry,' 'Kula Watermelon,' 'Ipanema Pomegranate,' and 'Costa Rica Clementine' flavored Products." (FAC ¶ 92).

Plaintiff alleges that "[t]he Products' labels violate California and federal statute and state common law in multiple regards." (FAC ¶ 32). "First, because each Product contains additional flavoring ingredients that simulate and reinforce the characterizing flavor, the front label is required by law to disclose those additional flavors rather than misleadingly suggest that the Product is flavored only by natural fruit juices. Cal. Health & Saf. Code § 109875 *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22." (FAC ¶ 33). "Second, the Products' ingredient list violates federal and state law because it misleadingly identifies the malic acid flavoring ingredient only as the generic 'malic acid' instead of using the specific, non-generic name of the ingredient." (FAC ¶ 34) (citing 21 C.F.R. § 101.4(a)(1)). "Even more deceptive, however, is the fact that the Products, rather than being flavored only with natural juices and flavors as the labels suggest, contain an undisclosed artificial flavor made from petrochemicals" called d-l-malic acid. (FAC ¶¶ 35-36). "This 'malic acid' is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." (FAC ¶ 37).

*Branca v. Bai Brands, LLC, et al.*, Case No. 3:18-CV-00757-BEN-KSC
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
OPPOSITION TO DEFENDANTS BAI BRANDS, LLC'S AND DR. PEPPER SNAPPLE
GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Plaintiff alleges that Defendants have violated California's Consumers Legal

2    Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair

3    Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's

4    False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL") and

5    Plaintiff brings further causes of action from fraud, negligent misrepresentation, and

6    for breach of express and implied warranties. (*See generally* FAC). Plaintiff seeks

7    to represent a class of "[a]ll U.S. citizens who purchased the Products in the United

8    States on or after January 1, 2012 until the date class notice is disseminated,

9    excluding Defendants and Defendants' officers, directors, employees, agents, and

10   affiliates, and the Court and its staff." (FAC ¶ 105). Plaintiff also seeks to represent

11   a California Sub-Class of "[a]ll California citizens who purchased the Products in

12   California on or after January 1, 2012 until the date class notice is disseminated,

13   excluding Defendants and Defendants' officers, directors, employees, agents, and

14   affiliates, and the Court and its staff." (FAC ¶ 106).

15               ### III.   <u>LEGAL STANDARD</u>

16   A pleading that sets forth a claim for relief "must contain a short and plain

17   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

18   8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a

19   "short and plain statement of the claim" is merely to "give the defendant fair notice

20   of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell*

21   *Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Indeed, "a well-pleaded complaint may

22   proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

23   and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556

24   (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

25   Federal Rule of Civil Procedure 12(b) states that "[e]very defense to a claim

26   for relief in any pleading must be asserted in the responsive pleading if one is

27   required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses

28   that a party may assert….by motion." *See* Fed. R. Civ. P. 12(b).  Among the available

defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School District*, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

## IV.   ARGUMENT

### A.   Plaintiff States a Plausible Claim for Relief Against Defendants

1.   <u>Plaintiff Adequately Alleges that the Products Contain D-L-Malic Acid</u>

The Corporate Defendants first argue that Plaintiff fails to adequately allege that the Products contain D-L-Malic Acid. (Dkt. No. 18-1 at 3-5). However, the FAC

-5-

clearly alleges that "Defendants use this artificial petrochemical, d-l-malic acid, in its Products but pretends otherwise, conflating the natural and the artificial flavorings and deceiving consumers." (FAC ¶ 39; s*ee also* FAC ¶ 36 ("Defendants add a synthetic industrial chemical called d-l-malic acid, in the form of a racemic mixture of d- and l-isomers, to flavor the Products and make them taste like fresh fruit"); FAC ¶ 136 ("The Products contain d-l-malic acid.")). These allegations must be accepted as true at the pleadings stage. *See Knievel*, 393 F.3d at 1072.

