Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
Navdeep K. Singh - SBN 284486
singh.navdeep@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Creighton R. Magid *(admitted pro hac vice)*
magid.chip@dorsey.com
**DORSEY & WHITNEY LLP**
1401 New York Avenue NW, Suite 900
Washington, DC 20005
Telephone:  (202) 442-3555
Facsimile:  (202) 442-3199

Elizabeth Baksh *(admitted pro hac vice)*
baksh.elizabeth@dorsey.com
**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201

Attorneys for Defendants
BAI BRANDS, DR PEPPER
SNAPPLE GROUP, INC., LARRY
YOUNG, BEN WEISS and JUSTIN
TIMBERLAKE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BRANCA, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>BAI BRANDS, LLC, a New Jersey Limited Liability Company; DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation; LARRY YOUNG, an individual; BEN WEISS, an individual; JUSTIN TIMBERLAKE, an individual,<br><br>                    Defendants. | CASE NO. 3:18-CV-00757-BEN-KSC<br><br>**DECLARATION OF CREIGHTON R. MAGID IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS** |

## DECLARATION OF CREIGHTON R. MAGID

I, Creighton R. Magid, hereby declare as follows:

1.     I am a Partner in the law firm of Dorsey & Whitney LLP and am one of the attorneys representing the Defendants in this matter.  The information contained in this declaration is based on my personal knowledge.

2.     Because the Complaint and the First Amended Complaint did not indicate the basis for Plaintiff's assertion that the Bai beverages at issue contained synthetic d-l-malic acid, and because Bai Brands, LLC's malic acid supplier had represented that the malic acid used in Bai Brands, LLC's fruit-flavored beverages was l-malic acid, my law partner, Kent Schmidt, and I sent a letter to Ronald Marron, counsel for Plaintiff, inquiring whether Mr. Marron was in possession of information that would contradict our understanding of the beverages' ingredients. A true and correct copy of our June 4, 2018, letter is attached hereto as Exhibit A.

3.     Mr. Marron responded by letter on June 8, 2018.  Mr. Marron's letter did not provide any evidence supporting the presence of d-l-malic acid in the Bai beverages.  A true and correct copy of Mr. Marron's June 8 letter is attached hereto as Exhibit B.

4.     Mr. Schmidt and I responded to Mr. Marron by letter dated June 18, 2018.  A true and correct copy of the June 18 letter is attached hereto as Exhibit C.

5.     In an effort to verify the representations of Bai Brands, LLC's malic acid supplier that all malic acid supplied for Bai fruit-flavored beverages was l-malic acid, I contacted Eurofins Scientific, a well-known and well-respected global laboratory testing firm with particular expertise in the food, pharmaceutical and consumer products industries and arranged for testing of samples of Bai beverages.

6.     On June 20, 2018, I sent to Eurofins by overnight courier two bottles of Bai Antioxidant Infusion Brasilia Blueberry and two bottles of Bai Antioxidant Infusion Malawi Mango purchased that day from a CVS pharmacy across the street from my office, with instructions to test a sample of each flavor for l-malic acid and

1  for d-malic acid.  I also paid the test fee, which was $200 per sample tested, plus an

2  additional fee for expedited testing.

3       7.    Attached hereto as Exhibit D is a true and correct copy of the test

4  results I received from Eurofins.  The Eurofins report confirmed the presence of l-

5  malic acid in samples of each flavor tested, as well as the absence (within the limits

6  of measurement) of d-malic acid.

7       8.    Attached hereto as Exhibit E is a true and correct copy of a screenshot

8  of https://secure.megazyme.com/D-Malic-Acid-Assay-Kit, which provides pricing

9  on an assay kit "for the determination of D-Malic Acid in foodstuffs, beverages and

10  other materials."

11       9.    Attached hereto as Exhibit F are true and correct copies of screenshots

12  of articles concerning this lawsuit.

13       I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.

15

16       Executed this 6th day of July, 2018 in Washington, DC.

17

18

19       Creighton R. Magid

20

21

22

23

24

25

26

27

28

# EXHIBIT A



June 4, 2018


**VIA ELECTRONIC MAIL**

Ronald A. Marron, Esq.
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103

      Re:    *Kevin Branca v. Bai Brands, LLC, et al., Case No. 3:18-cv-00757-BEN-KSC*

Dear Ron:

      I write regarding several of the allegations contained in the First Amended Complaint that appear to be without a factual or legal basis.  I am hopeful that, after considering this letter, you will either agree to withdraw the allegations or explain the bases for your assertions.

      To begin, the fundamental assumption underlying the claims in the First Amended Complaint is that the Bai beverages at issue contain DL-malic acid.  It is our understanding that this is untrue, and that Bai beverages contain only L-malic acid.  Would you please explain the basis for your assertion that each of the beverages identified in the First Amended Complaint contains DL-malic acid, or agree to withdraw the assertion?

