Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
Navdeep K. Singh (SBN 284486)
singh.navdeep@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:   (714) 800-1400
Facsimile:    (714) 800-1499

Creighton R. Magid (admitted *pro hac vice*)
magid.chip@dorsey.com
**DORSEY & WHITNEY LLP**
1401 New York Avenue NW, Suite 900
Washington, DC 20005
Telephone: (202) 442-3555
Facsimile: (202) 442-3199

Elizabeth Baksh (admitted *pro hac vice*)
baksh.elizabeth@dorsey.com
**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200
Facsimile: (212) 953-7201

Attorneys for Defendants
BAI BRANDS, DR PEPPER SNAPPLE GROUP, INC., LARRY YOUNG, BEN WEISS and JUSTIN TIMBERLAKE

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BRANCA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAI BRANDS, LLC, a New Jersey Limited Liability Company; DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation; LARRY YOUNG, an individual; BEN WEISS, an individual; JUSTIN TIMBERLAKE, an individual,<br><br>Defendants. | CASE NO. 3:18-CV-00757-BEN-KSC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Date: September 4, 2018<br>Time: 10:30 a.m.<br>Courtroom: 5A<br>Hon. Roger T. Benitez |

# TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................... 2

I.      Plaintiff Has No Evidentiary Support for His Claim that the Bai Products Contain Synthetic D-L-Malic Acid. ............................................... 2

II.     Plaintiff Failed to Conduct a Reasonable and Competent Inquiry Before Filing the FAC. ................................................................................. 4

III.    Rule 11 Sanctions Are the Right Remedy for Plaintiff's Failure to Investigate the Facts Before Filing and for Lacking Any Factual Basis for Claiming the Bai Products Contain D-L-Malic Acid. ............................... 6

IV.    Plaintiff's Request for Sanctions is Meritless. ................................................ 7

CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allred v. Kellogg Co.,* 2018 U.S. Dist. LEXIS 38576 (S.D. Cal. Feb. 23, 2018) ...... 6

*Bighorn Capital, Inc. v. Security Nat'l Guaranty, Inc.*, 2015 WL 9489897 (N.D. Cal. Dec. 29, 2015) ................................................................................ 6

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ....................................... 2, 6

*Davison v. Santa Barbara High School Dist.*, 48 F. Supp. 2d 1225 (C.D. Cal. 1998) ............................................................................................... 6

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175 (S.D.N.Y. 2008) ............................. 8

*Eastway Const. Corp. v. City of New York*, 762 F.2d 243 (2nd Cir. 1985) ............... 5

*Islamic Shura Council of S. Cal. v. Federal Bureau of Investigation*, 757 F.3d 870 (9th Cir. 2014) ....................................................................... 2, 6

*Knipe v. Skinner*, 19 F.3d 72 (2nd Cir. 1994) ........................................................ 5

*Remington v. Mathson*, 2017 WL 3421966 (N.D. Cal. Aug. 9, 2017) ..................... 6

*Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072 (C.D. Cal. 1994) ...................... 6

*Simpson v. California Pizza Kitchen*, No. 13-cv-164, 2013 U.S. Dist. LEXIS 193959 (S.D. Cal. Oct. 23, 2013) ................................................... 8

**Rules**

Fed. R. Civ. 11(b)(3) .......................................................................................... 2, 9

## **MEMORANDUM OF POINTS AND AUTHORITIES**

The gravamen of plaintiff Branca's First Amended Complaint ("FAC") is that Defendants "add a synthetic industrial chemical called d-l-malic acid, in the form of a racemic mixture of d- and l-isomers" to Bai beverages.  FAC ¶ 36.  All claims in the FAC flow from this assertion.  As Defendants noted in their opening brief, the FAC is wholly devoid of any allegations indicating that Branca had actually tested for the presence of d-l-malic acid, and noting that Branca had steadfastly refused requests by Defendants for evidence of such testing.  Branca's Opposition to Defendants' Motion for Sanctions confirms Defendants' suspicions.  Though carefully worded to create the impression of diligence, both the Opposition and the supporting Declarations in fact make clear the following:

1. Branca *still* has not produced any test results.  Instead, Branca asks the Court to believe that it furnished the results of testing on a single Bai product to Dr. Laszlo Somogyi, who says that the test detected 0.010 g/100 ml – below the reliable detection limit – of d-malic acid, the presence of which could easily be explained by naturally-occurring d-malic acid in the Bai products.

