1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
9
SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 KEVIN BRANCA, on behalf of himself and all others similarly situated, | Case No.: 3:18-cv-00757-BEN-KSC |
| 12 | **ORDER:** |
| 13 Plaintiff, | |
| 14 v. | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS DR. PEPPER SNAPPLE GROUP, INC. AND BAI BRANDS, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT;** |
| 15 BAI BRANDS, LLC, a New Jersey Limited Liability Company; DR PEPPER SNAPPLE GROUP, INC., a Delaware Corporation; LARRY YOUNG, an individual; BEN WEISS, an individual; JUSTIN TIMBERLAKE, an individual, | |
| 16 | |
| 17 | |
| 18 | **(2) GRANTING DEFENDANTS JUSTIN TIMBERLAKE, BEN WEISS, AND LARRY YOUNG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; and** |
| 19 Defendants. | |
| 20 | |
| 21 | |
| 22 | **(3) DENYING DEFENDANTS' MOTION FOR SANCTIONS** |
| 23 | |
| 24 | **[Doc. Nos. 18, 19, and 24.]** |
| 25 | |

26    Before the Court are two Motions to Dismiss and a Motion for Sanctions filed by

27 Defendants Bai Brands, LLC, ("BAI"), a New Jersey Limited Liability Company, Dr.

28 Pepper Snapple Group, Inc., ("DPSG"), a Delaware Corporation, Larry Young

("Young"), an individual, Ben Weiss ("Weiss"), an individual, and Justin Timberlake ("Timberlake"), an individual (collectively, the "Defendants"). (Doc. Nos. 18, 19, 24.) Plaintiff Kevin Branca ("Branca" or "Plaintiff") filed timely oppositions (Doc. Nos. 22, 23, 31) to which Defendants replied (Doc. Nos. 26, 27, 34). The Court finds the motions suitable for disposition without oral argument. For the reasons discussed below, the Court **GRANTS in part and DENIES in part** the Motions to Dismiss and **DENIES** the Motion for Sanctions.

## I. *BACKGROUND*

Defendants manufacture, distribute, advertise, market, and sell beverage products labeled "Bai Antioxidant Infusion Brasilia Blueberry," "Bai Antioxidant Infusion Ipanema Pomegranate," "Bai Antioxidant Infusion Malawi Mango," "Bai Bubbles Sparkling Antioxidant Infusion Bolivia Black Cherry," and "Bai Bubbles Sparkling Antioxidant Infusion Jamaica Blood Orange." (Doc. No. 19-1 at 2.) The ingredient list on Defendants' Products provides "they contain only natural ingredients and are flavored only with natural ingredients when the Products, in fact, contain undisclosed artificial flavors in violation of state and federal law." (Doc. No. 22 at 1.) Specifically, "Defendants add a synthetic industrial chemical called d–1 malic acid, in the form of a racemic mixture of d– and 1–isomers, to flavor the Products and make them taste like fresh fruit." *Id*. Malic acid has two forms: 1-malic acid, which occurs naturally and is found in several fruits and vegetables, and d-1 malic acid, which is chemically manufactured from benzene or butane. (*See Id*.)

According to Branca, d-1 malic acid poses potential safety risks since it has "not been extensively studied for its health effects in human beings." (*See* Doc. Nos. 3 and 22.) Branca claims that the d-1 malic acid in Defendants' Products is used to give them their tangy, fresh fruit flavor. *Id*. Defendants do not contest that the Products contain malic acid. (*See* Doc. No. 18-1.) Rather, Defendants argue the malic acid in their Products is natural d-1 malic acid which is used as a pH control agent, not as a flavor. *Id*.

Branca, on behalf of himself and a purported class of similarly situated individuals, filed this action against Defendants concerning their failure to disclose an artificial flavoring ingredient in their Bai Beverage Products (the "Products").

This is important because Defendants' Products are labeled as containing "NO artificial flavors" and as being "naturally flavored." But because of the d-1 malic acid, Branca claims Defendants' Product "labels violate California and federal statute and state common law in multiple regards" including California's Sherman Law, Cal. Health & Saf. Code § 109875 et seq., and various other FDA regulations. (Doc. No. 3 ¶¶ 28-53.) And since Defendants' Products were not labeled as containing artificial flavors, Branca alleges he paid a premium for Products he was misled into believing were naturally flavored.

Defendants contend that "Branca simply assumes – with no basis – that the malic acid in the Products is not natural malic acid (1-malic acid), but rather d-1-malic acid. (Doc. No. 18-1 at 1.) Moreover, he "misapprehends federal labeling regulations with respect to malic acid" because "federal labeling law does not consider malic acid to be a flavor, the presence of malic acid as an ingredient has no bearing on label statements regarding flavors, whether natural or artificial." *Id*.

Based on these and other facts, Branca filed this case on behalf of himself and all others similarly situated, asserting nine separate claims.[1] Defendants now move to dismiss the First Amended Complaint ("FAC") and for sanctions.

///

---

[1]    Branca seeks to represent a class of "'[a]ll U.S. citizens who purchased the Products in the United States on or after January 1, 2012 until the date class notice is disseminated. Branca also seeks to represent a California Sub-Class of '[a]ll California citizens who purchased the Products in California on or after January 1, 2012 until the date class notice is disseminated.'" *Id*. at 4. Branca seeks to exclude from both classes, Defendants and Defendants' officers, directors, employees, agents, and affiliates, and the Court and its staff." *Id*.

## II. *DISCUSSION*

### A.    Defendants' BIA and DPSG's Motion to Dismiss

Defendants argue that (1) Branca fails to state an actionable claim against any defendant; (2) Branca lacks standing to pursue injunctive relief; (3) putative class members not residing in California should be dismissed for lack of personal jurisdiction; and (4) some of Branca's claims are barred by the applicable statutes of limitations. (*See* Doc. No. 18-1.)

#### 1.   Fails to State an Actionable Claim Against Any Defendant.

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the

presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

### (a) Offers Only Conjecture that the Products Contain d–1–Malic Acid

Defendants argue Branca has failed to plead an actionable claim in the FAC demonstrating Defendants' Products contain d–1–malic acid.[2] (Doc. No. 18-1 at 3.) Additionally, his submission of a FAC containing an unsubstantiated "assumption" about the malic acid in Defendants' Products is mere conjecture, violating plaintiff counsel's ethical obligation to establish the evidentiary basis of any claim prior to filing any complaint. Fed. R. Civ. P. 11(b)(3). (Doc. No. 18-1 at 11.)

The liberal pleading standard applied by federal courts comports with Rule 8(e), which states "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.F. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School Dist.,* 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

Here, Branca avers the FAC clearly alleges the Defendants use an "artificial petrochemical, d-1-malic acid in their Products, but pretend otherwise, conflating the natural and the artificial flavorings" in order to deceive consumers. (Doc. No. 22 at 13.) Specifically, the FAC narrates "what, how, and why" the Defendants use artificial malic acid by discussing "with particularity" how artificial malic acid is created, is used in beverage products like Bai, and why Defendants use 'd–1–malic acid'" in place of natural

---

[2]     Defendants assert Branca assumes that since "other food producers use d–1–malic acid, Defendants must use d–1– malic acid rather than natural 1–malic acid in its beverages" as well. (Doc. No. 18-1 at 3.)

malic acid. *Allred v. Kellogg*, 2018 WL 1158885 at \*2. Finally, due to the current procedural posture of the case, Branca contends the allegations in the FAC must be accepted as true. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

This Court finds that Branca has sufficiently described his claims to avoid dismissal. While Branca's assumption as to the type of malic acid contained in Defendants' Products ultimately may be incorrect, at the pleading stage, this Court "does not operate as a fact-finder," but, instead, must "presume all facts plead as true." Thus, the Court finds Branca has sufficiently pled the products contain d-1-malic acid.