The Corporate Defendants contend that Plaintiff "does not allege that he conducted testing for the presence of d-l-malic acid" (Dkt. No. 18-1 at 3:7-8), but the Federal Rules impose no such requirement.[1] For example, the Court in *Allred v. Kellogg* found that the plaintiffs there "narrated the what, how, and why with particularity in the complaint" and that "[r]egarding the malic acid, Allred discusses the process to create artificial malic acid and alleges defendants use the artificial version of malic acid, 'd-l-malic acid,' in the product." *Kellogg*, 2018 WL 1158885, at *2. The *Kellogg* Court held that "the allegation's truthfulness is a summary judgment hurdle" and "[t]he Court, at the pleading stage, does not operate as a fact finder, but must presume all facts pled as true." *Id.* Similarly here, Plaintiff's FAC discusses the process to create artificial malic acid (FAC ¶ 37) and alleges that the Products do in fact contain artificial d-l-malic acid. (FAC ¶ 36). Because these allegations are sufficient at the pleadings stage, the Corporate Defendants' Motion to Dismiss should be denied.

2.   California and Federal Law Require that the Products be Labeled as "Artificially Flavored"

The Corporate Defendants next argue that "Plaintiff is simply wrong that federal or state regulations would require the Products to be labeled 'artificially

---

[1] To the extent that the Court is inclined to disagree, then Plaintiff respectfully requests leave to amend to add allegations concerning testing that was performed on the Products.

1   flavored' in any event." (Dkt. No. 18-1 at 5:10-11). This same argument was
2   previously rejected by the *Frito-Lay* Court. *See Frito-Lay*, 2018 WL 1185227, at *4.
3   Under 21 C.F.R. § 101.22(a)(1):

> The term artificial flavor or artificial flavoring means any substance,
> the function of which is to impart flavor, which is not derived from a
> spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast,
> herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry,
> eggs, dairy products, or fermentation products thereof.

8   And under 21 C.F.R. § 101.22(i)(2), if the product contains "any artificial flavor
9   which simulates, resembles or reinforces the characterizing flavor ... the name of the
10  characterizing flavor shall be accompanied by the words 'artificial' or 'artificially
11  flavored.'" *See also* 21 U.S.C. § 343(k) (requiring any foods that use artificial
12  flavorings "bear [ ] labeling stating this fact"). California's Sherman Law expressly
13  incorporates these federal regulations. *See* Cal. Health & Saf. Code § 109875 *et seq.*
14          Defendants contend that malic acid acts as a "flavor enhancer" that "has no
15  distinctive flavor of its own, but that intensifies the flavors from other ingredients."
16  (Dkt. No. 18-1 at 6:6-7 (citing 21 C.F.R. § 170.3(o)(11)). However, Plaintiff's
17  complaint does not allege that malic acid is a "flavor enhancer," but rather that malic
18  acid is a "flavoring ingredient." (FAC ¶¶ 33-34, 88, 115, 208). As the Court in *Frito-
19  Lay* held, "[t]he distinction between an artificial flavor that 'simulates, resembles or
20  reinforces' the characterizing flavor, 21 C.F.R. § 101.22(i)(2), and a 'flavor
21  enhancer' that does not impart its own taste, 21 C.F.R. § 170.3(o)(11), in this
22  instance is a factual determination" and "[w]hether malic acid falls into one of these
23  categories is also a factual determination that would be inappropriately resolved on
24  a motion to dismiss." *Frito-Lay*, 2018 WL 1185227, at *5; *see also Kellogg*, 2018
25  WL 1158885, at *2 ("At this stage, the Court cannot look beyond the pleadings and
26  must take reasonable allegations as true. Both of these hurdles are appropriate for
27  summary judgment, but at this stage, the Court finds Allred has sufficiently pled the
28  ingredients are artificial and used as flavoring agents."); *Engurasoff v. Coca-Cola*

*Co.*, No. C 13-3990 JSW, 2014 WL 4145409, at \*3-4 (N.D. Cal. Aug. 21, 2014) (finding that the federal regulations "are insufficient to insert a requirement that all artificial flavors, by definition, must impart a characteristic taste and/or aroma" and finding "it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at \*4 (N.D. Cal. Mar. 14, 2014) ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors...."); *Ivie v. Kraft Foods Global, Inc.*, No. 12–cv–2554 RMW, 2013 WL 685372, at \*10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether [the ingredients are] used as a sweetener and/or ... a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."). This Court should agree with the reasoning of these district courts and hold that it cannot make a factual determination at this stage as to whether malic acid is an artificial flavor.