      Next, you have asserted claims against three individual defendants.  As you know, even if the Bai beverages were, as you assert (and as we dispute), mislabeled, none of the three individual defendants could be liable absent, among other things, a showing that they knew that the product was mislabeled.  You have made no allegations, and have no basis for any allegations, that Messrs. Weiss or Young knew that the Bai beverages contained DL-malic acid or were mislabeled in any way.  Consequently, they cannot be held personally liable.  *See, e.g., Balsam v. Trancos*, 203 Cal. App. 4th 1083, 1109 (2012) (corporate directors and officers "do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done).  Please explain the legal and factual basis for your allegations that Messrs. Weiss and Young may be held personally liable, or agree to withdraw the claims against them.

      With regard to Justin Timberlake, you assert that he is "a principal, control person [and] investor" in Bai Brands, LLC.  This is simply not true.  He is simply someone who, as you have noted, "agree[d] to promote" Bai beverages and received units in the company as part of such agreement.  As such, he has no personal liability.  *See, e.g., Luman v. Theismann*, 647 F. App'x 804, 807-808 (9th Cir. 2016) (a celebrity spokesperson for a company is not a seller of the company's products and therefore has no liability arising from sale of the products).  A person also cannot be held personally liable based on the mere fact that he or she is a shareholder.  Moreover, there is no basis for believing that Mr. Timberlake had any knowledge of the type of malic acid in Bai beverages, which further eliminates any claim against him.  Please explain the

Ronald A. Marron, Esq.
June 4, 2018
Page 2

legal and factual basis for your allegations that Mr. Timberlake may be held personally liable, or agree to withdraw the claims against him.

Finally, we fail to understand how the U.S. District Court for the Southern District of California can possibly have personal jurisdiction over any of the three individual defendants. Please explain the legal and factual basis for the proper exercise of personal jurisdiction by this court over the individuals, or agree to withdraw the claims against them.

We would appreciate a response to our inquiries by close of business on June 8, 2018.

Sincerely,

Kent J. Schmidt

# EXHIBIT B

LAW OFFICES OF
# RONALD A. MARRON
### A PROFESSIONAL LAW CORPORATION

651 Arroyo Drive                                                      Tel: 619.696.9006
San Diego, CA 92103                                                   Fax: 619.564.6665

June 8, 2018

**VIA ELECTRONIC MAIL**

Kent J. Schmidt, Esq.
*Schmidt.Kent@dorsey.com*
Dorsey & Whitney, LLP
600 Anton Boulevard, Suite 200
Costa Mesa, California 92626

RE:    ***Kevin Branca v. Bai Brands, LLC, et al.,* Case No. 3:18-cv-00757-BEN-KSC**

Dear Kent:

This letter will serve to respond to your June 4, 2018 correspondence to my attention.

We find it incredulous that Defendants Bai Brands, LLC and Dr. Pepper Snapple Group, Inc. (collectively "Bai") either genuinely does not know or is feigning that it is unaware of the contents of its better-for-you brand products or that the bai beverages contain DL-Malic Acid. Obviously, Bai should have reviewed this information before it decided to embark on a better-for-you nationwide labeling and advertising campaign(s) touting its wholesome and natural contents and before violating federal and state labeling regulations. In your letter, you state that it is your "understanding that Bai beverages contain only L-malic acid." However, you have not provided any additional information or documentation substantiating this claim. Bai should have this information readily available unless it is unaware of what is actually in its products. We stand by our allegations in the First Amended Complaint and will not be withdrawing any claims against Bai. *See Allred v. Kellogg Co.*, No. 17-CV-1354-AJB-BLM, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) (allegations that the products contain D-L Malic Acid are sufficient to state a claim at the pleadings stage).

Moreover, the fact that Bai (a Corporation by definition is a legal fiction, that acts through its agents; therefore the Bai reference hereafter includes the individually named Defendants) is now denying or claims it does not know whether its products contain DL-Malic acid leads us to believe Bai had at least one of three states of mind: (1.) Bai Knowingly disregarded the knowledge that the subject products contained artificial flavoring in conducting the misleading nationwide labeling and advertising campaign(s); (2.) Bai acted with conscious and reckless disregard as to whether the subject products contained artificial flavoring when it engaged in the misleading nationwide advertising and labeling campaign(s); or (3.) Bai didn't

know and didn't inquire as to what the ingredients in, or contents of, the subject products before it engaged in the complained of misleading nationwide advertising and labeling campaign(s).