2. Branca tested *only* for d-malic acid.  To reach the conclusion that the Bai products contained d-l-malic acid (a racemic mixture of equal parts l-malic acid and d-malic acid), Branca would have had to test for the presence of l-malic acid – a readily available and inexpensive test – and compared the amounts of l-malic acid to the levels of d-malic acid to see if they were equivalent.  Whether purposely or not, Branca failed to conduct the necessary testing to substantiate his claim that the Bai products contained "a synthetic industrial chemical called d-l-malic acid."

3. To confirm that the d-malic acid allegedly found in the alleged 2016 testing was synthetic, rather than naturally-occurring, Branca would have been expected to have tested for fumeric acid, which would be present if the d-malic acid were synthetic.  Branca did not test for fumeric acid.

Branca's counsel holds himself out as having particular expertise in malic acid litigation. Opposition at 10 – 11. He presumably knows the difference between d-malic acid and d-l-malic acid, and the testing that would be required to conclude that trace amounts of d-malic acid were synthetic rather than naturally occurring. Yet Branca did none of the threshold testing necessary to establish a reasonable basis for asserting that the Bai products contain synthetic d-l-malic acid. Instead, Branca argues that he should be allowed to subject Defendants to extensive and expensive discovery to see if he can find evidence to support his claims. That approach is expressly contrary to the Federal Rules. A plaintiff has an obligation to establish the evidentiary basis for a claim *before* filing a complaint. Fed. R. Civ. P. 11(b)(3); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *Islamic Shura Council of S. Cal. v. Federal Bureau of Investigation*, 757 F.3d 870, 872 (9th Cir. 2014). Because Branca brought the FAC without first establishing an evidentiary basis for the assertion that the Bai products contained synthetic d-l-malic acid, the motion should be granted.

## ARGUMENT

### I. Plaintiff Has No Evidentiary Support for His Claim that the Bai Products Contain Synthetic D-L-Malic Acid.

It is now abundantly clear that Branca filed his Complaint – and the FAC – without any factual basis for claiming that the Bai products contained "synthetic industrial chemical called d-l-malic acid, in the form of a racemic mixture of d- and l-isomers," FAC ¶ 36, let alone the additional, made-for-media-attention assertion that the malic acid in the Bai products was "not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." FAC ¶ 37.

Despite the fact that Plaintiff's counsel holds himself out to be expert in malic

acid litigation, see Opposition at 10 – 11, he did none of the testing required to establish a reasonable inference that the Bai products contained synthetic d-l-malic acid. Branca's counsel admits that he had only a single Bai product tested, and, more importantly, had it tested only for the presence of *d*-malic-acid. Decl. of Ronald A. Marron ("Marron Dec.") at ¶ 6.

Despite repeated requests from counsel for Defendants, and despite the present motion, Plaintiff has yet to reveal the results of that test. According to Dr. Laszlo Somogyi, whom Plaintiff apparently retained in response to the present motion[1], the 2016 test, as well as two 2018 tests (which Plaintiff has also refused to provide), the testing suggested the presence of d-malic acid at or below testing limits. Declaration of Dr. Laszlo Somogyi ("Somogyi Dec.") at ¶¶ 14 – 16; Declaration of Dr. Philip R. Ashurst ("Ashurst Dec.") at ¶ 9. Not only are results at such levels unreliable and not indicative of d-l-malic acid, Ashurst Dec. at ¶¶ 9, 13, but they are entirely consistent with *naturally-occurring* d-malic acid. Ashurst Dec. at ¶¶ 8, 11, 12. Furthermore, Plaintiff did not test for fumeric acid, which would be required to establish that the d-malic acid was synthetic rather than natural. Ashurst Dec. at ¶ 19. Even more telling, Plaintiff did not do *any* testing for l-malic acid, an inexpensive and readily-available test, *see* Opening Memorandum at 3, that is a fundamental requirement for inferring the presence of d-l-malic acid. *See* Ashurst Dec. at ¶¶ 15, 17.