Therefore, the Court **DENIES** Defendants' Motion to Dismiss as to this claim.

### (b) *Fails to State that the Products Should be Labeled "Artificially Flavored"*

Defendants argue that even if Plaintiffs can establish that its Products contained artificial d–1–malic acid, it would have no effect on the Product labels because federal regulations prohibit malic acid (*whatever form*) from being listed as an "artificial flavor." (Doc. No. 18-1 at 5.) Thus, labeling Defendants' Products as containing an "artificial flavor," is expressly prohibited by federal regulations. *Id*. at 8.

Defendants further contend that malic acid is not an artificial flavor since it does not function to impart any flavor to the object to which it is added. Rather, it is an acidulant – that is, an ingredient which makes food more acidic (i.e. provides a "sharp" taste) and serves as a pH control agent. "Flavor" is a specific and limited term under the federal regulations drawing a distinction between "flavoring"[3] and "flavor enhancer."[4] Thus, where federal regulations permit added flavors to be listed on the ingredient list simply as "natural flavor" or "artificial flavor," 21 C.F.R. § 101.22(h)(1), a flavor enhancer such as malic acid is not considered a "flavor" and cannot, by regulation, be

---

[3]    "Flavoring" – the purpose of which is to impart a distinctive flavor of its own. (Doc. No. 18-1 at 6.)

[4]    "Flavor Enhancer" – an ingredient that has no distinctive flavor of its own, but that intensifies the flavors from other ingredients. *Id.*

designated as such.[5]  56 Fed. Reg. 28592, 28598 (June 21, 1991) (internal citations and heading omitted) (emphasis added).

Branca argues "malic acid" is an artificial flavoring ingredient and the Product must, therefore, be labeled as "Artificially Flavored."  (FAC ¶ 40 (citing 21 C.F.R. § 101.22(i)(3)-(4)).)  Thus, the issue is whether malic acid is indeed an "artificial flavor."

> Under 21 C.F.R. § 101.22(a)(1):
> The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

Under 21 C.F.R. § 101.22(i)(2), if the product contains "any artificial flavor which simulates, resembles or reinforces the characterizing flavor . . . the name of the characterizing flavor shall be accompanied by the words 'artificial' or 'artificially flavored.'"  *See also* 21 U.S.C. § 343(k) (requiring any foods that use artificial flavorings "bear [] labeling stating this fact").  Specifically, if a food contains an artificial flavor which simulates the characterizing flavor, the name of the food "shall be accompanied by the common name" of the characterizing flavor and the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'" for example "artificial vanilla," "artificially flavored strawberry", or "grape artificially flavored."  21 C.F.R. § 101.22(i)(2).

Moreover, Branca contends the FAC does not allege malic acid is a "flavor enhancer," but rather is a "flavoring ingredient."  (FAC ¶¶ 33-39, 88, 115, 208).  The fact that malic acid does not appear on the FDA's lists of artificial flavors is irrelevant since

---

[5]   A "flavor enhancer" is a "[s]ubstance[ ] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11); *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) (finding sucralose and ace-k are not "flavors" because they do not give the product an original taste, but "sweeten or amplify whatever characterizing flavor it has from another source.")

21 C.F.R. § 101.22 states the lists are not exhaustive. *See* 21 C.F.R. § 101.22 ("Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter…." (emphasis added)). Nor does malic acid's absence on the lists mean that the FDA determined that malic acid is not an artificial flavor. *See Engurasoff v. Coca-Cola Co*, No. C 13-3990 JSW, 2014 WL 4145409, at \*3 (N.D. Cal. Aug. 21, 2014) (finding the same regarding phosphoric acid). Thus, it appears Branca believes the Products should be labeled as "artificially flavored."

The Court notes there is a distinction between an artificial flavor which "simulates, resembles or reinforces" the characterizing flavor of the product to which it is added, 21 C.F.R. § 101.22(i)(2), and that of a "flavor enhancer" which does not impart any taste upon its addition to the product, 21 C.F.R. § 170.3(o)(11). As such, determining how malic acid (*whatever form*) should be listed on a product label requires a factual determination. *See Engurasoff*, 2014 WL 4145409, at \*3 – 4 (finding that the federal regulations "are insufficient to insert a requirement that all artificial flavors, by definition, must impart a characteristic taste and/or aroma" and finding "it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at \*4 (N.D. Cal. Mar. 14, 2014) ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors . . . ."); *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at \*10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether [the ingredients are] used as a sweetener and/or . . . a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss.").

The Court agrees with the reasoning of these district courts. Thus, it cannot make a factual determination at this time as to whether malic acid is an artificial flavor. Therefore, the Court **DENIES** the Motion to Dismiss as to this claim.

(*c*) *Fails to List the Specific Isomer of Malic Acid in the Ingredients List*

Branca alleges the Products are mislabeled because they do not list the specific isomer of malic acid (1–malic acid, d–malic acid, or d–1–malic acid) in the ingredients list. *Id*. ¶¶ 34, 36.  Branca argues Defendants flavor their Products "with an industrial chemical called d–1–malic acid" and must refer to the ingredient as the "specific" isomer "d-1-malic acid."  (Doc. No. 22 at 13, 15-16; FAC ¶ 36.)

Defendants contend "no federal or state law or regulation requires such detail, 21 C.F.R. § 101.4(a)(b)."[6]  (Doc. No. 18-1 at 8.)  Defendants further assert that "malic acid" is the "common name" for all forms of malic acid, and the label must disclose it as such. (Doc. No. 26 at 7.)  Branca's claim that "more specificity [in the labeling] is somehow necessary or appropriate is contrary to and plainly preempted by federal law." *Id*. Consequently, Defendants also argue Branca's theory that malic acid must be listed as "d-1 malic acid" is preempted.

The FDA regulations state that ingredients "shall be listed by common or usual name." 21 C.F.R. §§ 101.4(a)(1).  It also provides that "[t]he names of the ingredient shall be a specific name and not a collective (generic) name, except that: (1) Spices, flavorings, colorings, and chemical preservatives shall be declared according to the provisions of § 101.22." 21 C.F.R. § 101.4(b).  However, if the ingredient is a flavoring, the provisions of 21 C.F.R. § 101.22 apply.  See 21 C.F.R. 101.4(b).  21 C.F.R. § 101.22 provides that

> (c) A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

---

[6]  Defendants also cite 21 C.F.R. § 184.1069(a), which states "[m]alic acid . . . is the common name for 1–hydroxyl–1, 2–ethanedicarboxylic acid." *Id*. at 16.

21 C.F.R. § 101.22(c). "The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or any combination thereof, as the case may be." 21 C.F.R. § 101.22(h).