3.   The Products Must Identify that they Contain D-L-Malic Acid in the Ingredient List

Defendants argue that they are not required to list the specific isomer of malic acid in the ingredient list. (See Dkt. No. 18-1 at 8). This argument was also rejected by the *Frito-Lay* Court. *See Frito-Lay*, 2018 WL 1185227, at \*3. Under the relevant regulations, a food is misbranded if its label does not "bear [ ] ... the common or usual name of the food" or the "common or usual name of each ... ingredient" that makes up the food. 21 U.S.C. § 343(i); *see also* 21 C.F.R § 101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food ... shall be listed by common or usual name....") This federal regulation also states "[t]he name of an ingredient shall be a specific name and not a collective (generic name)." 21 C.F.R. § 101.4(b).

The Defendants here cite to 21 C.F.R. § 184.1069(a), which states "[m]alic acid ... is the common name for 1–hydroxy–1, 2–ethanedicarboxylic acid." This regulation "goes on to identify two forms of malic acid: L-malic acid, which 'occurs naturally in various foods' and DL-malic acid, which does not." *Frito-Lay*, 2018 WL 1185227, at \*3. As stated by the *Frito-Lay* Court:

> While Defendants argue malic acid is the "common name of all forms of malic acid," [] this assertion does not find support in the regulations. Indeed, "malic acid" is the common name "for 1–hydroxy–1, 2–ethanedicarboxylic acid." 21 C.F.R. § 184.1069(a). If Plaintiffs were arguing Defendants should list "1–hydroxy–1, 2–ethanedicarboxylic acid" on the Product's ingredient list, that would be a different story. But it is clear there are two forms of malic acid, thus, Plaintiffs argue d-l malic acid is the specific name for one type of malic acid. And, 21 C.F.R. § 184.1069(a), the regulation on malic acid, states that the "ingredients" (plural) are used in food, thus, it is plausible that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid.

*Id.* This Court should reach the same conclusion here. The document attached as Exhibit 3 to the Corporate Defendants' Request for Judicial Notice even supports this conclusion. (*See* Dkt. No. 20-3). The Corporate Defendants contend that Exhibit 3 is The National Organic Standards Board, Technical Advisory Report on Malic Acid (April 2003). (Dkt. No. 20 ¶ 3). Page four of that document notes that D-L Malic Acid has a different chemical makeup than L-Malic Acid. (Dkt. No. 20-3 at 4). Thus, it is plausible "that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid." *Frito-Lay*, 2018 WL 1185227, at \*3. Thus, the Corporate Defendants' Motion to Dismiss should be denied.

### 4. Plaintiff's State Law Claims Are Not Preempted by Federal Law

The Corporate Defendants next argue that Plaintiff's claims are preempted. (Dkt. No. 18-1 at 9-10). "When Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements." *Clancy v. The Bromley Tea*

1    *Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013). "However, it did not attempt to

2    completely preempt state laws regarding the marketing of food products. To the

3    contrary, Congress specifically anticipated states enacting their own identical laws."

4    *Id.* (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)).

5    "California complied with this requirement in passing the Sherman Law, which

6    expressly adopts the federal labeling requirement." *Id.* Under the Sherman Law, "All

7    food labeling regulations and any amendments to those regulations adopted pursuant

8    to the federal act ... shall be the food regulations of this state." *See* Cal. Health &

9    Safety Code § 110100(a).

10           Instructive here is the case of *Wilson v. Frito-Lay N. Am., Inc.*, where the court

11   held that "[s]ince Plaintiffs' state law claims rely on statutes that explicitly

12   incorporate federal law and regulations without modification, and since those claims

13   also do not attempt to impose stricter requirements than those laws or regulations,

14   Plaintiffs' state law claims are not preempted. These claims are all based on the

15   theory that by not complying with the relevant federal laws and regulations,

16   Defendants' labels mislead and deceive consumers." No. 12-1586 SC, 2013 WL

17   1320468, at *9 (N.D. Cal. Apr. 1, 2013); *see also Figy v. Frito-Lay N. Am., Inc.*, 67

18   F. Supp. 3d 1075, 1082 (N.D. Cal. 2014) ("Plaintiffs' state law claims are based on

19   California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code §

20   109875 *et seq.*, which adopts and incorporates the FDCA."). Here, Plaintiff's state

21   law claims are likewise based on violations of California's Sherman Law, which is

22   identical to the FDCA. (FAC ¶ 33). The Corporate Defendants argue that "Plaintiff

23   seeks to hold defendants liable for not labeling the products as 'artificially flavored'

24   when federal regulations would prohibit such a label" and "Plaintiff seeks to hold

25   defendants liable for using 'malic acid' as the common or usual name for malic acid

26   – something expressly permitted by the applicable regulations." (Dkt. No. 18-1 at

27   11:12-16). However, as discussed in the sections above, Plaintiff is not seeking to

28   hold Defendants liable for conduct that is permitted by the applicable regulations.