Bai would have us believe the last scenario presented. Likewise, Bai's counsel would have us believe sophisticated and responsible businessmen such as Messrs. Weiss, Young and Timberlake whom all had a financial interest and equity stake in the Bai better-for-you brand didn't know or care whether the subject products contained Artificial Flavors before engaging in the misleading nationwide advertising and labeling campaign(s).

Defense counsel has asked Plaintiff to provide a legal and factual basis for naming the Bai individuals, however, these proceedings are only at the pleading stage and Plaintiff must be afforded his due process rights to engage in discovery prior to providing a legal and factual basis for liability and personal jurisdiction. Plaintiff's allegations against the individual defendants are sufficient at the pleadings stage and we are confident that Plaintiff's First Amended Complaint will survive a Motion to Dismiss. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) ("[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding that a corporate officer or director "cannot hide behind the corporation where he is an actual participant in the tort").

With respect to Mr. Timberlake, we disagree with your assertion that he cannot be held liable as a celebrity spokesperson. *See Woodard v. Labrada*, No. EDCV160189JGBSPX, 2017 WL 1018307, at *11 (C.D. Cal. Mar. 10, 2017) (holding that Dr. Oz could be liable for carrying out a "branded integration marketing strategy" of weight loss supplement products). In addition to acting as a celebrity spokesperson, Mr. Timberlake was named as the "Chief Flavor Officer" of Bai and also has corporate officer liability based on his participation in the nationwide marketing scheme.

With respect to your assertions regarding personal jurisdiction, it is our understanding that the court will have personal jurisdiction over the individual corporate officers and agents who have participated in the nationwide marketing of the Bai products. *See Brady v. Basic Research*, L.L.C., 101 F. Supp. 3d 217, 230 (E.D.N.Y. 2015) (finding that personal jurisdiction existed over several corporate officers who participated in the marketing of a supplement product that was directed toward the forum). Obviously, we are in the early stages of this litigation and Plaintiff would need an opportunity to conduct jurisdictional discovery. *See Ti Beverage Grp., Ltd v. Terra Firma USA Inc.*, No. CV 13-5685-JFW (EX), 2013 WL 12116384, at *1 (C.D. Cal. Dec. 30, 2013) ("Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)).

Please let us know by no later than **June 13, 2018** whether your clients will agree to participate in jurisdictional discovery in advance of filing a motion to dismiss based on personal jurisdiction. As part of this jurisdictional discovery, Plaintiff will need to take the depositions of Messrs. Weiss, Young, and Timberlake, so please inquire as to their availability.

Furthermore, as discussed earlier in the week, Plaintiff is still awaiting provision of any applicable insurance policies and coverage. When do you expert to provide this information to us?

Lastly, you were to check with your clients regarding their interest in attending an early mediation before we expend our resources on this matter. Please let us know the status.

Regards,

**LAW OFFICES OF RONALD A. MARRON**

RONALD A. MARRON

# EXHIBIT C



KENT J. SCHMIDT
Partner
(714) 800-1445
FAX (714) 464-4507
schmidt.kent@dorsey.com

June 18, 2018

**VIA ELECTRONIC MAIL**

Ronald A. Marron, Esq.
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103

      Re:    *Kevin Branca v. Bai Brands, LLC, et al., Case No. 3:18-cv-00757-BEN-KSC*

Dear Ron:

      Thank you for your letter of June 8.

      To be clear, our prior letter did not say, and did not mean to imply, that Dr. Pepper Snapple Group or Bai Brands, LLC, are unfamiliar with the contents of their products.  Rather, we communicated that Dorsey & Whitney, having just been engaged to represent Dr. Pepper Snapple Group and Bai Brands, understood that Bai beverages contain only L-malic acid.

      We understand from your response, however, that neither you nor your client has any knowledge as to whether Bai beverages contain L-malic acid, D-malic acid, or DL-malic acid. You are correct that *Allred v. Kellogg Co.* (a case with which you undoubtedly have familiarity) held that allegations that a product contained DL-malic acid were sufficient to state a claim based on the product's labeling as "all natural."  The point that you have missed however, is that such allegations may only be made if "the factual contentions have evidentiary support."  *See* Fed. R. Civ. P. 11(b)(3).  From your letter, it appears that your allegations lack any such evidentiary support.

      With respect to the issue of personal jurisdiction, it may be, as you note, that a corporate officer or director *may* be held individually liable – but only where the officer or director authorizes, directs, or participates in a tort.  None of that occurred here, and, as indicated in your letter, you have no evidence of any such authorization, direction or participation in a tort. Nor do you provide any basis for concluding that Mr. Timberlake, Mr. Weiss, or Mr. Young had any knowledge regarding the malic acid content of the products at issue.