In short, Plaintiff did *nothing* to determine whether the trace amounts of d-

---

[1] The declarations of Mr. Marron and Dr. Somogyi are carefully worded to avoid reference to precisely when Plaintiff retained Dr. Somogyi in connection with this action. However, because Marron Decl. ¶ 6 refers to the single test for d-malic acid as the only scientific activity (as opposed to reviews of Bai's website and labels) undertaken prior to service of the instant motion, and refers to Dr. Somogyi being retained to review both the 2016 test results and the 2018 test results, the reasonable inference is that Dr. Somogyi had not been consulted prior to service of the instant motion.

malic acid supposedly identified by an unspecified laboratory using unspecified methods (even if the results could be considered reliable) were naturally-occurring or synthetic, and did no testing for l-malic acid, and therefore had *no basis* for asserting that Defendants used synthetic d-l-malic acid in their Products.

## II. Plaintiff Failed to Conduct a Reasonable and Competent Inquiry Before Filing the FAC.

Plaintiff makes much of the fact that his attorneys reviewed the Bai products' labels and Bai's website and Dr Pepper Snapple Group's SEC filings prior to filing suit, and that his attorneys "are also familiar with the applicable law and regulations concerning malic acid." Opposition at 10.  That may be true, but what Plaintiff (and his counsel) failed to do was to conduct a reasonable and competent inquiry into the presence of d-l-malic acid prior to filing the FAC.  Plaintiff conducted a single test of a single sample of one particular variety of a Bai beverage prior to filing the FAC.  Somogyi Dec. ¶ 14.[2]  Whether by design or otherwise, Plaintiff tested *only* for d-malic acid, and did not test for *both* d-malic acid and l-malic acid, as would be required to reach the conclusion that the tested beverage contained d-l-malic acid.  *See* Ashurst Dec. at ¶¶ 14 – 15.  Even the results of the alleged d-malic acid test, as reported by Dr. Somogyi, involve neither a sufficient measurement to be deemed reliable nor a sufficient level to determine whether the minute amount of d-malic acid (questionably) detected was synthetic or natural.  *See* Ashurst Dec. at ¶¶ 9, 11 - 15.  Plaintiff, moreover, apparently did not test for fumeric acid, which would be necessary to conclude that the trace amounts of d-malic acid supposedly detected were synthetic.  *See* Ashurst Dec. at ¶ 19.  Plaintiff also apparently did not engage Dr. Somogyi or any other expert to comment on or interpret the alleged test results

---

[2]    Because Branca has failed to provide the test results themselves, or to provide any information about how the alleged test was conducted, the reported results must be viewed with skepticism.  *See* Ashurst Dec. at ¶ 18.

prior to filing the FAC.  *See* n. 1, *supra*.[3]

Indeed, Plaintiff implicitly concedes that he has no factual basis for his claim that the Bai products contain d-l-malic acid, admitting that "[t]o determine whether Defendants used artificial d-l-malic acid in the Bai Products during the entirety of the proposed class period, Plaintiff intends to seek discovery from Defendants and their third-pary ingredient suppliers. . .."  Opposition at 8.  But Rule 11 requires that a plaintiff have a factual basis for the assertions in a complaint *before* filing, not the mere hope that discovery will later validate one or more of the claims.  *See, e.g.*, *Knipe v. Skinner*, 19 F.3d 72, 75 (2nd Cir. 1994) (quoting *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2nd Cir. 1985) ("Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading *before* it is signed.") (emphasis added).

The failure of Plaintiff's counsel to conduct *any* tests indicative of synthetic d-l-malic acid prior to filing the FAC – or, apparently, to seek expert assistance in interpreting the results of the single test conducted for d-malic acid – would be more than sufficient to sustain Rule 11 sanctions in any event.  But it is especially so where, as here, Plaintiff's counsel is highly experienced in malic acid litigation.  *See* Opposition at 11 (arguing that the reasonableness of Plaintiff's counsel's pre-suit inquiry should be viewed "[i]n light of the Marron Firm's recognized experience in consumer protection and malic acid litigation").

---

[3]   It is also important to note that Dr. Somogyi studiously avoids commenting on whether any of Plaintiff's test results suggest the presence of d-l-malic acid, or even whether the d-malic acid allegedly detected was synthetic or natural.  His sole conclusion is that "[t]he small amount of d-malic acid indicates it was used for flavoring purposes in the products.  Such small amount would not function as acidifier."  Somogyi Dec. at ¶ 17.  Dr. Somogyi's expertise in the area of malic acid is also questionable, given that his description of malic acid in his declaration is largely copied verbatim (without attribution) from Wikipedia.  *See* Aug. 28, 2018, Declaration of Creighton Magid ("Magid Dec.") at ¶ 5 and Exhibit D.