So, assuming Branca's factual allegations are true, were Defendants required to list "d-1 malic acid" by its specific isomer on the ingredient list? No. "The statute and regulations specifically instruct that ingredients should be listed by their 'common or usual name.'" *Hortense Sims v. Campbell Soup Co. et al.*, No. EDCV 18-668 PSG (SPx), slip op. at 12 (C.D. Cal. Sept. 24, 2018) (internal citations omitted). And "[t]he provision instructing that the name 'shall be a specific name and not a collective (generic name)' does not override the 'common or usual name' requirement." *Id*. Rather, it "clarifies that ingredients must be listed separately" instead of as a "single generic category." *Id*. Thus, for example, apples, oranges and grapes can't be listed collectively as "fruit." But, at the same time, sugar need not be listed by its scientific name, sucrose. *See id*. (explaining that, according to FDA guidance documents, a common or usual name means, for example, "us[ing] the term 'sugar' instead of the scientific name 'sucrose.'" (citing Food & Drug Administration, *A Food Labeling Guide* (January 2013))).

It follows that Defendants were not required to list "malic acid" by its specific isomer "d-1 malic acid" on the ingredient lists as Branca suggests. Instead, it's enough that Defendants listed "malic acid," which is the common or usual name for d-1 malic acid. *See id*. ("[T]he common and usual name for the ingredient in V8 Splash is 'malic acid,' rather than the scientific name of 'd-1 malic acid.'")

Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to this claim.

(d) *Claims are preempted by Federal Law*

Defendants argue that Branca's claims should be dismissed because they are preempted by federal law. (Doc. No. 18-1 at 9-10.) Defendants base their preemption argument on the Federal Food, Drug, and Cosmetic Act ("FDCA"). *Id*.

The FDCA, as amended by the Nutrition Labeling and Education Act ("NLEA"), expressly preempts all state laws that "directly or indirectly" establish "any requirement for the labeling of food" not identical to federal requirements. *See* 21 U.S.C. § 343-1(a)(3). These federal requirements include the "comprehensive scheme" of regulations promulgated by the FDA under the FDCA concerning the labeling of flavors and flavorings in food products. *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074 GW (PLAx), 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011); *see generally* 21 C.F.R. § 101.22.

Recognizing that federal food labeling law expressly preempts state law in the same area, California passed the Sherman Law, which adopted federal food labeling regulations. See Cal. Health & Safety Code § 1099875 et seq. (incorporating 21 C.F.R. § 101.22). Since California's Sherman Law adopts the FDCA without modification, it's identical to the FDCA and can't be preempted by the FDCA. *See Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320468, at *9 (N.D. Cal. Apr. 1, 2013). But where a plaintiff's Sherman Law claim seeks to impose stricter requirements than those imposed by the FDCA, such claims must fail as preempted. *See Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *3 (S.D. Cal. Mar. 7, 2018).

Defendants here make two separate preemption arguments. The first argument targets Branca's claims as preempted by the FDCA because they seek "to impose labeling requirements that are inconsistent with federal law." (Doc. No. 18-1 at 9-10.) The second argument seeks to hold the Defendants liable for using "malic acid" as the common or usual name for malic acid on its Product labels. (*See* Doc. No. 18-1 at 19.) For clarity, the Court will separately address these preemption arguments.

(1) Branca's Assertion that the Product Must Be labeled as "Artificially Flavored"

Branca asserts that malic acid, which is listed as an ingredient on the Defendants products, is an artificial flavor, thereby rendering the label "naturally flavored" false and misleading. Defendants believe their Products comply with all relevant regulations. Moreover, Defendants believe the Court can find that malic acid serves as a pH control

agent in the Product and not as a flavor, thereby rendering the regulations regarding flavors inapplicable. (Doc. No. 22 at 10.) Accordingly, Defendants argue Branca's claim based on the omission to label the Products as "Artificially Flavored" is preempted because they demand more than what is demanded under the applicable regulatory scheme. Thus, the issue is whether malic acid is indeed an "artificial flavor." *Id*.

Federal law "provides that a manufacturer can use a 'natural flavor' label on a product even if the product contains artificial, non-flavoring ingredients, so long as the 'characterizing flavor' is, in fact, natural." *Viddiano v. Hansen Natural Cor.*, 944 F. Supp. 2d 877, 888 (C.D. Cal. 2013) (citing 21 C.F.R. § 101.22(i)(1)). Similarly, a food must be labeled "artificially flavored" if "the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor." 21 C.F.R. § 101.22(i)(2).

Based on this logic (*see* Doc. No. 18-1 at 13-16), Defendants claim that they can label its Products as "naturally flavored", and further claims that they need not label them as "artificially flavored," because the malic acid in their Products is "natural 1-malic acid" and is used as a pH control agent, rather than as a flavor. *Id*. In support of this contention, Defendants dedicate three pages of their Motion to make this point. (*See Id*. at 13-16.) Most specifically, Defendants argue that Branca fails to plausibly allege that the malic acid used in Defendants' Products functions as a flavor, causing his claims to be preempted.

The Court disagrees. Branca plausibly alleges that the malic acid used in Defendants' Products "contain a synthetic chemical flavoring compound known as 'd-1 malic acid.'" (Doc. No. at ¶¶ 30-31.) And Branca further alleges that this acid is an inexpensive synthetic chemical used in processed food products to make them taste like tangy fresh fruits." (*Id*. at ¶ 36.) Branca connects these more generic allegations to Defendants' Products by alleging the Defendants' Products contain d-1 malic acid. (*Id*. at ¶¶ 36, 39.) On top of all that, Branca contends that d-1 malic acid in Defendants' Products is responsible for providing the Product's taste of fresh fruit. (*Id*. at ¶ 36; *see*

*also id.* at ¶ 44 ("The d-1 malic acid is a flavoring material, which is included in the Products to create, simulate or reinforce the Products characterizing fruit flavors.").)

Defendants cite to several cases in support of their preemption argument but seem to focus on two cases decided by other California district courts to argue that Branca's claims are preempted because the FAC contains no non-conclusory allegations that the malic acid in Defendant's Products serves any other purpose other than to "function as a flavor". (Doc. No. 18-1 at 17-19.) The problem is that those cases differ from this case in important ways.

In *Viggiano v. Hansen Natural Corp.*, the court found that the FDCA expressly preempted the plaintiff's claim that the presence of sucralose in a product rendered a "natural flavors" label deceptive. 944 F. Supp. 2d 877, 890 (C.D. Cal. 2013). (*Id.* at 15.) In doing so, the court explained that sucralose was not a flavor, so the label in question did not violate applicable federal guidelines. *Id.* But malic acid, unlike sucralose, is an ingredient that *could* be considered a "flavor" under FDA guidelines. *Id.* (noting that, under federal law, sucralose can be used as a sweetener or a "flavor enhancer," but not as a flavor). So *Viggiano* is not dispositive here.

In *Ivie v. Kraft Foods Global, Inc.*, the court preempted the plaintiff's consumer protection claims because the plaintiff failed to allege that the artificial substances in the defendant's product—potassium citrate and sodium citrate—functioned as flavors. 961 F. Supp. 2d 1033, 1042 (N.D. Cal. 2013). (*Id.* at 18.) But, again, Branca here *has* alleged that the artificial ingredient at issue functions as a flavor. And, unlike the plaintiff in *Ivie*, Branca here supports these allegations by, among other things, citing various FDA regulations that recognize malic acid's potential to be used as a flavor in food products. *Cf. id.* (finding plaintiff's allegations concerning the ingredient's function as a flavor "conclusory" because they were "*without any basis ... in the FDA regulations or otherwise*" (emphasis added)). So, the Defendants reliance on *Ivie* is also misplaced.