-10-

The Court in *Frito-Lay* also held that the same claims concerning malic acid are not preempted. *See Frito-Lay*, 2018 WL 1185227, at *3-5. This Court should reach the same conclusion here.

      5.    <u>Whether a Reasonable Consumer Would be Misled Is Not Appropriate for Determination on a Motion to Dismiss</u>

     The Corporate Defendants next argue that "Plaintiff cannot point to any conduct by defendants that is 'likely to deceive' a 'reasonable consumer.'" (Dkt. No. 18-1 at 11:27-28). However, the label of the Products affirmatively represent that the Products are made "with other natural flavors" (FAC ¶¶ 27-28) and the labels fail to disclose that the Products are actually made with an artificial flavoring ingredient. (FAC ¶ 30). Defendants argument fails because whether or not a reasonable consumer would be misled "is a question of fact not appropriate for determination [on a motion to dismiss]." *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014); *see also Frito-Lay,* 2018 WL 1185227, at *5 ("The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list."); *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) ("Defendant argues that since partially hydrogenated vegetable oil, which contains trans fat, is disclosed as one of the ingredients in its products, no reasonable consumer could be misled. Although this factor may be relevant in the fact-intensive reasonable consumer analysis, *Williams* instructs that such reasoning cannot be the basis for granting a motion to dismiss."); *Hall v. Diamond Foods, Inc.*, No. C-14-2148 MMC, 2014 WL 5364122, at *4 (N.D. Cal. Oct. 21, 2014) ("Accordingly, the claims based on Reduced Fat Sea Salt Chips are not subject to dismissal for failure to allege sufficient facts to satisfy the reasonable consumer test.").

-11-

This case is again akin to *Allred v. Kellogg* where the Court held that "[a] reasonable consumer could construe the packaging as depicting all natural ingredients and flavors." *Kellogg*, 2018 WL 1158885, at *3. The Bai Product labels contain images of fresh fruit (FAC ¶ 26) and this "image certainly gives an impression of" all-natural ingredients. *Kellogg*, 2018 WL 1158885, at *3. This is especially true since the products explicitly state they are made "with other natural flavors" and "no artificial sweeteners." (FAC ¶¶ 27-28); *Frito-Lay*, 2018 WL 1185227, at *5.

The cases cited by Defendant are inapplicable because Plaintiff is not merely alleging a violation of "a technical FDA regulation," but rather that Defendants' affirmative statement that the Products being made "with other natural flavors" is likely to mislead a reasonable consumer, as is Defendants' omission of the legally-required front-of-package label notifying the consumer that the Products are artificially flavored. For example, Defendants' reliance on *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955- LHK, 2017 WL 1065293 (N.D. Cal. Mar. 21, 2017) is misplaced. In *Hadley*, the Court dismissed the complaint because "Plaintiff has failed to adequately allege the amount of added sugar in Defendant's products and that the amount of added sugar is excessive and unhealthy." *Hadley*, 2017 WL 1065293, at *19. The plaintiff in *Hadley* failed to quantify the amount of sugar that would make a product unhealthy and failed to plead the amount of sugar that was even present in many of the products. *Id.* In contrast, this case presents a simpler question. The FAC plausibly alleges that d-l-malic acid is an artificial flavoring ingredient. (FAC ¶ 30, 37). The applicable Health and Safety regulations require Defendants to disclose their use of these artificial flavoring ingredients and it is plausible that Defendants' failure to make this required disclosure, along with their affirmative representation that the Products are made with "other natural flavors" is likely to deceive a reasonable consumer. *See* Cal. Health & Saf. Code §§ 109875

-12-

(incorporating 21 CFR § 101.22); *Ivie*, 2013 WL 685372, at *10. This is a clear-cut case of deception and Plaintiff's FAC should not be dismissed.