      Your suggestion that defendants consent to jurisdictional discovery is misplaced.  As the Ninth Circuit made clear in *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) – a case, interestingly, cited in your letter – jurisdictional discovery is not available where, as here, the discovery request is "based on little more than a hunch that it might yield jurisdictionally relevant facts."  *See also Johnson v. Mitchell,* 2012 U.S. Dist. LEXIS 65934 (E.D. Cal. May 10, 2012) (jurisdictional discovery not permitted for purposes of a "fishing expedition").



Ronald A. Marron, Esq.
June 18, 2018
Page 2


With respect to your request for insurance policies, please explain to us why such policies would be relevant at this stage of the litigation.

Sincerely,

DORSEY & WHITNEY LLP

Kent J. Schmidt

# EXHIBIT D

**eurofins**

**Client:** Creighton Magid

Dorsey & Whitney LLP Washington DC

1401 New York Ave, suite 900 Washington, DC 20005

Phone: (202) 442-3555

Email: magid.chip@dorsey.com

| | | | | | |
|---|---|---|---|---|---|
| **Approval Date** | : | June 21, 2018 | **Labeled Age Grade/Size** | : | NA |
| **Date of Receipt** | : | June 21, 2018 | **Tested Age Grade** | : | NA |
| **Retest** | : | No | **Test Request Form #** | : | TRF18061190 |
| **# of Samples Submitted** | : | 2 sets of 2 | | | |
| **Manufacturer's Name** | : | Dr Pepper Snapple Group | | | |
| **Item Description** | : | Bai Beverages | | | |
| **Item Number** | : | NA | | | |
| **Country of Origin** | : | US | | | |
| **Country of Import** | : | NA | | | |
| **PO Number** | : | NA | | | |
| **Delivery Conditions** | : | Satisfactory, Samples tested as received | | | |

The following test item(s) was/were performed on submitted sample(s) and/or component(s) confirmed by applicant

| TEST REQUESTED | RESULT |
|---|---|
| Quantitative Measurement D-malic acid A7013-3** | See Attachment |
| Quantitative Measurement L-malic acid A7012-3** | See Attachment |

** Analysis completed by Eurofins Subcontract Laboratory

**Signed for and on behalf of
Eurofins Product Testing US Inc.**

*[signature]*

**Jhniva Chapman / Project Manager**

This report relates to the above mentioned test item(s) and the extent to tests performed. This test report is not permitted to be reproduced except in full, without written permission of the test facility. This test report does not entitle any safety marks on this or similar products. The sample and the information regarding sample have been provided by the client. All information related to the sample are under liability of the client and have not been checked by Eurofins Product Testing US Inc .

**Eurofins Product Testing US Inc.**
11720 North Creek Pkwy N., #400, Bothell, WA  98011
Phone: (425) 686-3575/Fax: (425) 686-3096 Web: www.EurofinsUS.com

# ATTACHMENT

**Analytical report**

| Sample code Nr. | 370-2018-00174604 | Report Date | 27/06/2018 | Page 1/1 |
|---|---|---|---|---|
| Analytical Report Nr. | AR-18-AA-156539-01 / 370-2018-00174604 | | | |

|  |  |  |  |
|---|---|---|---|
| Our reference : | 370-2018-00174604/  AR-18-AA-156539-01 | **Type :** | EX |
| Client reference : | **U806172-01** | | |
| Sample described as : | Bai beverages Malawi Mango | | |
| Packaging : | Commercial : 2x530ml=1060ml | | |
| | | **Your purchase order reference :** | PO# Q1600053 |
| Sampling/Transport : | FedEx | **Analysis starting date :** | 26/06/2018 |
| Analyses requested : | A9001 : Urgent analysis with supplement | | |
| | A7012 : L-malic acid | | |
| | A7013 : D-malic acid | | |

| Compositional analyses | | | | Results (uncertainty) |
|---|---|---|---|---|
| A7013 | AA | **D-malic acid** | **Method : Internal, Enzymatic assay** | |
| | D-malic acid | | | <0.05  g/l |
| A7012 | AA | **L-malic acid** | **Method : Internal, Enzymatic assay** | |
| | L-malic acid | | | 0.27  (± 0.13) g/l |

**EXPLANATORY NOTE**
This document can only be reproduced in full ; it only concerns the submitted sample.
Results have been obtained and reported in accordance with our general sales conditions available on request.
When declaring compliance or non-compliance, the uncertainty associated with the result has been added or subtracted in order to obtain a result
that can be compared to regulatory limits or specifications.The uncertainty has not been taken into account for standards that already include
measurement uncertainty or on explicit request of client.
The tests are identified by a five-digit code, their description is available on request.