REPLY MEMO. OF PTS. AND AUTHS. ISO OF ITS MOTION
CASE NO. 3:18-CV-00757-BEN-KSC

### III. Rule 11 Sanctions Are the Right Remedy for Plaintiff's Failure to Investigate the Facts Before Filing and for Lacking Any Factual Basis for Claiming the Bai Products Contain D-L-Malic Acid.

Plaintiff argues that a Rule 11 motion may not be brought except as a summary judgment motion – after the Plaintiff has been allowed to subject Defendants to expensive and time-consuming discovery. This is simply wrong. A Rule 11 motion may be brought at any time, and exists for the express purpose of *avoiding* expensive discovery and litigation where no factual basis exists for the suit. *See, e.g., Islamic Shura*, 757 F.3d at 872 ("Rule 11 is intended to deter baseless filings in district court and imposes a duty of 'reasonable inquiry' so that anything filed with the court is 'well grounded in fact . . ..'") (quoting *Cooter & Gell*, 496 U.S. at 393).[4]

Equally unavailing is Branca's suggestion that his counsel's success in fending off two prior motions to dismiss in malic acid cases (involving salt-and-vinegar potato chips) suggests that a Rule 11 motion is unwarranted. Apart from the fact that Plaintiff apparently concluded that his counsel's success in avoiding motions to dismiss in salt-and-vinegar chip cases relieved him of any obligation to conduct pre-suit investigation into malic acid in Bai beverages, Plaintiff ignores Judge Battaglia's observation in *Allred v. Kellogg Co.,* 2018 U.S. Dist. LEXIS 38576, *4 (S.D. Cal. Feb. 23, 2018) – one of two cases cited by Plaintiff – that "if Allred indeed filed a

---

[4] The cases cited by Plaintiff do not suggest otherwise. *Sagan v. Apple Computer, Inc*., 874 F. Supp. 1072 (C.D. Cal. 1994), addressed a motion for more definite statement, not a Rule 11 motion. *Davison v. Santa Barbara High School Dist*., 48 F. Supp. 2d 1225 (C.D. Cal. 1998), refers to a motion to dismiss, not a Rule 11 motion. *Remington v. Mathson*, 2017 WL 3421966 (N.D. Cal. Aug. 9, 2017), involved claims that a complaint was not well founded because the issues had been resolved in prior litigation; the court found a Rule 11 motion based on prior litigation premature because there was an incomplete record (and incomplete briefing) on the prior litigation. The quoted passage from *Bighorn Capital, Inc. v. Security Nat'l Guaranty, Inc*., 2015 WL 9489897 (N.D. Cal. Dec. 29, 2015), concerned a motion that "in effect asks the Court to determine the legal sufficiency of . . . four contractual claims" in light of a prior expungement order, not a failure to conduct a pre-suit investigation of facts.

lawsuit without any idea as to its veracity, *Kellogg's remedy would lie in Rule 11*.") (emphasis added).

### IV.     Plaintiff's Request for Sanctions is Meritless.

Apparently to distract from his own failings, Plaintiff claims that Defendants engaged in sanctionable behavior.

Branca first complains that Defendants filed their Motion to Dismiss on July 28 – 22 days after serving it on Plaintiff – because Plaintiff's counsel finally sent an email at 2:31 p.m. EDT on July 27 – after Defendant's lead counsel had gone home for the weekend – offering to discuss test results.  *See* Magid Dec. at ¶ 6.  (Because Defendant's lead counsel, prior to leaving for the weekend, had left instructions with an associate to file the motion, *id.,* the motion was filed the following morning.) There is nothing untoward about filing a Rule 11 motion when the plaintiff offers no response following service of the motion until the eleventh hour of the 21st day – and then, only vaguely to suggest that it might have conducted some testing.  Defendants repeatedly asked Plaintiff for test results substantiating Plaintiff's claims well before serving the Rule 11 motion and received nothing.  *See* Opening Memorandum at 1 – 2. Defendants waited for 21 days after filing the Rule 11 motion and received nothing – until the eleventh hour email.  The email itself provided no test results, and appeared to condition further discussions on Defendants providing affidavits from the Corporate Defendants' corporate officers.  Further the timing of the email – late in the day on the 21st day after service of the motion – suggested a desire for delay, rather than resolution.