Additionally, Defendants attempt to make the case, that the malic acid in their Products functions exclusively as a pH control agent and not as a flavor, is unavailing. Such arguments are "inappropriate for determination on a motion to dismiss." *See Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether the ingredients are] used as a sweetener and/or … a flavoring agent in this particular product … are inappropriate for determination on a motion to dismiss.); *see also Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *4-5 (S.D. Cal. Mar. 7, 2018) (concluding that whether malic acid is a "flavor" under federal regulations is a "factual determination that would be inappropriately resolved on a motion to dismiss").

Therefore, the Court does not find that Branca's claims are preempted under the FDCA and **DENIES** Defendants' Motion to Dismiss as to this claim.

(2) <u>Branca's Assertion that Defendant Must Refer to "Malic Acid" by Its Specific Name</u>

Branca next seeks to hold Defendants liable for using malic acid as a common name on the Products label even though some might find it ambiguous referring to more than one type of malic acid. (Doc. No. 41 at 7.) As described *supra*, Branca alleges malic acid, which is listed as an ingredient on the Defendants' Product label, is an artificial flavor thereby rendering the label "naturally flavored" false and misleading. (Doc. No. 41 at 5.) Defendants contend that the Court can find that malic acid serves as a pH control agent in the Products and not as a flavor, thereby rendering the regulations regarding flavors inapplicable. *Id*.

Federal law requires ingredients to be listed by their "common or usual name." 21 U.S.C. § 343(i)(2); 21 C.F.R. § 101.4(a)(1). But, confusingly, federal law also provides that "[t]he name of the ingredient shall be listed by a specific name and not a collective (generic) name," except that … [s]pices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of" another regulation. 21 C.F.R. § 101.4(b). And that other regulation states that "[t]he label of a food to which flavor is

14

added shall declare the flavor in the statement of ingredients [as] … 'spice', 'natural flavor', or 'artificial flavor', or any combination thereof as the case may be."  21 C.F.R. § 101.22.

In this case, Defendants are not required to list "malic acid" by its specific name "d-1 malic acid" on their Product labels as Branca suggests.  Instead, it is enough that Defendants listed "malic acid," which is the common or usual name for d-1 malic acid. *See Allred.*, 2018 WL 1185227.  ("[T]he common and usual name for the ingredient in V8 Splash is 'malic acid,' rather than the scientific name of 'd-1 malic acid.'")

Thus, the Court, therefore, **GRANTS** Defendants' Motion to Dismiss Branca's claim as preempted based on the theory that Defendants should have listed "malic acid" by its specific name "d-1 malic acid" on their Product labels.

*(e)* *UCL, FAL, and CLRA Claims*

Defendants move to dismiss Branca's California Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumers Legal Remedies Act ("CLRA") claims since each one fails as a matter of law because Branca has not pointed to any conduct by defendants that is "likely to deceive" a "reasonable consumer."  (Doc. No. 18-1 at 19.)

Branca contends that the Product labels affirmatively represent that the Products are made "with other natural flavors" (FAC ¶¶ 27-28) and fail to disclose that the Products are actually made with an artificial flavoring ingredient (*Id*. at ¶ 30).  As a result, "Defendants argument fails because whether or not a reasonable consumer would be misled 'is a question of fact not appropriate for determination [on a motion to dismiss].'"  (Doc. No. 22 at 11.)

Although there are important differences between the UCL, FAL, and CLRA, claims made under the three statutes are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under that test, Branca must show that "members of the public are likely to be deceived."  *Id*.  "[T]he false or misleading advertising and unfair business practices claim must be evaluated

15

from the vantage of a reasonable consumer." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003). The plaintiff must allege "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing *Lavie*, 105 Cal. App. 4th at 508).

In general, "[t]he question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Hairston v. S. Beach Beverage Co.*, No. 12-1429-JFW (DTBx), 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (citing *Williams*, 552 F.3d at 938). "However, in certain instances, the Court can properly make this determination and resolve such claims based on its review of the product packaging." *Id*.

Here, Defendants argue Branca has failed to plausibly allege that a reasonable consumer would be deceived by the Product's label. (Doc. No. 18-1 at 21.) Branca contends if Defendants had disclosed all material information regarding the Products on the label, a reasonable consumer would not have been deceived into believing that the Products contained no artificial flavoring ingredients. (Doc. No. 22 at 18-19.)

As held above, the Court cannot determine at this stage whether the Product label was false or misleading. If it is determined that the Defendants should have disclosed the "artificial flavor," then a reasonable consumer would likely be deceived by the Product's packaging [label], which clearly states "No artificial flavors." (*See* FAC ¶ 26 (image of product packaging)); *see also Kanfer*, 142 F. Supp. 3d at 1103 ("What a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss, but leaves the defendant free to file a motion for summary judgment if there are no triable issues of material fact on the issue."); *cf Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012) ("[W]here a court can conclude as a matter of law that

members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."). Thus, the Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list. *See Williams*, 552 F.3d at 939-40 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").

Therefore the Court **DENIES** Defendants' Motion to Dismiss as to Branca's *UCL*, *FAL*, and *CLRA* claims.

### *(f) Nationwide Class Claims Fail as a Matter of Law*

Defendants argue that Branca misapprehends Defendants' constitutional challenge to the national class claims. Defendants are not asserting whether differences in state laws preclude class certification. Defendants contend California's consumer protection laws may not be applied extraterritorially. *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (The Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"). (Doc. No. 26 at 8-9.) Moreover, Branca is a citizen of the state of California.[7] As such, he lacks standing to represent non-California purchasers of Defendants' Products.[8] (Doc. No. 18-1 at 21.)

Branca argues dismissal at this early stage is premature since the parties have yet to develop a factual record. (Doc. No. 22 at 20-21.) The scope of the class should be determined at the class certification stage, rather than on a motion to dismiss. *Id.* Moreover, other courts, when presented with similar situations, have declined to follow Defendants' suggested nuclear approach.[9] *Id.*

---

[7] *See* n.1 *supra*.

[8] Nonresidents of California cannot avail themselves of California law for commerce which occurs outside of California's borders. *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982).

[9] In *Werdebaugh v. Blue Diamond Growers*, the court denied the "defendant's motion to strike nationwide class claims because 'there has been no choice-of-law

While the Ninth Circuit has yet to address this specific issue, in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 587 (9th Cir. 2012), it reversed the district court's certification of a national class after concluding that, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

Here, at this stage in the litigation—before the parties have submitted briefing regarding either choice-of-law or class certification—Branca is permitted to assert claims under the laws of different states in the alternative. *See, e.g., In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage."). Moreover, while Branca does point to differences between California law and that of other states, more is needed for Defendants to sustain their burden to show that those differences are "'material,' that is, ... they 'make a difference in this litigation.'" *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 549 (C.D. Cal. 2012) (declining to reconsider a class certification order in light of *Mazza*) (quoting *Mazza*, 666 F.3d at 590–91).

The Court finds Defendants' argument regarding Branca's claims for non-California plaintiffs premature, but not meritless. Thus, while the Court declines to rule on the validity of the class action allegations at this time, Defendants will have another opportunity to raise the argument under Rule 23 of the Federal Rules of Civil Procedure.

Therefore, Defendants' Motion to Dismiss Branca's nationwide claims as to non-California residents of the nationwide class is **DENIED** without prejudice.

---

analysis in this case: Defendant-who bears the burden of demonstrating that foreign law, rather than California law, should apply to class claims in a California choice-of-law analysis-provides no support for its position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to *Werdebaugh's* class claims.'" *See Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013).