### 6.   Plaintiff's Nationwide Class Allegations Are Sufficient

The Corporate Defendants argue that "Plaintiff's claims fail as a matter of law with respect to non-California residents." (Dkt. No. 18-1 at 13). The Corporate Defendants are essentially asking this Court to dismiss Plaintiff's nationwide class allegations at the pleadings stage. However, courts have rejected similar arguments. *See Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) (denying the defendant's motion to strike nationwide class claims because "there has been no choice-of-law analysis in this case: Defendant—who bears the burden of demonstrating that foreign law, rather than California law, should apply to class claims in a California choice-of-law analysis—provides no support for its position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to Werdebaugh's class claims." (citation and quotation marks omitted)).

The *Werdebaugh* Court noted that a detailed choice of law analysis, as required by *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ("*Mazza*"), "would be premature" at the pleadings stage. *Werdebaugh*, 2013 WL 5487236, at *16. Other courts are in accord with this holding. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, No. 12–3003, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012) ("Significantly, *Mazza* was decided on a motion for class certification, not a motion to strike. At [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate. Since the parties have yet to develop a factual record, it is unclear

-13-

whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims.") (citation omitted); *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 923 (N.D. Cal. 2012) ("Although *Mazza* may influence the decision whether to certify the proposed class and subclass, such a determination is premature. At [the motion to dismiss] stage in the litigation– before the parties have submitted briefing regarding either choice-of-law or class certification– plaintiff is permitted to assert claims under the laws of different states in the alternative."); *T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) ("The Court finds that a more detailed choice-of-law analysis is required to rule on this issue, and so the Court sees no reason to depart from its usual approach of addressing choice-of-law issues at a later stage.").

Moreover, in addition to claims under California's consumer protection laws, Plaintiff brings claims for negligent misrepresentation (FAC ¶¶ 193-205) and for fraud by omission. (FAC ¶¶ 206-211). Significantly, "the fundamental elements of fraud are substantially similar from state to state." *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009). "Virtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, the defendant intended to induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." *Id.* The *Spencer* Court found that "common legal issues predominate with respect to how states treat fraud claims" and the "Plaintiffs have adequately demonstrated that the elements of fraud are substantially similar from state to state." *Id.* at 301. Moreover, for fraudulent omissions (as are alleged in this case), a person cannot rely on information not provided to them and, therefore, Plaintiff only needs to prove that the omitted information was material, an objective standard that can be determined through common evidence. Thus, it would be premature to dismiss Plaintiff's nationwide class allegations at this stage of the litigation. *Werdebaugh*, 2013 WL 5487236, at *16.

-14-

The authorities cited by the Corporate Defendants are not applicable to this issue. For example, *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) was a commerce clause case that involved an Illinois statute "that directly regulates transactions which take place across state lines, even if wholly outside the State of Illinois." *Edgar* did not discuss a choice-of-law analysis in a consumer protection class action. Moreover, *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1063 (N.D. Cal. 2014) was an employment law case that did not involve claims for common law fraud. It was clear in *Cotter* that California's employment laws could not apply extraterritorially, whereas here, it is unclear at this stage whether California's consumer laws may apply extraterritorially. *Werdebaugh*, 2013 WL 5487236, at *16. For these reasons, the Court should decline to dismiss Plaintiff's nationwide class allegations and reserve the issue for the class certification stage.

7.   Plaintiff Adequately Alleges Claims for Breach of Express and Implied Warranties

The Corporate Defendants' arguments with respect to Plaintiff's warranty claims should also be rejected. "A warranty relates to the title, character, quality, identity, or condition of the goods." *Keith v. Buchanan*, 173 Cal.App.3d 13, 20 (1985) (internal citation omitted.). For Plaintiff to state a claim for breach of warranty, he must allege that: (a) the defendant made a warranty; (b) the product did not comply with the warranty at the time of sale; (c) plaintiff's injury was proximately caused by the defective nature of the product; and (d) the plaintiff suffered damage. *Hauter v. Zogarts*, 14 Cal. 3d 104, 105 (1975). Liability under an implied warranty "does not depend on any specific conduct or promise of defendant, but turns on whether the product is merchantable under the California Uniform Commercial Code." *Id.* A product is not considered merchantable if it does not "[c]onform to the promises or affirmations of fact made on the container or label." *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *9 (S.D. Cal. Oct. 29, 2013) (citing Cal. Civ. Code § 1791.1).