**Analytical report**

| Sample code Nr. | 370-2018-00174637 | Report Date | 27/06/2018 | Page 1/1 |
|---|---|---|---|---|
| Analytical Report Nr. | AR-18-AA-156540-01 / 370-2018-00174637 | | | |

| Our reference : | 370-2018-00174637/   AR-18-AA-156540-01 | | Type : | EX |
|---|---|---|---|---|
| Client reference : | **U806172-02** | | | |
| Sample described as : | Bai beverages Brasilia Blueberry | | | |
| Packaging : | Commercial : 2x530ml=1060ml | | | |
| | | **Your purchase order reference :** | PO# Q1600053 | |
| Sampling/Transport : | FedEx | **Analysis starting date :** | 26/06/2018 | |
| Analyses requested : | A9001 : Urgent analysis with supplement | | | |
| | A7012 : L-malic acid | | | |
| | A7013 : D-malic acid | | | |

| Compositional analyses | | | | Results (uncertainty) |
|---|---|---|---|---|
| A7013 | AA | **D-malic acid** | **Method : Internal, Enzymatic assay** | |
| | D-malic acid | | | <0.05  g/l |
| A7012 | AA | **L-malic acid** | **Method : Internal, Enzymatic assay** | |
| | L-malic acid | | | 1.07  (± 0.21) g/l |

**EXPLANATORY NOTE**
This document can only be reproduced in full ; it only concerns the submitted sample.
Results have been obtained and reported in accordance with our general sales conditions available on request.
When declaring compliance or non-compliance, the uncertainty associated with the result has been added or subtracted in order to obtain a result that can be compared to regulatory limits or specifications.The uncertainty has not been taken into account for standards that already include measurement uncertainty or on explicit request of client.
The tests are identified by a five-digit code, their description is available on request.

**eurofins**

<u>SAMPLE PHOTO(s)</u>

 

***END OF REPORT***

# EXHIBIT E




Welcome Guest    Quick Order    Contact Us    ⊕ Worldwide Distributors    Cart 🛒    USD $    Login    Register

*Setting New Standards in Test Technology'*



🏠    ASSAY KITS    ENZYMES    ENZYME SUBSTRATES    CARBOHYDRATES    CHEMICALS/EQUIPMENT

TECHNICAL SUPPORT     VALIDATED METHODS     ISO Certified    🚚 Expedited Tracked Shipping Worldwide

Home    ⊐    Assay Kits    ⊐    D-Malic Acid Assay Kit

# D-Malic Acid Assay Kit

**Ask a Scientist**

The D-Malic Acid assay kit is suitable for the specific measurement and analysis of D-malic acid (D-malate) in beverages and food products.

Extended cofactors stability. Dissolved cofactors stable for > 1 year at 4°C.

**Suitable for manual, auto-analyser and microplate formats.**





| Product Code | Content/size | Stock | Price | Qty |
|---|---|---|---|---|
| K-DMAL | 100 assays (manual) / 1000 assays (microplate) / 1100 assays (auto-analyser) | | $254.00 | |

Shipping Info    Payment Info    **Add to Cart** ⊕

## Related Products

D-Lactic Acid (D-Lactate) (Rapid) Assay Kit

L-Malic Acid Assay Kit (Manual Format)

L-Malic Acid Assay Kit (Analyser Format)

L-Malic Acid Assay Kit (Liquid Ready Reagents)

L-Malic Acid Assay Kit (MegaQuant™ Format)

Lactose/Galactose Assay Kit (Rapid)

| **Description** | **Publications** | **Documentation** | **FAQs** |
|---|---|---|---|

**UV-method for the determination of D-Malic Acid in foodstuffs, beverages and other materials**

**Principle:**

(D-malate dehydrogenase)

**(1) D-Malate + NAD$^+$ → pyruvate + CO$_2$ + NADH + H$^+$**

**Kit size:**    * 100 assays (manual) / 1000 (microplate) / 1100 (auto-analyser)

**\* The number of manual tests per kit can be doubled if all volumes are halved.**

## Advantages

- No wasted D-malate dehydrogenase solution (stable suspension supplied)
- Very competitive price (cost per test)
- All reagents stable for > 2 years after preparation
- Rapid reaction (even with difficult samples)
- *Mega-Calc*™ software tool is available from

**This can be readily accommodated using the MegaQuant<sup>TM</sup> Wave Spectrophotometer (D-MQWAVE).**

| | |
|---|---|
| **Method:** | Spectrophotometric at 340 nm |
| **Reaction time:** | ~ 6 min |
| **Detection limit:** | 0.26 mg/L |

our website for hassle-free raw data processing

- Standard included
- Extended cofactors stability
- Suitable for manual, microplate and auto-analyser formats

**Application examples:**

Wine, beer, fruit juices, soft drinks, dietetic foods, candies, fruit and vegetables, cosmetics, pharmaceuticals and other materials (e.g. biological cultures, samples, etc.)