Plaintiffs also fail to note that Defendants' counsel repeated efforts to determine the validity of Plaintiff's factual allegations even *after* filing the Motion and prior to the filing of Plaintiff's Opposition, *see* Magid Dec. at ¶ at ¶¶ 2, 3 and Exhibits A and B, and Plaintiff's conditioning any exchange of test data on Defendants agreeing to jurisdictional discovery with respect to the Individual

Defendants.  *Id*.

Plaintiff further claims that Defendants failed to conduct a reasonable inquiry prior to filing the instant motion, which, Plaintiff contends, "makes false factual assertions like 'Plaintiff nor his attorneys conducted any type of pre-suit investigation into the type of malic acid contained in the Products."  The absence of any information in the FAC regarding pre-suit testing, along with Defendants' repeated pre-motion inquiries of Plaintiff's counsel regarding any test results plainly establish adequate pre-motion inquiry.  Moreover, the statement with which Plaintiff takes issue is, as demonstrated above, entirely true:  it is clear from Plaintiff's Opposition that Plaintiff did *no* testing to establish the presence of d-l-malic acid in Bai products.

Finally, Plaintiff complains that Defendants inadvertently scheduled a hearing on the motion for a date less than 21 days after the filing of the motion.  Opposition at 2.  This is a complete red herring.  Upon Plaintiff noting the error, Defendants' counsel immediately suggested that the parties agree on a new hearing date and submit a joint motion or stipulation to reschedule the hearing.  *See* Magid Dec. at ¶ 4 and Exhibit D.

Defendants repeatedly sought information from Plaintiff regarding the factual basis for Plaintiff's claim that the Bai products contained d-l-malic acid.  Plaintiff stonewalled.  Defendants then brought a Rule 11 motion.  Again, Plaintiff did not respond – until the last possible moment.  This is hardly sanctionable. Accordingly, Plaintiff's request for attorney's fees for filing his Opposition must be denied.  *See Simpson v. California Pizza Kitchen*, No. 13-cv-164, 2013 U.S. Dist. LEXIS 193959, at *14-15 (S.D. Cal. Oct. 23, 2013) (denying plaintiff's request for attorney's fees for defending Rule 11 motion where defendants' "arguments concerning the merits of Plaintiff's claim" indicated that the motion was brought for "legitimate purposes"); *cf. E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 183 (S.D.N.Y. 2008) (observing that "fees are infrequently granted where the motion was not clearly frivolous, filed

for an improper purpose, or not well-grounded in fact or law").

## CONCLUSION

Because Plaintiff has no evidence suggesting the presence of synthetic d-l-malic acid in Bai beverages, and because Plaintiff failed to conduct any of the testing necessary to establish the presence of d-l-malic acid in Bai beverages, Plaintiff has failed to meet the requirements of Fed. R. Civ. 11(b)(3).  The motion for sanctions should therefore be granted.

Respectfully submitted,

Dated:  August 28, 2018

**DORSEY & WHITNEY LLP**

By: */s/ Kent J. Schmidt*
Kent J. Schmidt
Navdeep K. Singh
Creighton R. Magid
Elizabeth Baksh
Attorneys for Defendants
BAI BRANDS, DR PEPPER SNAPPLE GROUP, INC., LARRY YOUNG, BEN WEISS and JUSTIN TIMBERLAKE

# CERTIFICATE OF SERVICE

All Case Participants are registered for the USDC CM/ECF System

*Kevin Branca v. Bai Brands, LLC; Dr Pepper Snapple Group, Inc.; Larry Young; Ben Weiss; and Justin Timberlake*
**Southern District of California Case Number 3:18-cv-00757-BEN-KSC**

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS**

I hereby certify that on August 28, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of California by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be automatically served by the CM/ECF system.

Dated:  August 28, 2018            DORSEY & WHITNEY LLP

                                   By:  */s/ Kent J. Schmidt*
                                        Kent J. Schmidt