*(g)Warranty Claims*

Branca asserts claims for breach of express and implied warranties. (Doc. No. 3 ¶¶ 165-193.) The Court first considers Branca's express warranty claim.

(1)Breach of Express Warranty

To plead a claim for breach of express warranty, the plaintiff must allege the terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his or her injury. *See Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(a)(b).

Branca argues the express warranty was found on the products' label, namely, that the products contain "other natural flavors," but did not warn the product also contained an artificial flavoring ingredient called d-1-malic acid. (Doc. No. 22 at 16.) Moreover, his "injury was proximately caused by the defective nature of the Products and that he suffered damages as a result." *Id*. "Statements made by a manufacturer through its advertising efforts can be construed as warranty statement." *Aaronson v. Vital Pharms., Inc.* No. 09-CV-1333 W (CAB), 2010 WL 625337, at *6 (S.D. Cal. Feb. 17, 2010) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21022 (1985)). Defendants continue to argue the label state that the Products contain not only the characterizing flavor but also "other natural flavors" is true.

Whether the label actually provided a warranty and is likely to deceive a consumer are not appropriate questions to decide on a dismissal motion. At this stage, the Court must construe Branca's allegations as true. Again, the plausibility standard is necessarily a low threshold. Branca alleges the product's label contains the express warranty that the Products contain "other natural flavors", and Defendants breached that warranty through its unlabeled use of artificial flavoring ingredients, specifically, d-1-malic acid. Thus, Branca has stated a claim for express warranty.

19

3:18-cv-00757-BEN-KSC

Therefore, the Court **DENIES** Defendants' Motion to Dismiss the claim of express warranty.

(2) Breach of Implied Warranty

A product violates the implied warranty of merchantability if a product does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code 2314(2); *see Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2314(2)(c), (f)). California's statute on implied warranty states—in relevant part—that goods sold must "pass without objection in the trade under the contract description;" be of "fair average quality within the description;" are "adequately contained, packaged, and labeled as the agreement may require;" and "conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314.

Branca argues the Products were not merchantable in California as they were not of the same quality as other natural food products in the same general food and beverage trade category; trade practice would find the Products existing label objectionable as it was misbranded and thereby illegal to sell under the California Commercial Code § 2314(2)(a); and the Products were not commercially acceptable as the packaging and label breached the implied warranty by not adequately labeling the product as containing artificial flavoring ingredients, specifically, d-1-malic acid as required by the California Commercial Code § 2314(e). (Doc. No. 3 ¶¶184-86.)

Defendants dispute Branca's assertions contending that "to allege a breach of implied warranty of merchantability, a plaintiff must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). Moreover, the FAC does not allege that the Products are unsafe or commercially unacceptable. (Doc. No. 18-1 at 15.)

The Court notes that in food cases, Courts "have held that a label that discloses the presence of an unhealthy ingredient precludes liability under the implied warranty of merchantability." *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d. 909, 933 (N.D. Cal. 2015).

Defendants argue that liability under an implied warranty does "not depend on any specific conduct or promise of the defendant but turns on whether the product is merchantable under the California Uniform Commercial Code." (Doc. No. 22 at 15.) However, here, the crux of Branca's complaint is that the artificial flavoring ingredient d-1-malic acid was not disclosed—and thus not discoverable. (*See* Doc. Nos. 3 ¶¶ 29-39. ["California law, therefore, requires Defendants to include on the Product's labeling a notice to alert California consumers that the Product is artificially flavored. Defendants failed to do so."].) Malic acid can be either natural, or artificial, and Branca maintains Defendants used the artificial versions without denoting them as such. Thus, Branca has stated a claim for implied warranty.

Therefore, the Court **DENIES** Defendants' Motion to Dismiss the claim of implied warranty.

### (h) Fraud and Negligent Misrepresentation Claims

Branca alleges claims for negligent misrepresentation[10] and fraud-by-omission[11] for Defendants actions in labeling the Products as naturally flavored and in failing to identify that the Products were artificially flavored using malic acid. (Doc. No. 22 at 23.) Defendants argue that Branca's claims must fail because the Product labels "are accurate

---

[10]    To allege a claim for negligent misrepresentation, a plaintiff must plead:" (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.*, 196 Cal. App. 4th 1559, 1573 (2011).

[11]    A failure to disclose a fact can also constitute actionable fraud or deceit when: (1) the defendant is the plaintiff's fiduciary; (2) the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (Cal. Ct. App. 2011).

and consistent with federal regulations," and because Branca offers no facts to support his bare assertion of "active concealment." (Doc. No. 18 at 24.)

The Court finds this argument nearly identical to the argument Defendants raised regarding preemption in Section B(1)(d)(1), so the Court's previous conclusions about that argument apply equally here.

Therefore, the Court **DENIES** Defendants' Motion to Dismiss Branca's fraud and negligent misrepresentation claims.

### (i) *Joint Venture/Conspiracy/Agency/Aiding and Abetting Claims*

Defendants move to dismiss the FAC on the ground that Branca has not satisfied the requirements for pleading secondary liability (*Joint Venture/Conspiracy/Agency/Aiding and Abetting*) under Federal Rule of Civil Procedure 9(b). (Doc. No. 18-1.) In this case, Branca combined his Corporate and Individual responses in his Opposition to the Defendants second Motion to Dismiss. By combining his Responses, Branca did not clearly differentiate why the Court should deny Defendants' Motion to Dismiss as to his claims for secondary liability. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to these claims.

### 2. Branca Lacks Standing to Pursue Injunctive Relief.

Defendants assert Branca lacks standing to pursue injunctive relief because he cannot plausibly allege "an imminent or actual threat of future harm." (Doc. No. 18-1 at 27-28.)

Under Federal Rule of Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1014 (N.D. Cal. 2017).

To establish Article III standing, a plaintiff must show an injury-in-fact that is: (1) concrete and particularized, as well as actual or imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling from the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). "A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). "In food-labeling cases such as this one, a plaintiff can satisfy the Article III injury-in-fact requirement by showing that she either: (1) paid a price premium for a mislabeled product; or (2) would not have purchased the product had he or she knew about the misbranding." *Nguyen v. Medora Holdings, LLC*, No. 5:14-cv-00618-PSG, 2015 WL 4932836, at *5 (N.D. Cal. Aug. 18, 2015) (citations omitted); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (stating that, in class action alleging UCL, FAL, and CLRA claims, "[t]o the extent that class members were relieved of their money by [Defendant's] deceptive conduct ... they have suffered an 'injury in fact'") (citation omitted).

Defendants argue "Plaintiff by his own admission, has demonstrated little or no interest in the Products. His allegation that he 'intends to, seeks to, and will purchase the Products again when he can do so with the assurance that Products' label, which indicates that the Products are naturally flavored, are lawful and consistent with the Products' ingredients' is little more than a convenient recapitulation of *Davidson*." (Doc. No. 18-1 at 28.) The Ninth Circuit discussed this very objection in a recent decision, establishing when a complaint alleges a future injury, standing exists. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115-16 (9th Cir. 2017). In *Davidson*, the alleged false claims stated pre-moistened wipes were flushable, but after discovering they were not, the plaintiff ceased using them. *Id*. at 1107-08. The district court dismissed the injunctive relief claim because plaintiff failed to plead future injury. *Id*. at 1109, 1112. However, the Ninth Circuit reversed, holding plaintiff could seek injunctive relief because "she faces a threat of imminent or actual harm by not being able to rely on [the defendant's]

labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id*. at 1113. Standing was found in this scenario because the consumer cannot "rely on the product's advertising or labeling in the future." *Id*.