-15-

1    Here, Plaintiff alleges that Defendants made express warranties by labeling
2 the Products as containing "other natural flavors." (FAC ¶ 27-28, 167). Plaintiff
3 alleges that the Products did not comply with this express warranty because the
4 Products contain an artificial flavoring ingredient called d-l-malic acid. (FAC ¶¶ 30-
5 31, 36-37). Plaintiff also alleges that his injury was proximately caused by the
6 defective nature of the Products and that he suffered damages as a result. (FAC ¶
7 173). These allegations are sufficient at the pleadings stage. *See Kellogg*, 2018 WL
8 1158885, at *6 ("While Kellogg continues to argue the labeling of its product
9 contains a factually true statement (i.e. that there is a vinegar flavor regardless of its
10 artificiality), the statement can be misleading based on the assumption of the reader.
11 Whether the label actually provided a warranty and is likely to deceive a consumer
12 are not appropriate questions to decide on a dismissal motion."); *Frito-Lay*, 2018
13 WL 1185227, at *6 ("Plaintiffs have pled the elements of their claim for breach of
14 express warranty because they have alleged the statements made on the Product
15 packaging promised there were 'no artificial flavors;' they have alleged they
16 reasonably relied on these statements; and they have alleged that the Product did not
17 provide what was promised."). Therefore, the Court should decline to dismiss
18 Plaintiff's warranty claims.

19       8.    Plaintiff Adequately States a Claim for Fraud and Negligent
20             Misrepresentation and Satisfies the Requirements of Rule 9(b)

21    The Corporate Defendants also seek dismissal of Plaintiff's claims for
22 negligent misrepresentation and fraud by omission. (Dkt. No. 18-1 at 16). The
23 Corporate Defendants argue that "'malic acid' is not a 'flavor' and the Products are,
24 in fact, naturally flavored." (Dkt. No. 18-1 at 16:7-8). However, the FAC alleges that
25 the Products contain an artificial flavoring ingredient called d-l-malic acid. (FAC ¶¶
26 30-31, 36-37). As discussed previously, these allegations must be taken as true at the
27 pleadings stage. *Frito-Lay*, 2018 WL 1185227, at *5; *Kellogg*, 2018 WL 1158885,
28 at *2; *Engurasoff*, 2014 WL 4145409, at *3-4; *Gitson*, 2014 WL 1048640, at *4.

-16-

To allege a claim for negligent misrepresentation, a plaintiff must plead: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.*, 196 Cal. App. 4th 1559, 1573 (2011). Here, Plaintiff's FAC is sufficient because Plaintiff alleges that "Defendants represented the Products to Plaintiff and the Class as solely naturally flavored as if this were true" (FAC ¶ 197). Plaintiff alleges that this not true because the Products contain an artificial flavoring ingredient called d-l-malic acid. (FAC ¶¶ 30-31, 36-37). Plaintiff alleges that "Defendants had no reasonable basis for believing that the Products were naturally flavored at the time or any time relevant to this action" (FAC ¶ 200) and that "Defendants intended for Plaintiff and the Class to rely on this representation." (FAC ¶ 201). Plaintiff alleges that he and the class reasonably relied on Defendants' representation (FAC ¶ 201) and suffered damages thereby. (FAC ¶ 202-203). Thus, Plaintiff has sufficiently pled a cause of action for negligent misrepresentation.

A failure to disclose a fact can also constitute actionable fraud or deceit when: (1) the defendant is the plaintiff's fiduciary; (2) the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (Cal. Ct. App. 2011). Plaintiff successfully alleges a cause of action for fraud by omission because Plaintiff alleges that Defendants actively concealed the material fact that the Products contain an artificial flavoring. (FAC ¶ 208). Defendants also made a partial representation by claiming that the Products are made with "other natural flavors" (FAC ¶¶ 27-28) when in fact they contain an artificial flavoring ingredient called d-l-malic acid. (FAC ¶¶ 30-31, 36-37). Thus, Plaintiff states a claim for fraud by

-17-

omission.

With respect to Defendants' argument that the complaint fails to satisfy the heightened pleading requirements of Rule 9(b), this is also incorrect. Rule 9(b) does not impose as onerous of a burden as Defendants contend. Allegations of fraud or mistake need only be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba– Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Rosales v. FitFlop*, 882 F. Supp. 2d 1168, 1176 (S.D. Cal. 2012) (finding UCL plaintiffs complied with Rule 9(b) by: (1) providing reproductions of defendant's product advertisements and identifying the allegedly misleading language; (2) identifying the time period of the product's advertising campaign; and (3) providing facts showing defendants misrepresented the product's benefits); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077-78 (E.D. Cal. 2010) (finding Rule 9(b) satisfied where the plaintiffs alleged that during a certain period of time the defendant made certain labeling claims on its drink products, submitted examples of the labels, explained what was misleading about the labels, and alleged that they would not have purchased the products had they known the truth). Here, Plaintiff alleges the "who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Thus, Plaintiff satisfies the pleading requirements of Rule 9(b).