**Method recognition:**

Methods based on this principle have been accepted by EEC, EN, DIN, OIV, IFU, and AIJN

---

| ABOUT | ACCREDITATION | CUSTOMER SUPPORT | SERVICES | NEWS | LEGAL |
|---|---|---|---|---|---|
| About Us | Validation Methods | Ordering | Analytical Services | Press | Imprint |
| Vision | ISO | Payment | Consultancy | News | T&CS |
| Awards | REACH | Shipping & Delivery | | Conference & Events | Privacy |
| CSR | | Returns | | New Products | Statement |
| Industries | | My Account | | | Cookies |
| Careers | | FAQs | | | |
| Contact Us | | Catalogues and Brochures | | | |
| | | Customer Support | | | |
| | | Ask A Scientist | | | |

**MEGAZYME**

Tel: +353 1 2861220 (worldwide)
Tel: 312-212-4361 (USA)

**NEWSLETTER SIGN UP**

email address          first name          last name

     

          Created by                         Sitemap

© 2018 Megazyme

# EXHIBIT F





**BRIEF**

# Bai Brands sued over lab-made malic acid

By Cathy Siegner

Published April 27, 2018

POST    SHARE    TWEET

---

## Dive Brief:

- Bai Brands is the target of a class-action lawsuit claiming that its use of a synthetic form of malic acid means the product should be labeled as "artificially flavored," according to Food Navigator. The ingredient is used as a flavor enhancer or flavoring agent to add tartness and has been deemed generally recognized as safe by the U.S. Food and Drug Administration.

- The lawsuit, Branca v. Bai Brands, LLC, was filed in U.S. District Court in California on April 19 by attorney Ronald A. Marron, whose law firm has filed similar complaints against Kellogg's Pringles chips, PepsiCo's Frito-Lay, Sunny Delight and Campbell Soup's V8 Splash.

- A spokesman for Dr Pepper Snapple Group, which owns Bai Brands, told Food Navigator, "We stand by the claims and information on our labels. There's no merit to this lawsuit, and we will defend against it vigorously."

## Dive Insight:

Bai Brands lists both "natural flavors" and "malic acid" on product labels. Whatever fruit the variety contains and "with other natural flavors" is also printed on the front of the can or bottle. However, the company doesn't disclose the purpose of malic acid.

The ingredient occurs naturally in some fruits — including apples, watermelon and pears — but the kind Bai Brands uses is manufactured synthetically. According to the lawsuit, it "is in fact manufactured in petrochemical plants from benzene or butane — components of gasoline and lighter fluid, respectively — through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts."

Drink makers use malic acid to mask the aftertaste of artificial sweeteners, balance sweetness with acidity, and function as a preservative. Diet soft drinks sometimes contain malic acid, although it isn't always specifically listed.

This lawsuit could be seen as a symptom of the growing consumer demand for transparency from manufacturers of foods and beverages about how their products are made. A study last year from Response Media found that nine out of 10 respondents wanted transparency in product ingredients and sources, along with more in-depth information.

As the complaint puts it, "Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium, all-natural product with only natural flavoring ingredients instead of a product that is artificially flavored. [This] is deliberately intended to give consumers false the impression that the products are composed only of natural fruits and fruit juices and not artificially flavored as they actually are."

Food and ingredient makers are closely watching these recent cases — some of which, like the Kellogg and Frito-Lay ones, judges have already refused to dismiss — because the outcomes could set precedents about how they formulate and label products in the future.

Because the food companies won't comment on pending litigation, it's hard to tell how they intend to frame their defense. In Frito-Lay's motion to dismiss, company lawyers argued before a federal judge in California that the plaintiffs hadn't proven the label on its salt and vinegar chips would "deceive a reasonable consumer." The judge rejected that argument, saying it first must be determined whether the company is obliged to label its product as containing an artificial flavor. Also, she wrote that malic acid's absence on the Food and Drug Administration's list of artificial flavors doesn't mean that it isn't one.

If Bai Brands or other manufacturers using synthetic malic acid must include "artificial flavoring" claims on their packaging, it's possible consumers would steer clear of the products and chose others with cleaner labels or those containing more natural ingredients.

Consumer research supports such an outcome. According to Innova, 75% of U.S. consumers say they check ingredient labels, and 91% think the ones with recognizable ingredients are better for them. And, in a Nielsen study from 2014, more than 60% said it was important in making purchasing decisions at the store that products not contain artificial colors and flavors.