Here, Branca similarly pled future injury by stating "He intends to, desires to and will purchase the Product again when he can do so with the assurance that the Product's label . . . is lawful and consistent with the Product's ingredients." (Doc. No. 3 ¶ 100.) Thus, Branca still faces future injury because he will not be able to rely on Defendants' claims about its product's ingredients. Therefore, having found that Branca has standing to seek injunctive relief, the Court **DENIES** Defendants' Motion to Dismiss as to this argument.

### 3. Court Lacks Personal Jurisdiction over Putative Class Defendants.

Defendants contend that the Court lacks personal jurisdiction over the claims of putative class members who are not citizens of California because there is no connection between the forum, the non-California members of the putative class, and the Defendants. Defendants rely on the holding in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, *S.F. Cnty.*, which held that each plaintiff in a mass-tort action must establish that its claim is properly advanced in the forum state, to argue that the Plaintiff must also demonstrate specific jurisdiction with respect to each non-resident class member. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017). (Doc. No. 18-1 at 20-22.) Both parties cite district court decisions either extending or declining to extend, *Bristol-Myers* to the claims of putative class members in a class action. The Court finds the authorities cited by Branca to be persuasive. *See, e.g., In re Morning Song Bird Food Litig.*, No. 12cv01592 JAH-AGS, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ("While the claims of the non-resident named plaintiffs were pertinent to the issue of specific jurisdiction in *Bristol-Myers*, 'claims of unnamed class members are irrelevant to the question of specific jurisdiction.'") (citation omitted); *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (finding specific personal jurisdiction where the defendants intentionally advertised and offered the products for sale in the forum);

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (declining to extend the holding in *Bristol-Myers* to class actions).

Thus, the Court declines to extend *Bristol-Myers* to this case. As Defendants do not dispute that this Court may exercise personal jurisdiction over Branca, the Court **DENIES** Defendants' Motion to Dismiss for lack of personal jurisdiction.

### 4. Statute of Limitations.

Defendants argue Branca's claims are in part barred by the statute of limitations. (Doc. No. 18-1 at 32.) See Cal. Civ. Code § 1783 (setting a three-year statute of limitations for actions under the CLRA); Cal. Bus. & Prof. Code § 17208 (setting a four-year statute of limitations for actions under the UCL); Cal. Civ. Proc. Code § 338(a) (providing a default three-year statute of limitations for actions created by statute); *Cnty of Fresno v. Lehman*, 229 Cal. App. 3d 340, 346 (Ct. App. 1991) (applying the three-year statute in § 338 to a FAL claim). Indeed, as Defendants point out, Branca last purchased the Products in "July 2016." (Doc. No. 3 at 10.) But, Branca argues delayed discovery applies and thus tolls the statute of limitations. (Doc. No. 22 at 30.)

#### (1) Delayed Discovery

"In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Prac. Litig.*, No. C-05-04726 RMW, 2008 WL 4544441, *8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries,* 81 Cal. App. 3d 292, 296 (Ct. App. 1978)). "The delayed discovery rule is available to toll the statute of limitations under the CLRA, UCL, and FAL." *Plumlee v. Pfizer, Inc.*, No. 13-cv-414-LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014). "This rule applies even where the plaintiff is prosecuting a class action." *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1131 (N.D. Cal. 2010) (citing *McKelvey v. Boeing*

N. Am., Inc., 74 Cal. App. 4th 141, 160-61 (Ct. App. 1999) (applying the standard to a class action)).

Branca argues that he did not discover that the labeling "was false and misleading until April 2018, when he learned the Product contained undisclosed artificial flavoring." (Doc. No. 3 ¶ 101.) In *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011), the plaintiff pled that she did not discover the product label was false until she was provided information by a friend. *Id.* at *2. The plaintiff had pled she was a "reasonably diligent consumer who exercised reasonable diligence in her purchasing, use, and consumption." *Id.* The court found this was enough to toll the statute of limitations and what the plaintiff "know[s] or reasonably should have known" is a factual question that goes beyond the pleadings. *Id.* Similarly, here, Branca has pleaded that he is a "reasonably diligent consumers who exercised reasonable diligence in his purchase and consumption of the Product" and relied on Defendants' obligation to label the Product in compliance with federal and state regulations. (*Id.* ¶ 102.) Branca alleges that he first discovered the "unlawful" labeling in April 2018 "when he learned the Products characterizing flavor was deceptively created or reinforced using artificial flavoring, even though Defendants failed to disclose that fact on the Product's label." (*Id.* ¶¶ 93, 101.)

In this case, Branca purports to assert claims on behalf of a class of individuals who purchased the Products as far back as 2012. (Doc. No. 18-1 at 24.) Defendants contend that Branca's CLRA and FAL claims are barred to the extent that they arose (if at all) prior to April 30, 2015.[12] *Id.* Moreover, Branca's UCL and breach of warranty claims, (if any) suffer the same fate if they arose on or prior to April 30, 2014.[13] *Id.*

---

[12] The statute of limitations for CLRA and FAL claims is three years. Cal. Civ. Code § 1783; Cal. Civ. Proc. Code § 338(a).

[13] The limitations period for UCL and breach of warranty claims is four years. Cal. Civ. Code § 17208; Cal. Civ. Proc. Code § 2725.

Thus, despite the fact that Branca contends he is a diligent consumer, Defendants argue that the "delayed discovery" doctrine is insufficient to save him from the limitations bar. *Id*. at 33.

Nevertheless, Branca asserts that he and his class members are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Products.  (Doc. No. 22 at 30.)  Furthermore, since they must rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law, there was no way for Branca and his class members to have discovered the Defendants' deceptive practices any earlier than April 2018.[14]  *Id*.

However, despite his assertions to the contrary, Branca had not sufficiently pled that the delayed discovery rule applies.  *See Keiholtz v. Lennox Hearth Prods. Inc.*, No. C 08-00836 CW, 2009 WL 2906901, at *3 (N.D. Cal. Sept. 8, 2009) ("To invoke the delayed discovery rule, the plaintiff must plead facts showing . . . [h]ow and when he actually discovered the [facts underlying the claim]."  (quoting *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)); *see also Yumal*, 733 F. Supp. 2d at 1131 (finding the plaintiff had not adequately pled delayed discovery when she had not alleged "the time and manner of her discovery of the facts giving rise to her claims").  Branca has not shown that the delayed discovery rule applies, so the Court **GRANTS** the Motion to Dismiss on this ground.

*///*

*///*

*///*

--------

[14]     Defendants' labeling practices and non-disclosures – in particular, failing to identify the artificial flavor in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Products – impeded Plaintiff's and Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period. (Doc. No. 3 ¶ 102.)

**B.** **Defendants' Timberlake, Weiss and Young's Motion to Dismiss**

Defendants argue that (1) Branca fails to demonstrate this Court has personal jurisdiction over the individual defendants, and (2) Branca fails to state an actionable claim as to the individual defendants. (*See* Doc. No. 19-1.)

**1. The Court lacks jurisdiction over the Individual Defendants.**

The individual Defendants move to dismiss claiming this Court lacks personal jurisdiction over them.