9.    Plaintiff Adequately Alleges Secondary Liability

Defendants contend that Plaintiff fails to allege a claim for secondary liability against Defendants Larry Young, Ben Weiss, and Justin Timberlake (the "Individual Defendants."). Because the Individual Defendants have raised these same arguments in a separate Motion to Dismiss (Dkt. No. 19-1), Plaintiff will respond to these arguments in his Opposition to the Individual Defendants' Motion to Dismiss.

-18-

## B.    Plaintiff Has Standing to Pursue Injunctive Relief

The Corporate Defendants next argue that Plaintiff lacks standing to pursue injunctive relief. (Dkt. No. 18-1 at 18). As Defendants recognize, however, the Ninth Circuit has recently resolved this issue. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-69 (9th Cir. 2018) ("*Davidson II*"). The *Davidson II* Court noted that "[i]t [was] an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 967. The Ninth Circuit "resolve[d] this district court split in favor of plaintiffs seeking injunctive relief" and held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969.

Here, Plaintiff alleges that he "intends to, seeks to, and will purchase the Products again when he can do so with the assurance that Products' label, which indicate that the Products are naturally flavored, are lawful and consistent with the Products' ingredients." (FAC ¶ 100). This allegation is sufficient to confer standing to seek injunctive relief. *See Davidson II*, 889 F.3d at 971; *Kellogg*, 2018 WL 1158885, at *7 (finding that plaintiffs have standing to pursue injunctive relief because they "similarly pled future injury by stating 'Plaintiffs intend to, desire to, and will purchase the Product again when they can do so with the assurance that the Product's label ... is lawful and consistent with the Product's ingredients.'"). Thus, Plaintiff has sufficiently alleged standing to pursue injunctive relief.

**C.     The Court Has Specific Personal Jurisdiction Over the Corporate Defendants and the Nationwide Class**

The Corporate Defendants contend that the Court lacks personal jurisdiction with respect to the putative nationwide class. (Dkt. No. 18-1 at 20-24). The Corporate Defendants seem to concede, as they must, that the Court has *specific* personal jurisdiction over them with respect to Plaintiff's individual claims. Indeed, the FAC alleges that "Bai sells the Products to California consumers in retail outlets all across the state of California" and that "California is Bai's largest market accounting for approximately 15% of nationwide sales." (FAC ¶ 8). The FAC further alleges that "Defendants have sufficient minimum contacts with this State and sufficiently avail themselves of the markets of this State through the promotion, sales, and marketing of the Products within the State to render the exercise of jurisdiction by this Court reasonable." (FAC ¶ 10). Plaintiff alleges that he purchased the Products in California. (FAC ¶¶ 89-90). These jurisdictional facts are uncontroverted and are sufficient to confer specific personal jurisdiction. *See AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (finding specific personal jurisdiction where the defendants intentionally advertised and offered the products for sale in the forum).

The Corporate Defendants instead argue, citing to *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ("*Bristol-Meyers*"), that the Court lacks specific personal jurisdiction for the claims of non-California residents. (Dkt. No. 18-1 at 21). As the Corporate Defendants also concede, however, courts within the Ninth Circuit have found *Bristol-Meyers* to be inapplicable in the class action context. (Dkt. No. 18-1 at 23). In *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017), the Court declined to extend the holding in *Bristol-Meyers Squibb* to consumer class actions.

Recently, Judge Houston of this District reached a similar conclusion:

> [T]he Court finds *Bristol-Myers* inapplicable to this suit which involves a class action. *Bristol-Myers* was a mass tort action and it determined the court's exercise of jurisdiction to hear claims by named non-resident plaintiffs. While the claims of the non-resident named plaintiffs were pertinent to the issue of specific jurisdiction in *Bristol-Myers*, "claims of unnamed class members are irrelevant to the question of specific jurisdiction." *AM Trust v. UBS AG*, 78 F.Supp.3d 977, 986 (N.D. Cal. 2015). Furthermore, Justice Sotomayor notes, in her dissent, that the majority left open the question of the decision's applicability to class actions. 137 S.Ct. at 1789 n.4 ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."). This Court declines to extend the holding of *Bristol-Myers* to this case involving a class action.