## Recommended Reading:

 Food Navigator
Bai Brands latest target in malic acid lawsuits; Dr Pepper blasts 'meritless' complaint ↗

 SHARE   TWEET   POST   EMAIL   PRINT

Filed Under: Ingredients  Corporate  Policy

*Top image credit: Megan Poinski*

## 🔥 MOST POPULAR

1.  Say Cheez! '90s favorite Cheez Balls are back

2.  Califia Farms raises $50M to expand, promote launch of non-dairy products

☐ msn | entertainment ☐                    ⬚ web search                    Sign in   ☐   EN

You May Like
 The Most Addictive Game Of The Year! Elvenar - Free Online Game
 Air Conditioning Is Now Finally Affordable Thanks T... AirCool
 Promoted Links by Taboola Is She The Most Beautiful Girl In The World? Terminados-woman

☐ AdChoices


Bublé reveals gender of his third child


Sarah Hyland shows off surgery scars bikini pic


Report: EMT allegedly hit h



# Justin Timberlake sued in class action case for deceiving consumers

Marisa Laudadio        2018-05-03

    

© 2018 Microsoft

Privacy & Cookies    Terms of use    Feedback   ☐




Hisense
"This Hisense dehumidifier has worked wonders!" - Frank C.
70-Pint 2-Speed Dehumidifier
Ad
POWERED BY LOWE'S

● ● ● ●

## MORE FROM MSN


Canadians to Trump: Don't mess with us
Maclean's


More human remains found at...
Canadian Press

'Rhino poachers' eaten by lions

BBC News



© Matt Baron/REX/Shutterstock   Justin Timberlake arrives at the 38th Brit Awards at the O2 Arena in London on Feb. 21, 2018.

Justin Timberlake has been named as a defendant in a class-action lawsuit brought by a California man.

Kevin Branca says the pop star is helping Bai beverages -- a company in which Justin plays a key role -- deceive consumers who think they're drinking something all-natural when, in fact, the product is anything but.

The Blast reported on May 3 that the class-action suit just added JT -- who is the first ever "Chief Flavor Officer" of Bai Brands, in which he invested in 2016 -- to its complaint that's already going after Bai Brands, Dr. Pepper Snapple Group, Dr. Pepper president Larry Young and Bai founder Ben Weiss.

When Justin got involved in the company, he issued a statement

explaining, "I've been a fan of Bai for a long time. This partnership was created from a shared desire to help people put better ingredients in their bodies without sacrificing taste."

But Bai's drinks, the lawsuit alleges, are actually chock-full of unnatural ingredients and artificial flavors despite labeling that claims they are all-natural and flavored naturally. That "false and misleading," labeling, the suit explains, is in violation of state and federal law.

© MediaPunch/REX/Shutterstock   Justin Timberlake and *NSYNC are honored with a star on the Hollywood Walk of Fame on April 30, 2018.

Justin has now been accused of being a knowing participant in the alleged fraud because, according to the lawsuit, his "monetary assistance, creative inputs and marketing of Bai helped elevate the better-for-you and name-recognition of the brand," The Blast reports.

The lawsuit also claims that Justin "aided this scheme by agreeing to promote the Products and their ingredients on a nationally aired commercial advertisement during the 2017 Super Bowl, which reached millions of consumers, which was an essential tool to carry out the fraudulent sales and marketing of the Bai Products."

But wait -- there's more: The suit also states that Bai and Justin knowingly entered into agreements "to commit fraud and other unlawful acts by agreeing to promote artificially flavored beverage products as if they were solely naturally flavored without synthetic chemical ingredients."

© Michael Buckner/Variety/REX/Shutterstock   Chris Kirkpatrick, Lance Bass, JC Chasez, Joey Fatone, and Justin Timberlake reunite as NSYNC is honored with a star on the Hollywood Walk of Fame in Los Angeles on April 30, 2018.

So what, exactly, are these artificial ingredients? An article on the Top Class Actions website explains, "According to the Bai fruit drinks class action, Bai beverages contain a synthetic chemical flavoring compound known as malic acid. Branca claims that malic acid mimics the fresh fruit flavors of blueberries, mangos and cherries but Bai drinks' front labels do not reflect the artificial flavoring.")

The lawsuit isn't just seeking money -- though it has asked a judge to award restitution, actual damages, punitive damages, court costs, and attorneys' fees,Top Class Actions website states. It also wants a judge to issue an order "compelling Bai to stop violating FDA regulations, to relabel all existing products and to conduct a 'corrective advertising campaign' to

inform consumers," the website explains.

Fortune reported in 2016 that Bai was expected to generate $300 million in revenue that year alone.

### *Related slideshow: Justin Timberlake's life in photos:*



**1/17 SLIDES**  © Venturelli/WireImage                        Full Screen 

Justin Timberlake has been a child star, a boybander, a movie star, a clothing designer, a record label exec, a restaurateur and, of course, a husband and father. (Seriously, is there anything this guy can't do?) To celebrate JT's comeback Super Bowl halftime show performance on Feb. 4, 2018, let's take a look back at his illustrious life through photos.