A district court must dismiss any defendant over which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In assessing personal jurisdiction where there is no applicable federal statute, a district court applies the law of the forum state. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Absent an evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdictional facts. *Id.* Uncontroverted allegations in the pleadings must be taken as true. *See AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). However, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

Due process requires that a nonresident defendant "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "[T]he nature and quality of contacts necessary to support jurisdiction depends on the type of jurisdiction asserted," whether general or specific. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). General jurisdiction exists where a defendant's activities are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, (2014).

28

In the absence of general jurisdiction, a nonresident may only be subject to suit in the forum state if specific jurisdiction exists. "In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277 (2014)). Whether the Court may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quotation and citation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* (quotation and citation omitted). Three requirements must be met: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* (quotation and citations omitted).

> (a) The Individual Defendants are not Subject to General Jurisdiction in California

In this case, the FAC alleges that the Individual Defendants are all residents of a state other than California and does not state any other basis for general jurisdiction over the Individual Defendants.[15] (Doc. No. 19-1 at 14, *see also* FAC ¶¶ 21-23) The fact that the Individual Defendants may otherwise own property or frequently travel to California is not entitled to any weight. *See, e.g., BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) ("[A]s we observed in *Daimler*, 'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.'" (citation omitted) Moreover, the

---

[15]   "Defendant Young is a resident of Texas"; "Defendant Ben Weiss is a resident of New Jersey"; "Defendant Timberlake is a resident and citizen of New York". (Doc. No. 19-1 at 14.)

Individual Defendants mere corporate association with Bai or DPSG does not supply a basis for general jurisdiction, as a corporation's contacts with California may not be imputed to the Individual Defendants for exercising personal jurisdiction over the latter. *See, e.g., Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (a court must analyze "contacts that the 'defendant *himself*' creates with the forum State") (emphasis in original).

Branca argues that courts have found that "a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer 'is a primary participant in the alleged wrongdoing' or 'had control of, and direct participation in the alleged activities.'" *Allstar Mktg. Grp., LLC v. Your Store Online, LLC,* 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) ("*Allstar Mktg.*") (quoting *Matsunoki Grp., Inc. v. Timberwork Or., Inc.*, No. C 08-04078 CW, 2009 WL 1033818, *3 (N.D. Cal. Apr. 16, 2009)). (Doc. No. 23 at 13.) Since all three individual Defendants are alleged to be officers of Bai Brands, LLC, Branca argues that such contact and association is sufficient to convey general jurisdiction in this case.[16] *Id.*

The Court disagrees with Branca's argument for general jurisdiction. First, all three Individual Defendants reside in states other than California. The fact that each may regularly travel to or own property in California is insufficient, by itself, to justify the exercise of general jurisdiction over his person. *See Hendricks v. New Video Channel Am., LLC*, No. 14-cv-02989, 2015 WL 3616983, 2015 U.S. Dist. LEXIS 74677, at *12 (C.D. Cal. June 8, 2015). Without facts to support a finding that the Individual Defendants are essentially at home or "present" in California for all purposes, exercising general jurisdiction over these Individual Defendants would be improper. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir.

---

[16] Defendant Larry Young is alleged to be the President and CEO of the company. (FAC ¶ 20.) Defendant Ben Weiss is alleged to be the founder and former CEO of the company. (FAC ¶ 22). Defendant Justin Timberlake is alleged to be the "Chief Flavor Officer." (FAC ¶ 23).

2006).  Branca has not shown that the Court has general jurisdiction over the individual Defendants, so the Court **GRANTS** the Motion to Dismiss on this ground.

(b) *The Individual Defendants are not Subject to Specific Jurisdiction in California*

As an initial matter, Branca contends the Corporate Defendants do not dispute this the Court has specific personal jurisdiction over them with respect to Branca's claims. (Doc. No. 23 at 11.)  This jurisdictional fact is uncontroverted and is sufficient to confer specific personal jurisdiction over the Corporate Defendants.  *See AirWair Int'l Ltd.*, 73 F. Supp. 3d at 1233 (finding specific personal jurisdiction where the defendants intentionally advertised and offered the products for sale in the forum).

Thus, the remaining issue is whether this Court has specific personal jurisdiction over the Individual Defendants as a result of their roles as corporate officers, joint ventures, and/or agents of the Corporate Defendants.  The Court finds that it does not.

First, as the Ninth Circuit has recognized, the mere fact that an individual is associated with or employed by a corporate defendant over which a court has personal jurisdiction does not confer personal jurisdiction with respect to the individuals.  *See, e.g., Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.")

Second, the FAC alleges no facts demonstrating or relating to activities such as statements or activities engaged in by Young, Weiss, or Timberlake in California regarding the presence or absence of d-1-malic acid in Bai products.[17]  (Doc. No. 19-1 at 17.)

_____

[17]     "The 'marketing campaign' referenced in the FAC – including the much-discussed Super Bowl advertisement – does not change this analysis.  Absent a showing that Bai directed the Super Bowl advertisement or any of its marketing to California specifically

Without more, Branca's blanket allegations that the Individual Defendants controlled the corporate defendant at 'various relevant times' does not establish purposeful direction by any specific Individual Defendant.

Therefore, Branca has not shown that the Court has specific personal jurisdiction over the individual Defendants', so the Court **GRANTS** Defendants' Motion to Dismiss on this ground. The Court further Orders all claims pending against the Individual Defendants' are terminated and Defendants Young, Weiss, and Timberlake are hereby dismissed.

### 2. Fails to State an Actionable Claim Against Individual Defendants.

Because the Court lacks personal jurisdiction over the Individual Defendants, Branca's claims for secondary liability regarding the Individual Defendants are moot and the Court need not address them further.

### C. Defendants' Motion for Sanctions

In addition to moving for dismissal of Branca's FAC, Defendants have moved for sanctions against Branca. Defendants argue that counsel for Branca acted in bad faith, and in violation of his obligation under Fed. R. Civ. P. 11, for failing to conduct a reasonable inquiry into the viability of the pleading prior to bringing suit. (Doc. No. 24-1 at 5-6.) Defendants request the Court strike all of Branca's allegations concerning artificial malic acid in the FAC and award them their attorney's fees and costs. *Id*. at 8. A court may impose sanctions under Federal Rule of Civil Procedure 11 if the "pleading, motion, or other paper" in question is either frivolous or brought for an improper purpose.

---

(as opposed to the nation as a whole) – and the FAC contains no such allegations – the marketing campaign cannot give rise to personal jurisdiction. See, e.g., Akbar v. Bangash, No. 15-cv-12688, 2017 U.S. Dist. LEXIS 106441, *20 (E.D. Mich. July 11, 2017) ('Without anything to suggest that it was directed to residents in Michigan, a nationally broadcast television commercial is nothing more than the sort [passive availment] of Michigan's opportunities that is insufficient to exercise personal jurisdiction."

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*) (citing *Zaldivar v. City of L.A.*, 780 F.2d 823, 832 (9th Cir. 1986), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)); *see* Fed. R. Civ. P. 11(b). Both inquiries are objective. *Townsend*, 929 F.2d at 1362 (citing *Zaldivar*, 780 F.2d at 829).

Before filing a motion for sanctions with the court, the movant must first serve the motion on the other party and give him at least twenty-one days in which to correct or withdraw the challenged pleading. Fed. R. Civ. P. 11(c)(2). Rule 11 sanctions "are limited to 'paper[s]' signed in violation of the rule. Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). The court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id*. (c)(2).