*In re Morning Song Bird Food Litig.*, No. 12CV01592 JAH-AGS, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) (J. Houston). Other Courts have agreed with this reasoning and have held that *Bristol-Myers* is not applicable to class actions. *See, e.g., Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, Civ. No. 17-2161, 2018 WL 1377608 (E. D. La. Mar. 19, 2018) ("The Court is not persuaded that *Bristol-Myers* bars this Court's exercise of specific jurisdiction over Spectrum in the instant case. Indeed, Justice Sotomayor recognized that the majority in *Bristol-Myers* did not address the precise issue before this Court: whether the opinion in *Bristol-Myers* 'also appl[ies] to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.'"). Because the majority in *Bristol-Myers* did not apply their reasoning to the class action context, this Court should find the reasoning of Judge Houston persuasive and hold that the Court has personal jurisdiction over the claims of the putative nationwide class. Moreover, it would be premature to decide this issue at the pleadings stage. *See Weisheit v. Rosenberg & Assocs., LLC*, No. CV JKB-17-0823, 2018 WL 1942196, at *5 (D. Md. Apr. 25, 2018) ("the Court need

-21-

1  not decide at this juncture what precisely the contours of a possible class will be, or
2  if the Court will certify a class at all. Simply put, [defendant] has raised its *Bristol-*
3  *Myers* argument too early."). For these reasons, the Court should decline to dismiss
4  Plaintiff's nationwide class claims for lack of personal jurisdiction.

5  **D.   Plaintiff's Claims Are Not Partially Barred by the Statute of**
6  **Limitations**

7  As a last-ditch effort, the Corporate Defendants argue that Plaintiff's claims
8  are partially barred by the statute of limitations. (Dkt. No. 18-1 at 24). Here, Plaintiff
9  alleges that the statute of limitations are tolled based on the "delayed discovery"
10  doctrine. (FAC ¶¶ 101-103).[2]

11  "In order to invoke [the delayed discovery exception] to the statute of
12  limitations, the plaintiff must specifically plead facts which show (1) the time and
13  manner of discovery and (2) the inability to have made earlier discovery despite
14  reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
15  No. C–05–04726 RMW, 2008 WL 4544441, *8 (N.D. Cal. Sept. 30, 2008) (quoting
16  *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (Ct. App. 1978)). "The
17  delayed discovery rule is available to toll the statute of limitations under the CLRA,
18  UCL, and FAL." *Plumlee v. Pfizer, Inc.*, No. 13-CV-414-LHK, 2014 WL 695024,
19  at *8 (N.D. Cal. Feb. 21, 2014). "This rule applies even where plaintiff is prosecuting
20  a class action." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (N.D. Cal.
21  2010) (citing *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 141, 160–61 (Ct.
22  App. 1999) (applying the standard to a class action)).

23  Here, Plaintiff satisfies the standard for delayed discovery tolling. Plaintiff
24  alleges that he "did not discover that Defendants' labeling of the Products was false
25  and misleading until April 2018, when he learned the Products contained
26  undisclosed artificial flavoring." (FAC ¶ 101). After learning that the Products

27
28  [2] "[I]t is well-settled that statutes of limitations are affirmative defenses, not pleading requirements." *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003).

contained undisclosed artificial flavoring, Plaintiff filed this lawsuit on April 19, 2018. (Dkt. No. 19). Plaintiff further alleges that he and "the Class members are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Products. Nevertheless, they would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law." (FAC ¶ 102). These allegations are sufficient to invoke the delayed discovery doctrine and Defendants' Motion to Dismiss should be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Corporate Defendants' Motion to Dismiss in its entirety. If the Court dismisses any portion of the FAC, then Plaintiff respectfully requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated: July 23, 2018             Respectfully submitted,


                                 */s/ Ronald A. Marron*
                                 RONALD A. MARRON

                                 **LAW OFFICES OF**
                                 **RONALD A. MARRON**
                                 Ronald A. Marron
                                 *ron@consumersadvocates.com*
                                 Michael T. Houchin
                                 *mike@consumersadvocates.com*
                                 651 Arroyo Drive
                                 San Diego, CA 92101
                                 Telephone: (619) 696-9006
                                 Fax: (619) 564-6665
                                 ***Counsel for Plaintiff and the Proposed Class***