**SPONSORED TOPICS**                                                                    ▷







Best Cashback Credit Cards 2018        How to Clean Laminate Floors        Shipping Containers for Sale





- ○ **LIKE US!**

☐ Navigate

- Camila Mendes has no problem baring her breasts in photoshoots
- Ant-Man and the Wasp director dreamed of casting Michelle Pfeiffer
- Penelope Cruz named as Chanel's new brand ambassador
- Guy Pearce recalls 'handsy' Kevin Spacey on L.A. Confidential set
- Gigi Hadid blasts rumors her relationship with Zayn Malik is 'fake'
- Scarlett Johansson and Colin Jost's birthday date night interrupted by clown
- Sheryl Crow's next album will be her last
- Will Smith tears up over mural tribute in Philadelphia hometown
- Nicki Minaj viciously hit backs at critic on Twitter
- Vanessa Kirby was stunned by Tom Cruise relationship rumors
- Camila Mendes has no problem baring her breasts in photoshoots
- Ant-Man and the Wasp director dreamed of casting Michelle Pfeiffer
- Penelope Cruz named as Chanel's new brand ambassador
- Guy Pearce recalls 'handsy' Kevin Spacey on L.A. Confidential set
- Gigi Hadid blasts rumors her relationship with Zayn Malik is 'fake'
- Scarlett Johansson and Colin Jost's birthday date night interrupted by clown
- Sheryl Crow's next album will be her last
- Will Smith tears up over mural tribute in Philadelphia hometown
- Nicki Minaj viciously hit backs at critic on Twitter
- Vanessa Kirby was stunned by Tom Cruise relationship rumors



# Justin Timberlake sued over 'natural' beverage brand's marketing claims

- Celebrities
- Buzzing
- Lawsuits
- News



Share
Tweet
May 3, 2018



Wenn

**Justin Timberlake** has been named as a defendant in a class action lawsuit accusing drinks company executives of deceiving consumers.

California-based man **Kevin Branca** filed a complaint against Bai Brands, its founder **Ben Weiss**, its parent company Dr. Pepper Snapple Group, and Dr. Pepper president **Larry Young** last month (Apr18), claiming its beverages were falsely labelled as containing only natural ingredients.

**Branca** has now added **Timberlake's** name to his lawsuit as a defendant, according to The Blast. The star has reportedly invested in the firm, where he holds the title of Chief Flavor Officer. Last year (17) the Rock Your Body singer starred in a Super Bowl commercial promoting Bai's range of fruit health drinks.

Documents obtained by the U.S. gossip site accuse the pop superstar of providing monetary assistance to the firm and promoting the brand, and accused him and Bai executives of having, "knowingly entered" into agreements to "commit fraud and other unlawful acts by agreeing to promote artificially flavored beverage products as if they were solely naturally flavored without synthetic chemical ingredients."

The complaint also cites the musician's Super Bowl commercial, in which he appeared alongside **Christopher Walken**, as promoting the company's disputed claims to "millions of consumers".

**Branca** alleges that Bai's advertising is misleading as the drinks are marketed as all natural but actually contain a synthetic chemical flavoring compound known as malic acid. He is seeking a court order requiring the company and **Timberlake** to pay back any money earned as a result of the allegedly improper marketing as well as additional punitive damages.

**Weiss** founded Bai in 2009 and signed up **Timberlake** to the 'Flavor Officer' role in 2016. The firm was sold to Dr. Pepper Snapple for $1.7 billion the following year.

article continues below
FOLLOW US

TO GET THE LATEST ON Celebrities



Share
Tweet

- #JustinTimberlake

by WENN

## CERTIFICATE OF SERVICE

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 600 Anton Boulevard, Suite 2000, Costa Mesa, CA 92626-7655. On July 6, 2018, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: **DECLARATION OF CREIGHTON R. MAGID IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS**

SERVED UPON: LAW OFFICES OF RONALD A. MARRON
Ronald A. Marron
Michael T. Houchin
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile" (619) 594-6665
ron@consumersadvocate.com
mike@consumersadvocate.com

☒ (VIA ELECTRONIC MAILING SERVICE)  My electronic business address is miller.laura@dorsey.com and I caused such document(s) to be electronically served to the interested parties at the e-mail address indicated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmissions were unsuccessful.

☒ (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by **ASAP/LEGAL SOLUTION ATTORNEY SERVICE** to receive documents to be delivered on the same date.

☒ (BY FEDERAL EXPRESS) I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on July 6, 2018, at Costa Mesa, California.

_/s/ Laura Miller_
Laura Miller

CERTIFICATE OF SERVICE
CASE NO. 3:18-CV-00757-BEN-KSC

4850-7557-3868\1