The Motion argues that Branca's claims rest on the assumption that the Products contain d-1-malic acid, which is 50% synthetic d-malic acid. *Id*. at 4. In short, it was a conjectural assertion for which Branca was unable to provide factual support in the FAC. *Id*. Moreover, when Defendants requested from Branca's counsel any information he had regarding the presence of d-1-malic acid in the Products, he responded with expressions of incredulity, but no evidence that the Products contained d-1-malic acid.[18] *Id*. at 5.

Defendants argue that sanctions are justified because Branca's counsel failed to conduct a reasonable pre-suit inquiry or investigation into the type of malic acid contained in the Products. (Doc. No. 24-1 at 6.) Had he conducted independent testing,

---

[18] In a letter dated June 4, 2018, Defendants asked Plaintiff's counsel for any information Plaintiff had regarding the alleged presence of d-1-malic acid in the Products. (Doc. No. 24-1 at 4-5.)

he would have discovered that "the Products do not, in fact, contain d-1-malic acid." *Id.* Defendants contend this violates counsel's obligations under Rule 11, which "imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or the motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1016 (9th Cir. 1997). Thus, prior to filing a complaint, an attorney must conduct a reasonable and competent inquiry to determine that it is not legally or factually baseless. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). The determination of whether these standards are met is an objective inquiry. *Id.*

Here, Branca responds with the same arguments made in response to the Motions to Dismiss. Branca adds that he and his counsel did conduct testing on the Products prior to filing suit and they also conducted additional testing after the suit was filed to verify the veracity of the claims. (Doc. No. 31 at 7.) Moreover, counsel also consulted with Dr. Laszlo Somogyi, Ph.D., an expert in food sciences, who has interpreted his test results confirming that three Products tested positive for the presence of artificial D Isomer of Malic Acid. *Id.*

Branca also argues that the Rule 11 Motion for Sanctions has been brought by Defendants "in an apparent attempt at a 'trial by ambush.'" Branca contends that his attorney contacted Defendants on Friday, July 27, 2018, to inform them that Plaintiff's counsel had "lab testing going back to 2016 on the Bai products" and the Branca had also retained an expert witness to opine on the artificial malic acid that is contained in the Products." *Id.* Branca adds that the Motion for Sanctions was also brought for the improper purpose of converting their motion to dismiss into a motion for summary judgment by seeking to have the Court look beyond the four corners of the FAC in order to have the Court dismiss this action based solely on Defendants' own flawed testing of Bia Products. *Id.* at 17. Therefore, Branca seeks an award in the amount of its reasonable attorney's fees incurred in opposing the Motion for Sanctions.

The Court finds that Defendants fall short of demonstrating sanctions against Branca and his counsel is warranted.[19]  Moreover, Branca sufficiently alleged claims in the FAC.  (*See* Section III (B) and (C) discussed *supra*.)  The issues presented are sufficiently complex and justiciable that there is not enough showing that they are "presented for any improper purpose," or that they are not "warranted by existing law...."  Fed. R. Civ. P. 11.  The Ninth Circuit requires that a complaint "completely lack [ ] a factual foundation" for jurisdiction before a party may be sanctioned for filing a complaint.[20]  *Id.* at 1133 (citing *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986)).

For the foregoing reasons, the Motion for Sanctions is **DENIED**.  The Court further finds that awarding attorney's fees incurred in bringing or defending this action is premature.

## D.    Defendants' Request for Judicial Notice

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  "Judicially noticed facts often consist of matters of public record, such as prior court proceedings ... or other court documents."  *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citation omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of court filings and other matters

---

[19]    Defendants argued that Branca brought this lawsuit for an improper purpose and Plaintiff's counsel knows that the claims are meritless.  Ironically, Defendants' sanctions arguments are meritless.

[20]    Courts are disinclined to impose sanctions for failure adequately to plead jurisdiction.  *See Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1136 (1997) ("a party who has failed to allege diversity jurisdiction is ordinarily granted leave to amend its complaint").

of public record.").  While "[a] court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein."  *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

Defendants ask the Court to take judicial notice of:

1. *Exhibit 1*: The combined ingredient lists for the Products at issue in this action (the "Combined Ingredient Lists").[21]

2. *Exhibit 2*: Transcript of October 15, 2015 proceedings in the matter of *Osborne v. Kraft Foods Group,* No. 15-cv-02653 (N.D. Cal.).

3. *Exhibit 3*: The National Organic Standards Board, Technical Advisory Report on Malic Acid (April 2003), publicly available on the United States Department of Agriculture, Agriculture Marketing Service's website.[22]

4. *Exhibit 4*: The United States Food and Drug Administration's Compliance Policy Guide, Sec. 525.650 ("Labeling of Seasonings"), publicly available on the FDA's website.[23]

5. *Exhibit 5*: The United States Food and Drug Administration's Labeling Course Summary, publicly available on the FDA's website.[24]

6. *Exhibit 6*: Food and Drug Administration Warning Letter 391860 (dated March 7, 2013), publicly available on the FDA's website.[25]

---

[21]    The Combined Ingredients List contains the contents of all 20 Products that Plaintiff alleges are at issue in this action.  (See FAC, p. 12, ¶ 63 ("Table 1, below, lists the Products included in this action."))

[22]    https://www.ams.usda.gov/sites/default/files/media/L-Malic%20Acid%20TR.pdf

[23]    https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuideance Manual/ucm074466.htm.

[24]    https://www.accessdata.fda.gov/ORAU/Labeling/LAB_summary.htm.

[25]    https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2013/ucm34504 1.htm.

3:18-cv-00757-BEN-KSC

7. *Exhibit 7*: Food and Drug Administration Warning Letter 437043 (dated March 17, 2015), publicly available on the FDA's website.[26]

8. *Exhibit 8*: Food and Drug Administration Warning Letter 12-SJN-WL-11 (dated Sept. 27, 2012), publicly available on FDA's website.[27]

9. *Exhibit 9*: Food and Drug Administration Warning Letter to Creative Confection Concepts, Inc. (Dated Jan. 10, 1995).

10. *Exhibit 10*: Ingredient List for Brasilia Blueberry Bai, publicly available on the manufacturer's website.[28]

As to *Exhibit* numbers 1 and 10, the Court takes judicial notice of the existence of these documents, but not of the truth of the facts cited therein. However, as to *Exhibit* numbers 2 through 9, the Court GRANTS judicial notice of these documents because it is a Court record or of documents published on a government website. *See Gerritsen v. Warner Bros. Entm't Inc.,* 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("[T]he court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."). However, as noted above, the Court does not take judicial notice of facts subject to reasonable dispute within the document. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record … But a court may not take judicial notice of a fact that is subject to reasonable dispute.").

*///*

*///*

---

[26] https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm440942.htm.

[27] http://wayback.archive-it.org/7993/20161023095511/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323085.htm.

[28] https://www.drinkbai.com/products/brasilia-blueberry.

*IV. <u>CONCLUSION</u>*

For the foregoing reasons, the Court:

1. **GRANTS in part and DENIES in part** Defendants' BIA and DPSG's Motion to Dismiss;

2. **GRANTS** Defendants' Timberlake, Weiss, and Young's Motion to Dismiss;

3. **DENIES** Defendants' Sanctions Motion.

**IT IS SO ORDERED.**

Dated: March 7, 2019

_____
**HON. ROGER T. BENITEZ**
United States District Judge

38